# EXHIBIT 1

DENNIS K. BURKE
United States Attorney
District of Arizona

DAVID A. PIMSNER
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Arizona State Bar No. 007480
Telephone (602) 514-7500
david.pimsner@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

09-655MB

| IN RE APPLICATION AND CERTIFICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. §§ 2703(d) (Yahoo) | APPLICATION OF THE UNITED STATES FOR AN ORDER PURSUANT TO 18 U.S.C.§ 2703(d) <br><br> (FILED UNDER SEAL) |
|---|---|

David A. Pimsner, an Assistant United States Attorney for the District of Arizona, hereby files under seal this <u>ex parte</u> Application for an Order pursuant to 18 U.S.C. section 2703(d) to require Yahoo, an Internet service provider, which functions as an electronic communications service provider and/or a remote computing service, located at 701 First Avenue, Sunnyvale, California 94089, to provide records and other information pertaining to the following email address: ahmsah1977@yahoo.com. The records and other information requested are set forth as Attachment A to the proposed Order submitted herewith. In support of this Application, the United States asserts:

<u>LEGAL STANDARDS</u>

1.      Investigation to date provides reasonable grounds to believe that Yahoo has records and other information pertaining to certain of its subscribers that are relevant and material to an ongoing criminal investigation. Because Yahoo functions as an electronic communications

U.S. v. AIA 000528

service provider (provides its subscribers access to electronic communication services, including e-mail and the Internet) and/or a remote computing service (provides computer facilities for the storage and processing of electronic communications), Title 18 U.S.C. section 2703 sets out particular requirements that the government must meet in order to obtain access to the records and other information it is seeking.

18 U.S.C. § 2703(c)(1) prescribes the procedure pursuant to which the United States may obtain records and other information pertaining to a subscriber of an electronic communications service or remote computing service. It states, in pertinent part:

> A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity– . . .
>
> (B) obtains a court order for such disclosure under subsection (d) of this section.

2. Where, as here, the United States seeks (in addition to records and other information) the contents of electronic communications that the subscriber has left in electronic storage for more than 180 days,[1] it must comply with 18 U.S.C. § 2703(b)(1), which provides in pertinent part:

> A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection– . . .
>
> > (B) with prior notice from the governmental entity to the subscriber or customer if the governmental entity– . . .
> >
> > > (ii) obtains a court order for such disclosure under subsection (d) of this section;
> >
> > except that delayed notice may be given pursuant to section 2705 of this title.

---

[1] The United States does not seek the contents of communications in electronic storage that have been in electronic storage for less than 181 days, for which it would need a search warrant. See 18 U.S.C. § 2703(a). "Electronic storage" is a term of art, specifically defined in 18 U.S.C. § 2510(17) as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication."

U.S. v. AIA 000529

3.  Section 2703(d), in turn, provides in pertinent part:

> A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. . . . A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.

Accordingly, this Application sets forth the specific and articulable facts showing that there are reasonable grounds to believe that the materials sought are relevant and material to the ongoing criminal investigation.

## SPECIFIC & ARTICULABLE FACTS

4.  The Federal Bureau of Investigation ("FBI") is investigating Ahmad Al-Ahmad for a violation of Title 18, United States Code, Section 2339B, Providing Material Support or Resources to Designated Foreign Terrorist Organizations. Attachment B contains specific and articulable facts showing that there are reasonable grounds to believe that the records, other information, and the contents of e-mails pertaining to the e-mail account designated ahmsah1977@yahoo.com are relevant and material to the ongoing criminal investigation. The information submitted in Attachment B was provided by the case agent, FBI Special Agent Dina McCarthy.

5.  Records of customer and subscriber information relating to this investigation that are available from Yahoo will help government investigators to identify the individual(s) who are responsible for the events described and to determine the nature and scope of their activities. Accordingly, the government requests that Yahoo be directed to produce all records described in Attachment A to the proposed Order. Part A of the Attachment requests the account name, address, telephone number, e-mail address, billing information, and other identifying information for ahmsah1977@yahoo.com.

3

6. Part B requests the production of ahmsah1977@yahoo.com "user connection logs" through the date of the Court's Order. The information should include the date and time of connection and disconnection, the method of connection to Yahoo, the data transfer volume, and information related to successive connections to other systems.

7. Part C requests the production of content of electronic communications (not in electronic storage) that were placed or stored in Yahoo's computer systems in directories or files owned or controlled by the account identified in Part A for more than 180 days.

8. The information requested should be readily accessible to Yahoo by computer search, and its production should not prove to be burdensome.

9. The United States requests that this Application and Order be sealed by the Court until such time as the Court directs otherwise. The United States further requests that pursuant to the preclusion of notice provisions of 18 U.S.C. § 2705(b), the Court order Yahoo not to notify any person (including the subscriber or customer to which the materials relate) of the existence of this Order for such period as the Court deems appropriate. The United States submits that such an order is justified because notification of the Order could seriously jeopardize the ongoing investigation. Such disclosure could give the subscriber an opportunity to destroy evidence, notify confederates, or flee from prosecution.

10. The United States further requests, pursuant to the delayed notice provisions of 18 U.S.C. § 2705(a), an order delaying any notification to the subscriber or customer that may be required by § 2703(b) to obtain the contents of communications, for a period of 90 days. Providing prior notice to the subscriber or customer could seriously jeopardize the ongoing investigation, as such a disclosure would give the subscriber an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from prosecution.

WHEREFORE, the United States respectfully requests that the Court grant the attached Order, (1) directing Yahoo to provide the United States with the records, other information, and content of electronic communications described in Attachment A; (2) directing that the Application and Order be sealed; (3) directing that the notification by the United States otherwise required under

18 U.S.C. § 2703(b) be delayed for ninety days; and (4) directing Yahoo not to disclose the existence or content of the Order, except to the extent necessary to carry out the Order.

Dated this ~~30~~ 14 day of December, 2009.

DENNIS K. BURKE
United States Attorney
District of Arizona

DAVID A. PIMSNER
Assistant U.S. Attorney

U.S. v. AIA 000532

# **ATTACHMENT A**

You are to provide the following information, if available, as data files on CD-ROM or other electronic media or by facsimile:

A. The following customer or subscriber account information for each account registered to or associated with the following email address: ahmsah1977@yahoo.com for the time period January 1, 2005 to the date of this order:

1. name(s) and e-mail address;
2. address(es);
3. records of session times and durations;
4. length of service (including start date) and types of service utilized;
5. telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address;
6. the means and source of payment for such service (including any credit card or bank account number); and
7. The Internet Protocol address used by the subscriber to register the account or otherwise initiate service.

B. User connection logs for the account(s) and time period in Part A, including:
1. connection time and date;
2. disconnect time and date;
3. method of connection to system (e.g., SLIP, PPP, Shell);
4. data transfer volume (e.g., bytes);
5. The IP address that was used when the user connected to the service.
6. connection information for other systems to which user connected, including:
   a. connection destination;
   b. connection time and date;
   c. disconnect time and date;
   d. method of connection to system (e.g., telnet, ftp, http);
   e. data transfer volume (e.g., bytes);
   f. any other relevant routing information.

7. Source or destination of any electronic mail messages sent from or received by the account, and the date, time, and length of the message; and
8. Any address to which electronic mail was or is to be forwarded from the account or e-mail address.

C. The content of electronic communications (not in electronic storage) that were placed or stored in Yahoo's computer systems in directories or files owned or controlled by the account identified in Part A above, from January 1, 2005 to July 2, 2009.

## ATTACHMENT B

1. Dina McCarthy, who is a Special Agent with the Federal Bureau of Investigation (FBI) for approximately nine years and with the Joint Terrorism Task Force (JTTF) for seven years, is conducting an investigation of Ahmad Ibrahim Al-Ahmad for violating 18 U.S.C. Section 2339B (Providing Material Support or Resources to Designated Foreign Terrorist Organizations).

2. Ahmad Al-Ahmad is a Syrian national, who has been known to use several monikers to include Nore Nahe and possibly Anas Abdul Karim Khadir.  On August 30, 2006, Coalition Forces raided Ahmad Ibrahim Al-Ahmad's residence at 50 Omar Street, Baghdad, Iraq.  Al-Ahmad is believed to be a Syrian bomb-maker.  Al-Ahmad escaped or traveled to Syria shortly before the raid, leaving behind numerous Improvised Explosive Device (IED) related construction materials, test equipment, schematics and other items relating to IED construction including microchips manufactured in Arizona.

3. An assessment of some of the documents recovered by Coalition Forces concluded that the documents were Al-Ahmad's file copies and linked Al-Ahmad (using his moniker Nore Nahe) to an Asian company, Wenshing Electronics located in Taipei, Taiwan.  It is believed that Wenshing Electronics is an unwitting company, which was negotiating the sale of electronic components with Al-Ahmad which could be used in IEDs.  Among documents recovered were copies of emails between Al-Ahmad and the Wenshing Electronics from August 2005, which displayed Al-Ahmad's email address, ahmsah1977@yahoo.com.

U.S. v. AIA 000534

Pursuant to the emails, Al-Ahmad was attempting to acquire a Wenshing model TRW-400 transmitter/receiver through SES Lebanon to be sent to "my address in Baghdad", which was Al-Ahmad's Bagdad residence where the IED components were located. The Wenshing model TRW-400 transmitter/receiver has a range of more than one kilometer and can be used in the remote detonation of IEDs.

4. An assessment by the U.S. Intelligence Community determined numerous documents found at Al-Ahmad's residence clearly indicate that Al-Ahmad was interested in improving the functionality of his IED designs by incorporating innovative technologies and advanced electronic components. Some examples are:

- Technical specifications for the TRW-400 transmitter/receiver, while this device was never used in IEDs, similar devices operating at the same frequency have been used in IED circuits in Iraq since June, 2005.

-Technical notes on DTMF (dual-tone multiple-frequency) technology used in touch-tone telephones. This technology was introduced in Iraqi IEDs in November, 2005. Al-Ahmad built DTMF circuits at his residence on Omar Street, which were some of the first of this type of device employed in IEDs in Iraq.

-Schematics and technical notes on an IED design incorporating the Microchip PIC16F84A and a DTMF decoder chip were found, which is typical of many IED circuits employed in Iraq.

-Technical specifications of the Princeton Technologies PT2262 and PT2272 remote

U.S. v. AIA 000535

control devices. These components were used in IEDs as a precursor to the Microchip PIC16F84A.

5. Also found in the IED Cache were documents linking Al-Ahmad to the Beirut, Lebanon company SES Lebanon, aka Serpico. The owner of SES Lebanon is Norayr Elmayan. Elmayan, a United States citizen, is being investigated for selling U.S. manufactured parts to embargoed countries in violation of IEEPA. More importantly, it is known that electronics purchased by Elmayan have been sent to Iraq and found during subsequent searches of other bomb-makers residences in Iraq. Additionally, these parts are commonly used components in IED construction. There were several documents found at Al-Ahmad's residence naming SES Lebanon as Wenshing's agent in Lebanon, who would help facilitate sales. Also found was an undated letter to Al-Ahmad from New Elmayan, a principal of SES Lebanon. In the letter, Elmayan stated he was arranging shipment from an unidentified company in Hong Kong (which is believed to be Yeraz or Biznest, both owned by Elmayan), "shipping by your account to Baghdad direct. Signed Newman"

6. Al-Ahmad was using his Yahoo account, ahmsah1977@yahoo.com, to communicate with Wenshing. It is believed that Al-Ahmad has continued to use this account to communicate with other companies who sell electronic parts which could be used in bomb-making materials.

7. Based on the aforementioned facts, there are specific and articulable facts showing that there are reasonable grounds to believe that the records, other information, and the content

U.S. v. AIA 000536

of the electronic communications sought are relevant and material to an ongoing criminal investigation of Ahmad Ibrahim Al-Ahmad for violations of 18 U.S.C., Section 2339B.

U.S. v. AIA 000537