# EXHIBIT 40
# (Pages 1-59)

No. CONS 12-01906

KaDA
5|11

The Embassy of the United States of America presents its
compliments to the Ministry of Foreign Affairs of the Republic
of Turkey and refers to the Embassy's diplomatic note CONS 11-
01215 dated June 21, 2011 which formally requested the
extradition of Ahmad Ibrahim AL-AHMAD, also known as Ahmed
Alahmedalabdaloklah and Ahmed Hassan Farhan.  Since the
extradition request was made, a second set of charges was filed
against AL-AHMAD in the United States District Court for the
District of Arizona.  In addition to the crimes described in
Diplomatic Note CONS 11-01215, AL-AHMAD is now the subject of
Indictment Number CR-12-1263-PHX-NVW-LOA, filed on June 28,
2012, in the United States District Court for the District of
Arizona. Pursuant to the Treaty on Extradition and Mutual ,
Assistance in Criminal Matters between the United States and
Turkey, signed on June 7, 1979, the United States requests the
extradition of AL-AHMAD for all of the crimes charged in
Complaint 11-7234M as well as Indictment CR-12-1263-PHX-NVW-LOA.

Indictment Number CR-12-1263-PHX-NVW-LOA charges AL-AHMAD with:
Count One - Conspiracy to Use a Weapon of Mass Destruction, in
violation of Title 18, United States Code (U.S.C.) Sections
2332(a)(1) and (3); Count Two - Conspiracy to Maliciously Damage

**DIPLOMATIC NOTE**

Filter Review00000354

or Destroy U.S. Government Property by Means of an Explosive, in violation of Title 18 U.S.C. Sections 844(1), (2) and (n); Count Three -Aiding and Abetting the Possession of a Destructive Device During a Crime of Violence, in violation of Title 18 U.S.C. Sections 924(c)(1)(A) and (B)(ii) and (2); and Count Four - Conspiracy to Possess a Destructive Device During a Crime of Violence, in violation of Title 18 U.S.C. Section 924(o).

Based on the charges in Indictment Number CR-12-1263-PHX-NVW-LOA, a warrant for the arrest of AL-AHMAD was issued for AL-AHMAD on June 28, 2011.

The penalty for Counts One and Four is life imprisonment as to each count. The minimum sentence for Count Two is seven years, and for Count Three, it is 30 years. A more detailed explanation of the charges is included in the extradition documents.

The facts that support the subsequent charges against AL-AHMAD remain the same as those outlined in the original request submitted under Diplomatic Note CONS 11-01215. Beginning in January 2005, AL-AHMAD supplied component parts and instructions on the construction and use for improvised explosive devices to members and associates of the 1920 Revolution Brigades (Brigades), an Iraqi insurgent group that has claimed

Filter Review00000355

responsibility for approximately 230 improvised explosive device
attacks, 156 shelling attacks, and 82 sniper and small arms
attacks targeting United States military personnel from 2005 to
2010. AL-AHMAD was also involved in the research and development
of new technologies and methods for the manufacture of
improvised explosive devices that were also used against United
States military personnel. A more detailed summary of the facts
and the evidence in the case is provided in the extradition
documents.

The offenses with which the fugitive is charged are covered
under Article 2 and Appendix Items 1, 31, and 33 of the Treaty.
In addition, the applicable U.S. statute of limitations does not
bar prosecution of AL-AHMAD for the offenses for which
extradition is sought.

The United States also requests the seizure and surrender of all
items, including articles, documents and evidence relating to
the offenses charged for surrender with the fugitive, if
extradition to the United States is granted. Seizure of articles
at the time of arrest is covered by Article 15 of the Treaty.

AL-AHMAD is a citizen of Syria and Iraq, and was born on October
1, 1977, in Deir Azzor, Syria. AL-AHMAD was born to mother

Filter Review00000356

Subhieh Alhammoud and father Ebrahim Alabdaloklah. He has a
Syrian passport number 004365665 in the name of Aluned
Alahmedalabdaloklah, and an Iraqi passport numbered G2143019 in
the name of Ahmed Hassan Farhan. AL-AHMAD is currently detained
in Turkey pending extradition proceedings.

Please note that the statutory text of 18 USC 2332a as contained
in the extradition package is incomplete. The text should
continue to read:

"shall be imprisoned for any term of years or for life, and if
death results, shall be punished by death or imprisoned for any
term of years or for life."

The Embassy of the United States of America avails itself
of this opportunity to renew to the Ministry of Foreign Affairs
of the Republic of Turkey the assurances of its highest
consideration.

Embassy of the United States of America

Ankara, November 2, 2012



# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

Certify That the document hereunto annexed is under the Seal of the Department of Justice United States of America, and that such Seal is entitled to full faith and credit.

*This certificate is not valid if it is removed or altered in any way whatsoever*



*Iss... pursuant to CHX...te of Sep... 1789, 1 Stat. ...22 US... ?, 22USC 265... ...SC 30... ...SC 1733 et. se... ...SC 14... ...ULE 44 Feder... ...s of Ci... ...edure.*

In testimony whereof, I, Hillary Rodham Clinton, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this sixteenth day of August, 2012.

Secretary of State

By _____

Assistant Authentication Officer,
Department of State

Filter Review00000358

# United States
# Department of Justice



Washington, D.C., ——————— August 16 , 2012

to whom these presents shall come, Greeting:

I certify  That  Jeffrey W. Cole, ——————— whose name is signed

accompanying paper, is now, and was at the time of signing the same,

ociate Director, Office of International Affairs, Criminal Division,

S. Department of Justice, Washington, D.C.

——————— duly commissioned and qualified.

In witness, whereof, I, ——————— Eric H. Holder, Jr.

Attorney General of the United States,
have hereunto caused the Seal of the
Department of Justice to be affixed and
my name to be attested by the Director/
Deputy Director, Office of International
Affairs, Criminal Division, of the said
Department on the day and year first
above written.

_Attorney General_

By _____

Director/Deputy Director, Office of International Affairs,
Criminal Division

CRM-183
APR 96

Filter Review00000359

## C E R T I F I C A T I O N

I, Jeffrey W. Cole, Acting Associate Director, Office of International Affairs, United States Department of Justice, United States of America, do hereby certify that attached hereto is the original affidavit, with attachments, of Assistant United States Attorney David A. Pimsner, of the District of Arizona, which was sworn to before United States Magistrate Judge The Honorable David K. Duncan, of the United States District Court of the District of Arizona, on July 16, 2012, and which is offered in support of the supplemental request for the extradition of Ahmad Ibrahim Al-Ahmad from Turkey.

True copies of these documents are maintained in the official files of the United States Department of Justice in Washington, D.C.

8 | 6 | 2012
DATE

Jeffrey W. Cole
Acting Associate Director
Office of International Affairs
Criminal Division
Department of Justice
United States of America

1  JOHN S. LEONARDO
   United States Attorney
2  District of Arizona

   DAVID A. PIMSNER
3  Assistant U.S. Attorney
   Arizona State Bar No. 007480
   Two Renaissance Square
4  40 N. Central Avenue, Suite 1200
   Phoenix, Arizona 85004-4408
5  Telephone (602) 514-7500
   david.pimsner@usdoj.gov

6                    UNITED STATES DISTRICT COURT

7                        DISTRICT OF ARIZONA

8
   United States of America,
9                                          Case No. CR-12-1263-PHX-NVW
                    Plaintiff,
10                                         **AUSA AFFIDAVIT IN SUPPORT OF**
          v.                               **REQUEST FOR EXTRADITION OF**
11                                         **AHMAD IBRAHIM AL-AHMAD**
   Ahmad Ibrahim Al-Ahmad,
12
                    Defendant.
13

14                 **AFFIDAVIT OF DAVID A. PIMSNER**

15        I, DAVID A. PIMSNER, being duly sworn, depose and state:

16  1.    I am a citizen of the United States of America, and a resident of the state of Arizona.

17  2.    I am an Assistant U.S. Attorney in the U.S. Attorney's Office for the District of

18  Arizona. As an Assistant U.S. Attorney for the District of Arizona, I am responsible for the

19  preparation and prosecution of criminal cases. My duties are to prosecute persons charged

20  with criminal violations of the laws of the United States.

21  3.    This affidavit is submitted in support of the United States of America's request for

22  extradition of Ahmad Ibrahim Al-Ahmad (Al-Ahmad) a Syrian national from the country of

23  Turkey to the United States to face criminal charges of Conspiracy to Use a Weapon of Mass

24  Destruction, Conspiracy to Maliciously Damage or Destroy U.S. Government Property by

25  Means of an Explosive, Aiding and Abetting the Possession of a Destructive Device During

26  a Crime of Violence and Conspiracy to Possess a Destructive Device During a Crime of

27  Violence in the District of Arizona as alleged in the criminal Indictment filed June 28, 2012.

28  4.    On May 10, 2011 the defendant was charged by complaint in the District of Arizona,

1  Case Number 11-7234, with one count of Conspiracy to Commit Extraterritorial Murder of a

2  United States National, in violation of Title 18, United States Code, Section 2332(b)(2), and

3  one count of Providing Material Support to Terrorists, in violation of Title 18, United States

4  Code, Section 2339A. In June, 2011 the United States made an extradition request for the

5  defendant based on those charges. The arrest warrant issued, based on the initial charges in

6  Case Number 11-7234, remains in effect. The charges in the present Indictment are in

7  addition to the previous charges and are based on the same conduct. At the time of this

8  supplemental request, the extradition proceedings relating to the initial extradition request by

9  the United States in this matter -- which was based on the initial set of charges -- continue in

10  the Republic of Turkey.

11  5.      This case arose from an investigation by the United States Federal Bureau of

12  Investigation. The investigation revealed that beginning on or about January 2005,

13  Al-Ahmad supplied component parts for improvised explosive devices to members and

14  associates of the 1920 Revolution Brigades (Brigades), an Iraqi insurgent group that has

15  claimed responsibility for approximately 230 improvised explosive device attacks, 156

16  shelling attacks, and 82 sniper and small arms attacks targeting United States military

17  personnel from 2005 to 2010. The parts supplied by Al-Ahmad were used in improvised

18  explosive devices that were employed against United States military personnel in Iraq.

19  Al-Ahmad was also involved in the research and development of new technologies and

20  methods for the manufacture of improvised explosive devices that were also used against

21  United States military personnel.

22  6.      Under the laws of the United States a criminal prosecution may be originally initiated

23  by a federal agent through the filing of a complaint or commenced by a grand jury through its

24  return of an indictment. When a complaint is filed, an arrest warrant is issued and the

25  defendant must be indicted by the grand jury within 30 days of arrest. If the defendant is not

26  found and arrested, he may be indicted at any time. The formal charging instrument required

27  before all trials is a grand jury indictment. A grand jury is composed of at least sixteen (16)

28

2

Filter Review00000362

1  citizens of the United States whom the United States District Court selects at random from
2  the residents of the judicial district where the crime was committed, in this instance the
3  District of Arizona. The grand jury is part of the Judicial Branch of the Federal Government.
4  The purpose of the grand jury is to independently review evidence of crimes as presented by
5  United States law enforcement authorities. After reviewing this evidence, each member of
6  the grand jury must determine and vote on whether there is probable cause to believe that a
7  crime has been committed and probable cause to believe that the particular defendant named
8  in the indictment committed the crime. If at least twelve (12) grand jurors affirmatively vote
9  that there is probable cause to believe that the defendant committed the crimes listed in the
10 indictment, the indictment containing the formal charges is returned. An indictment is thus
11 the formal written document that charges the defendant with the crimes and describes the
12 specific laws that the defendant is charged with violating as well as a brief description of the
13 acts of the defendant that are alleged to be violations of the law. After the indictment is
14 returned, warrants for the arrest of the defendant's named in the indictment are issued by the
15 United States District Clerk at the direction of the United States District Judge.

16 7.      An Indictment was returned and an arrest warrant was issued against Ahmad Ibrahim
17 Al-Ahmad on June 28, 2012, in Case Number CR-12-1263-PHX-NVW.

18 8.      It is the practice of the United States District Court for the District of Arizona to retain
19 the original complaints, indictments, and warrants and file them with the records of the court
20 maintained by the clerk of the court or his deputy. Therefore, I have obtained certified copies
21 of these documents and have attached them as Exhibits A through B to this affidavit.

22 9.      In Case Number CR-12-1263-PHX-NVW, Ahmad Ibrahim Al-Ahmad is charged with
23 the following crimes:

| Counts | Name of Offense | Statute | Maximum Penalties |
|---|---|---|---|
| 1. | Conspiracy to Use a | 18 U.S.C. §§ 2332a(a)(1) | Life Imprisonment and |

3

| | | | |
|---|---|---|---|
| 1 | Weapon of Mass Destruction | and (3) | $250,000 Fine, or both.[1] |
| 2 | | | |
| 2. | Conspiracy to Maliciously Damage or Destroy U.S. Government Property by Means of an Explosive | 18 U.S.C. §§ 844(f)(1), (2) and (n) | Minimum Sentence of 7 Years, Maximum 40 Years and $250,000 Fine, or both. |
| 3. | Aiding and Abetting the Possession of a Destructive Device During a Crime of Violence | 18 U.S.C. §§ 924(c)(1) (A) and (2) | Minimum Sentence 30 Years, Maximum Life Imprisonment and $250,000 Fine, or both. |
| 4. | Conspiracy to Possess a Destructive Device During a Crime of Violence | 18 U.S.C. § 924(o) | Life Imprisonment and $250,000 Fine, or both. |

10.     The first count in the Indictment charges Al-Ahmad with Conspiracy to Use a Weapon of Mass Destruction. The Government must establish each of the following elements beyond a reasonable doubt:

a. First, that two or more persons entered into a conspiracy, the object of which was to use, threatened to use, or attempt to use a weapon of mass destruction without lawful authority against a United States national while the United States national was outside the United States, or against any property that was owned, leased or used by the United States or by any department or agency of the United States, whether the property was within or outside of the United States.

A conspiracy is an agreement made or entered into by at least two people to violate the law by some common plan or course of action. The agreement or understanding need not be formal, written, or even expressed directly in every detail. The Government, however, must prove beyond a reasonable doubt that those who were involved shared a general understanding about the crime. Mere similarity of conduct among various people or the fact that they may have associated with each other or discussed common aims and interests does

---

[1]  If special circumstances were alleged and proven, this count could potentially be punished by death. However, the U.S. Government will not be seeking the death penalty in this matter.

4

1  not necessarily establish proof of the existence of a conspiracy, but may be considered in
2  determining whether a conspiracy existed and whether the defendant participated in it.

3      b. Second, that the defendant knowingly and voluntarily became a member of the
4  conspiracy, with the intent to further its unlawful purpose. The Government must show that
5  the defendant voluntarily joined in the agreement with an awareness of at least some of the
6  basic aims and purposes of the unlawful agreement and an intent to further them, and that he
7  was also aware that the conduct contemplated by the <u>scheme</u> was wrongful or unlawful. The
8  Government need not show that the defendant was aware of every detail of the agreement or
9  even the identity of the other parties to the agreement. The defendant need not have joined in
10 all of the conspiracy's unlawful objectives. Nor is it necessary that the defendant receive any
11 monetary benefit from participating in the conspiracy or have any financial stake in the
12 outcome. Rather, the Government must prove beyond a reasonable doubt that the defendant
13 willfully joined in the agreement - that is, that he was aware of and intended to further its
14 objectives and appreciated their unlawful or wrongful nature.

15 11.    For purposes of the crime of Conspiracy to Use a Weapon of Mass Destruction, the
16 following definitions apply:

17      a. The term "weapon of mass destruction" means any destructive device as defined in
18 18 U.S.C. § 921; and

19      b. The term "property" includes all real and personal property.

20 12.    18 U.S.C. § 921 defines destructive device as any explosive, incendiary, or poison
21 gas:

22                (i) bomb,
23                (ii) grenade,
24                (iii) rocket having a propellant charge of more than four ounces,
25                (iv) missile having an explosive or incendiary charge of more than
26                one-quarter ounce,
27                (v) mine, or

28                                    5

Filter Review00000365

1                    (vi) device similar to any of the devices described in the preceding

2                    clauses.

3    13.     The second count in the indictment charges Al-Ahmad with Conspiracy to

4    Maliciously Damage or Destroy U.S. Government Property by Means of an Explosive. To

5    satisfy its burden of proof, the government must establish each of the following elements

6    beyond a reasonable doubt:

7         a. First, that two or more persons entered into a conspiracy, the object of which was

8    to maliciously damage or destroy, by means of fire or an explosive, a building, vehicle,

9    personal property, or real property, owned by, possessed by, or leased to the United States,

10    any department or agency of the United States. The law applicable to a conspiracy, described

11    above, also applies.

12    14.     The Third count in the indictment charges Al-Ahmad with Aiding and Abetting the

13    Possession of a Destructive Device During a Crime of Violence. To satisfy its burden of

14    proof, the government must establish each of the following elements beyond a reasonable

15    doubt:

16         a. First, Possession of a Destructive Device During a Crime of Violence was

17    committed by someone;

18         b. Second. the defendant knowingly and intentionally aided, counseled, commanded,

19    induced or procured that person to commit each element of Possession of a Destructive

20    Device During a Crime of Violence; and

21         c. Third, the defendant acted before the crime was completed.

22                i. It is not enough that the defendant merely associated with the person

23    committing the crime, or unknowingly or unintentionally did things that were helpful to that

24    person, or was present at the scene of the crime.

25                ii. The evidence must show beyond a reasonable doubt that the

26    defendant acted with the knowledge and intention of helping that person commit Possession

27    of a Destructive Device During a Crime of Violence

28                    6

Filter Review00000366

1                    iii. The government is not required to prove precisely which defendant

2  actually committed the crime and which defendant aided and abetted.

3  15.    The Fourth count in the indictment charges Al-Ahmad with Conspiracy to Possess a

4  Destructive Device During a Crime of Violence.  To satisfy its burden of proof, the

5  government must establish each of the following elements beyond a reasonable doubt:

6          a. First, that two or more persons entered into a conspiracy, the object of which was

7  to possess a firearm, that is, a destructive device, during and in relation to a crime of violence

8  for which he may be prosecuted in a court of the United States, that is,  Conspiracy to Use a

9  Weapon of Mass Destruction, as set forth in Count One and Conspiracy to Maliciously

10  Damage or Destroy U.S. Government Property by Means of an Explosive, as set forth in

11  Count Two.  The law applicable to a conspiracy, described above, also applies.

12  16.    The text of all relevant statutes is attached as Exhibit C.

13

14  **Factual Summary**

15  17.    On August 30, 2006, Coalition Forces discovered one of the largest improvised

16  explosive device (IED) caches in Iraq (hereinafter "Omar Cache") at 50 Omar Street,

17  Baghdad, Iraq.  At that site, U.S. military personnel found numerous IED-related

18  construction materials, test equipment, schematics, and other items related to IED

19  construction – including an IED initiator, hundreds of components for various types of Radio

20  Controlled IEDs and extensive bomb making training aids.  Also found were internet

21  printouts bearing Al-Ahmad's name which featured diagrams and instructions on the process

22  of wiring and controlling a fixed or cellular telephone and documents with electrical and

23  electronics equipment diagrams featuring transistor connections.  An analysis of the items

24  seized from the Omar Cache indicated that the location was essentially an IED factory.

25  18.    Al-Ahmad, while not present at the time of the discovery, was later linked to the Omar

26  Cache by various evidence found there.  Copies of known fingerprints belonging to Al-

27  Ahmad were sent to the FBI Laboratory in Quantico, Virginia, to conduct a comparative

28                                      7

1   analysis with prints found at the Omar Cache. To date, the FBI Lab found over 120 matches

2   to various items found at the Omar Cache. For example, Al-Ahmad's prints were identified

3   on the following types of materials: documents and book pages; a voltage control oscillators

4   in original packaging; a lid to a power meter; an unknown electronics device in light blue

5   metal case; and a piece of white electrical tape (the electrical tape was wrapped around an

6   IED switch and a matching transmitter was also recovered with this device).

7   19.      Moreover, an analysis determined that materials of the kind seized at the Omar Cache

8   were associated with IED attacks where U.S. Forces incurred casualties. For example, two

9   attacks which were caused by RCIED[2] initiators using a DTMF custom circuit and a mobile

10  phone are linked to the materials found in the Omar Cache. One incident used an initiator

11  circuit that matched circuits recovered from the Omar Cache. The other incident used a

12  circuit that is very similar to those found in the Omar Cache. On April 6, 2007, in the

13  outskirts of southern Baghdad, near Baghdad International Airport, three U.S. soldiers were

14  killed in action by a cellular phone initiated IED. The IED initiator used in this incident

15  includes a DTMF custom circuit that matched three circuits recovered in the Omar Cache.

16  The circuits all have nearly identical traces, share a common set of electrical components,

17  and function identically. Furthermore, the circuits were likely manufactured using the same

18  processes. On May 14, 2007, in northern Baghdad, approximately one-half mile from the

19  Omar Street facility, one U.S. soldier was killed in action and four wounded in action by a

20  cellular phone initiated IED. The IED electronic switch used in this incident included a

21  DTMF custom circuit that was very similar to three custom circuits recovered in the Omar

22  Cache. The custom circuits had subtle differences in their trace layouts, but otherwise used a

23  common set of components and functioned identically.

24

25

26          [2] A radio-controlled IED ("RCIED") provides a wireless method of IED initiation through the use of
    a transmitter and a matched receiver. RCIEDs recovered from the battlefield in Iraq include a mobile phone used
27          as the receiver connected to a homemade dual-tone multi-frequency (DTMF) circuit board to decode the
    incoming signals.

28                                                          8

1   20.    During a custodial interview, a cooperating witness who has agreed to testify, was
2   shown a photograph of Al-Ahmad, whom he identified as "Ahmad." The cooperating
3   witness indicated he met Al-Ahmad approximately six times, always in Baghdad, even
4   though Al-Ahmad was originally from Syria. He also stated that in 2007, Al-Ahmad
5   relocated to China, via Syria, with his wife and child and that, while in China, Al-Ahmad
6   designed DTMF boards to remotely detonate IEDs and commissioned a Chinese factory to
7   manufacture them. Al-Ahmad told the cooperating witness that he had designed the DTMF
8   boards, and that he was selling them solely to the 1920 Revolution Brigades to assist in the
9   resistance against American Forces. The cooperating witness stated that Al-Ahmad was
10  aware the DTMF boards were being used in IEDs against Americans. Al-Ahmad told the
11  cooperating witness that he "would do anything against Americans" and explained the
12  DTMF boards shipped by Al-Ahmad did not have any other purpose, or commercial value,
13  other than being used to detonate IEDs. The cooperating witness advised he had seen a
14  DTMF board early in 2007, when Al-Ahmad showed one to 1920 Revolution Brigades'
15  members.

16   21.    Additionally, the investigation found contacts between Al-Ahmad and other
17  individuals who were members or associates of the 1920 Revolution Brigades primarily
18  located in Iraq and Syria. Many of the contacts involved Al-Ahmad supplying these
19  individuals with components that could be used in the construction and operation of IEDs.
20   22.    The evidence of these crimes is outlined in more detail in Exhibit D, the affidavit of
21  FBI Special Agent Dina L. McCarthy.

22

23   **Statute of Limitations**

24   23.    As death or serious physical injury occurred as a result of Al-Ahmad's criminal
25  activity for Conspiracy to Use a Weapon of Mass Destruction and Conspiracy to Maliciously
26  Damage or Destroy U.S. Government Property by Means of an Explosive, according to 18
27  U.S.C. § 3286(b), there is no statute of limitations for the crimes with which he is charged.
28                                     9

1   This means that formal charges may be filed at any time and no period of time will bar

2   prosecution of these offenses. In this case, the offenses listed in the complaint are alleged to

3   have taken place beginning in or about 2005 and continuing to in or about July 2010. The

4   Indictment was returned on June 28, 2012. The charges are not impacted by the lapse of time

5   or any statute of limitations. The text of 18 U.S.C. § 3286 is attached as Exhibit E.

6   24.      The statute of limitations applicable to Aiding and Abetting the Possession of a

7   Destructive Device During a Crime of Violence and Conspiracy to Possess a Destructive

8   Device During a Crime of Violence is Title 18, United States Code, Section 3282, which

9   allows prosecution to commence within five (5) years after the offense is committed. A copy

10  of the statute is attached as Exhibit E. The indictment is dated June 28, 2012, and the

11  charged offenses occurred beginning as early as on or about January 2010 and continuing

12  through on or about July 2010. Therefore, the charges were filed within the prescribed time.

13

14  **Applicability of the Extradition Treaty**

15  25.      Violations of the laws of the United States, for which the defendants are charged, are

16  offenses for which extradition may be granted under the laws of the United States and are

17  offenses considered as extraditable offenses within the meaning of Article 2 of the

18  extradition treaty between the United States and Turkey, which entered into force on January

19  1, 1981.

20

21  **List of Exhibits**

22  26.      The following are attached as exhibits to this affidavit:

23          Exhibit A      Indictment in case number CR-12-1263-PHX-NVW

24          Exhibit B      Arrest Warrant in case number CR-12-1263-PHX-NVW

25          Exhibit C      Text of Relevant statutes of the offenses charged

26          Exhibit D      Affidavit of FBI Special Agent Dina McCarthy

27          Exhibit E      Text of the Statute of Limitations

28                                        10

Filter Review00000370

1   26.    I believe that this affidavit and the attached exhibits establish proof of Ahmad

2   Ibrahim Al-Ahmad's criminal activity in violation of the laws of the United States of

3   America as alleged in the formal charges contained in the complaint. This affidavit is sworn

4   to in the presence of a United States Magistrate Judge in the District of Arizona, United

5   States of America, who is authorized to administer oaths.

6

7

8                                  DAVID A. PIMSNER
                                   Assistant United States Attorney

9

10       I hereby certify that this is the original affidavit subscribed and sworn to before me on

11  this _16th_ day of July, 2012.

12

13

14                      HONORABLE DAVID K. DUNCAN
                       U.S. Magistrate Judge
                       U.S. District Court for the District of Arizona

15

16

17

18

19

20

21

22

23

24

25

26

27

28                            11

Filter Review00000371

Case 2:12-cr-01263-NVW *SEALED*   Document 3   Filed 06/28/12   Page 1 of 6

FILED
RECEIVED
LODGED
COPY

JUN 28 2012

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

# SEALED

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 12 1263 PHX NVW LOA |
| Plaintiff, | **INDICTMENT** |
| v. | |
| Ahmad Ibrahim Al-Ahmad, aka | VIO: 18 U.S.C. §§ 2332a(a)(1) and (3)<br>(Conspiracy to Use a Weapon of<br>Mass Destruction)<br>Count 1 |
| Ahmed Alahmedalabdaloklah, aka | |
| Ahmed Hassan Farhan, aka | 18 U.S.C. §§ 844(f)(1), (2) and (n)<br>(Conspiracy to Maliciously<br>Damage or Destroy U.S.<br>Government Property by Means<br>of an Explosive)<br>Count 2 |
| Ahmad Ibrahim, aka | |
| Ahmad Ebrahim, and aka | |
| Ahmed Hassan Farhan, | |
| (Counts 1 - 4) | 18 U.S.C. §§ 924(c)(1)(A) and<br>(B)(ii) and 2<br>(Possession of a Destructive<br>Device During a Crime of<br>Violence and Aiding and<br>Abetting)<br>Count 3 |
| Defendant. | |
| | 18 U.S.C. § 924(o)<br>(Conspiracy to Possess a<br>Destructive Device During a<br>Crime of Violence)<br>Count 4 |
| | Forfeiture Allegation |

THE GRAND JURY CHARGES:

## Count One

(Conspiracy to Use a Weapon of Mass Destruction)

1    At all times material to this Indictment:

2    1. Certain component parts used in Improvised Explosive Devices (IED's), employed
3    against U.S military personnel and U.S. military vehicles in Iraq, and used in furtherance of the
4    charges contained in this Indictment were originally manufactured by a company headquartered
5    in the United States, in the District of Arizona, and traveled in interstate or foreign commerce.
6    Therefore, pursuant to Title 18, United States Code, Section 3237 jurisdiction is within the venue
7    of the United States District Court for the District of Arizona. Additionally, the acts referred to
8    in this Indictment were committed in Iraq and elsewhere outside of the United States, but within
9    the extraterritorial jurisdiction of the United States and, therefore, pursuant to Title 18, United
10    States Code, Section 3238, within the venue of the United States District Court for the District
11    of Arizona.

12    2. The defendant in this case is AHMAD IBRAHIM AL-AHMAD, a Syrian national, also
13    known as Ahmed Alahmedalabdaloklah, Ahmed Hassan Farhan, Ahmad Ibrahim, Ahmad
14    Ebrahim, and Ahmed Hassan Farhan, hereinafter AHMAD IBRAHIM AL-AHMAD.

15    3. Beginning in or about January, 2005 and continuing to on or about July, 2010, in Iraq and
16    elsewhere outside of the United States, defendant, AHMAD IBRAHIM AL-AHMAD, did
17    knowingly combine, conspire, confederate, and agree together and with other persons, both
18    known and unknown to the grand jury, without lawful authority, to use a weapon of mass
19    destruction, that is, a destructive device, against nationals of the United States, while such
20    nationals were outside the United States and against property that was owned, leased and used
21    by the United States outside the United States.

22    4. In furtherance of the aforesaid conspiracy and to accomplish the objects thereof,
23    defendant, AHMAD IBRAHIM AL-AHMAD, together with his co-conspirators, both known
24    and unknown to the Grand Jury, committed, among others, the following overt acts:

25    a.    Beginning in or about January, 2005 and continuing to on or about July,
26    2010, AHMAD IBRAHIM AL-AHMAD procured component parts for wireless initiation
27    systems to be used in radio-controlled improvised explosive devices (IEDs) including from, but
28    not limited to, a company headquartered in the District of Arizona.

1              b.      In and before August 2006, defendant, AHMAD IBRAHIM AL-AHMAD
2 utilized a house located at 50 Omar Street, Baghdad, Iraq, to manufacture parts for wireless
3 initiation systems to be used in radio-controlled IEDs which were used to target U.S. military
4 personnel and U.S. military vehicles in Iraq.

5              c.      In and before August 2006, AHMAD IBRAHIM AL-AHMAD designed
6 Dual Tone Multi Frequency (DTMF) decoder custom circuit boards which were utilized in radio-
7 controlled IEDs that were used to target U.S. military personnel and U.S. military vehicles in
8 Iraq.

9              d.      Beginning in or about January, 2005 and continuing to on or about July,
10 2010, Ahmad Ibrahim Al-Ahmad communicated with coconspirators, both known and unknown,
11 regarding attacks against Americans in Iraq.

12             e.      Beginning in or about January, 2005 and continuing to on or about July,
13 2010, defendant, AHMAD IBRAHIM AL-AHMAD, supplied component parts to members and
14 associates of the 1920 Revolution Brigades, an Iraqi insurgent group. Those parts were then
15 used in improvised explosive devices (IEDs) that were employed against United States military
16 personnel and U.S. military vehicles in Iraq. Unknown coconspirators of defendant, AHMAD
17 IBRAHIM AL-AHMAD, then employed the component parts against U.S. military personnel
18 including, but not limited to the following:

19             i.      On April 6, 2007, in the outskirts of southern Baghdad, near
20 Baghdad International Airport, three U.S. soldiers were killed in action by a cellular-phone
21 initiated IED. The IED initiator used in this incident included a DTMF custom circuit that
22 matched three circuits recovered from 50 Omar Street, Baghdad, Iraq in August 2006.

23             ii.      On May 14, 2007, in northern Baghdad, approximately one-half mile
24 from the 50 Omar Street, Baghdad, Iraq, one U.S. soldier was killed in action and four wounded
25 in action by a cellular phone initiated IED. The IED electronic switch used in this incident
26 included a DTMF custom circuit that was very similar to three custom circuits recovered from
27 50 Omar Street, Baghdad, Iraq in August 2006

28           All in violation of Title 18, United States Code, Section 2332a(a)(1)&(3).

## Count Two

### (Conspiracy to Maliciously Damage or

### Destroy U.S. Government Property by Means of an Explosive)

1. Paragraphs 1 through 4 of Count One of this Indictment are hereby incorporated by reference as if fully realleged and restated herein.

2. Beginning in or about January, 2005 and continuing to on or about July, 2010, in Iraq and elsewhere outside of the United States, defendant, AHMAD IBRAHIM AL-AHMAD, did knowingly combine, conspire, confederate, and agree together and with other persons, both known and unknown to the grand jury, to maliciously damage, destroy, attempt to damage, attempt to destroy, vehicles, used by the United States Military in Iraq, in whole and in part owned, or possessed by the United States Department of Defense, a department of the United States) by means of explosives.

All in violation of Title 18, United States Code, Section 844(f)(1), (2)&(n).

## Count Three

### (Possession of a Destructive Device During a Crime

### of Violence and Aiding and Abetting)

1. Paragraphs 1 through 4 of Count One of this Indictment are hereby incorporated by reference as if fully realleged and restated herein.

2. Beginning in or about January, 2005 and continuing to on or about July, 2010, in Iraq and elsewhere outside of the United States, defendant, AHMAD IBRAHIM AL-AHMAD, aided and abetted other persons, both known and unknown to the grand jury, to knowingly possess a firearm, that is, a destructive device, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, Conspiracy to Use a Weapon of Mass Destruction, as set forth in Count One of this Indictment and Conspiracy to Maliciously Damage or Destroy U.S. Government Property by Means of an Explosive, as set forth in Count Two of this Indictment.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)&(B)(ii) and 2.

### Count Four

(Conspiracy to Possess a Destructive Device During a Crime of Violence )

1. Paragraphs 1 through 4 of Count One of this Indictment are hereby incorporated by reference as if fully realleged and restated herein.

2. Beginning in or about January, 2005 and continuing to on or about July, 2010, in Iraq and elsewhere outside of the United States, defendant, AHMAD IBRAHIM AL-AHMAD, did knowingly combine, conspire, confederate, and agree together and with other persons, both known and unknown to the grand jury to commit an offense under Title 18, United States Code, Section 924(c), that is, to possess a firearm, that is, a destructive device, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, Conspiracy to Use a Weapon of Mass Destruction, as set forth in Count One of this Indictment, and Conspiracy to Maliciously Damage or Destroy U.S. Government Property by Means of an Explosive, as set forth in Count Two of this Indictment.

All in violation of Title 18, United States Code, Section 924(o).

### Forfeiture Allegation

1. The allegations contained in Counts One through Four of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offenses set forth in this Indictment, defendant, Ahmad Ibrahim Al-Ahmad, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code. Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. If any of the property described above, as a result of any act or omission of the defendant:

  a.  cannot be located upon the exercise of due diligence;

  b.  has been transferred or sold to, or deposited with, a third party;

  c.  has been placed beyond the jurisdiction of the court;

  d.  has been substantially diminished in value; or

Filter Review00000376

1   e. has been commingled with other property which cannot be divided without

2     difficulty,

3 the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

4 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

5 2461(c).

6  All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

7

8          A TRUE BILL

9

10           /S/

11         FOREPERSON OF THE GRAND JURY
           Date: June 28, 2012

12

13 ANN BIRMINGHAM SCHEEL
  Acting United States Attorney
14 District of Arizona

15  /S/

16 DAVID A. PIMSNER
17 Assistant U.S. Attorney

18  /S/

19 JOSEPH N. KASTER
20 Trial Attorney
  Department of Justice
21 National Security Division

22

23

24

25

26

27          7/16/12
        I hereby attest and certify on
        that the foregoing document is a full, true and correct
28        copy of the original on file in my office and in my cus-
        tody.
        CLERK, U.S. DISTRICT COURT
        DISTRICT OF ARIZONA
        by _____ Deputy

Filter Review00000377

Case 2:12-cr-01263-NVW *SEALED* Document 7 (Court only) Filed 06/28/12 Page 1 of 1

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Arizona



United States of America

v.

Ahmad Ibrahim Al-Ahmad,
a.k.a. Ahmed Alahmedalabdaloklah
a.k.a. Ahmed Hassan Farhan, a.k.a. Ahmad Ibrahim,
a.k.a. Ahmad Ebrahim, a.k.a. Ahmed Hassan Faran
*Defendant*

Case No.   CR 12-1263-PHX-NVW

## ARREST WARRANT

To:      Any authorized law enforcement officer

YOU ARE COMMANDED to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*      AHMAD IBRAHIM AL-AHMAD
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment        ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information      ☐ Complaint

☐ Probation Violation Petition        ☐ Supervised Release Violation Petition      ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

18:2332a(a)(1)&(3) - Conspiracy to Use a Weapon of Mass Destruction
18:844(f)(1), (2) & (n) - Conspiracy to Maliciously Damage or Destroy U.S. Government Property by Means of an
Explosive
18:924(c)(1)(A)&(B)(II) and 2 - Possession of a Destructive Device During a Crime of Violence; Aid and Abet
18:924(o) -    Conspiracy to Possess a Destructive Device During a Crime of Violence

Date:  06/28/2012 _____                          _____  M. Pruneau (for)
                                                                          *Issuing officer's signature*

City and state:      Phoenix, Arizona _____                  BRIAN D. KARTH, DCE / CLERK OF COURT
                                                                          *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ |
| at *(city and state)*  _____. |

                                                    16-07-2013

Date: _____                          _____ *Arresting officer's signature*
                          I hereby attest and certify on _7/16/2017_
                          that the foregoing document is a full, true and correct
                          copy of the original on file in my office and in my cus-      _____
                          tody.                                                          *Printed name and title*
                          CLERK U.S. DISTRICT COURT
                          DISTRICT OF ARIZONA
                   by _____ Deputy

Filter Review00000378

**Conspiracy to Use a Weapon of Mass Destruction**
18 U.S.C. § 2332a

(a) Offense against a national of the United States or within the United States.--A person who, without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction--

(1) against a national of the United States while such national is outside of the United States;

. . . .

(3) against any property that is owned, leased or used by the United States or by any department or agency of the United States, whether the property is within or outside of the United States; or

. . . .

(c) Definitions.--For purposes of this section--

(1) the term "national of the United States" has the meaning given in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22));

(2) the term "weapon of mass destruction" means--

(A) any destructive device as defined in section 921 of this title;

. . . .

(3) the term "property" includes all real and personal property.

**Definitions**
18 U.S.C. § 921

(a) As used in this chapter--

. . . .

4) The term "destructive device" means--
(A) any explosive, incendiary, or poison gas--

(i) bomb,
(ii) grenade,
(iii) rocket having a propellant

1

Filter Review00000379

charge of more than four ounces,
(iv) missile having an explosive or
incendiary charge of more than
one-quarter ounce,
(v) mine, or
(vi) device similar to any of the
devices described in the preceding
clauses.

**Conspiracy to Maliciously Damage or Destroy U.S. Government Property by Means of an Expolsive**
18 U.S.C.A. § 844

. . . .

(f)(1) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

(2) Whoever engages in conduct prohibited by this subsection, and as a result of such conduct, directly or proximately causes personal injury or creates a substantial risk of injury to any person, including any public safety officer performing duties, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both.

. . . .

(n) Except as otherwise provided in this section, a person who conspires to commit any offense defined in this chapter shall be subject to the same penalties (other than the penalty of death) as the penalties prescribed for the offense the commission of which was the object of the conspiracy.

**Principals**
18 U.S.C. § 2 (Aiding and Abetting)

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

2

Filter Review00000380

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**Aiding and Abetting the Possession of a Destructive Device During a Crime of Violence**

18 U.S.C. § 924

. . . .

(c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--

(B) If the firearm possessed by a person convicted of a violation of this subsection--

. . . .

(ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

. . . .

(ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

. . . .

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and--

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

3

Filter Review00000381

**Conspiracy to Possess a Destructive Device During a Crime of Violence**

18 U.S.C. § 924

. . . .

(o) A person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both; and if the firearm is a machinegun or destructive device, or is <u>equipped</u> with a firearm silencer or muffler, shall be imprisoned for any term of years or life.

4

Filter Review00000382

JOHN S. LEONARDO
United States Attorney
District of Arizona

DAVID A. PIMSNER
Assistant U.S. Attorney
Arizona State Bar No. 007480
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
david.pimsner@usdoj.gov

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Ahmad Ibrahim Al-Ahmad,<br><br>　　　　Defendant. | Case No. CR-12-1263-PHX-NVW<br><br>**AFFIDAVIT OF DINA L. MCCARTHY, SPECIAL AGENT, FEDERAL BUREAU OF INVESTIGATION, IN SUPPORT OF REQUEST FOR EXTRADITION OF AHMAD IBRAHIM AL-AHMAD** |

## AFFIDAVIT OF DINA L. MCCARTHY

I, Dina L. McCarthy, being duly sworn, depose and state:

1.　I am a citizen of the United States of America, and residing in the State of Arizona.

2.　I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since March 2001. This affidavit is being submitted in support of the United States of America's request for the extradition of Ahmad Ibrahim Al-Ahmad ("Al-Ahmad"), a Syrian national, from Turkey to the United States.

**Factual Summary**

3.　During November 2009, the FBI began an investigation regarding the activities of Al-Ahmad.

4.　The investigation to date has revealed the following facts:

　　a.　Al-Ahmad supplied component parts to members and associates of the 1920 Revolution Brigades, an Iraqi insurgent group. These parts were then used in improvised explosive devices (IEDs) that were employed against United States military personnel in Iraq.

1 Further, Al-Ahmad was involved in the research and development of new technologies and
2 methods for the manufacture of IEDs which were also used against United States military
3 personnel.

4        b.  Beginning in or about 2005 and continuing to in or about July 2010, Al-Ahmad and
5 others known and unknown, committed a violation of 18 U.S.C.§§ 2332a(a)(1) and (3),
6 Conspiracy to Use a Weapon of Mass Destruction, 18 U.S.C. §§ 844(f)(1), (2) and (n),
7 Conspiracy to Maliciously Damage or Destroy U.S. Government Property by Means of an
8 Explosive, 18 U.S.C. §§ 924(c)(1)(A) and (B)(ii) and 2, Aiding and Abetting the Possession of
9 a Destructive Device During a Crime of Violence and 18 U.S.C. § 924(o), Conspiracy to Possess
10 a Destructive Device During a Crime of Violence.

11 5.        On August 30, 2006, Coalition Forces discovered at 50 Omar Street, Baghdad, Iraq, one
12 of the largest IED caches found in Iraq ("Omar Cache"). Al-Ahmad, while not present at the
13 time of the discovery, was later linked to the Omar Cache by various evidence found there,
14 detailed more fully below.  The military personnel found numerous IED related construction
15 materials, test equipment, schematics, and other items related to IED construction – including
16 an IED initiator, hundreds of components for various types of Radio Controlled IEDs[1]
17 (RCIEDs), and extensive bomb making training aids. Also found were internet printouts bearing
18 Al-Ahmad's name which featured diagrams and instructions on the process of wiring and
19 controlling a fixed or cellular telephone and documents with electrical and electronics equipment
20 diagrams featuring transistor connections.

21 6.        The investigation revealed that an analysis of the items seized from the Omar Cache
22 indicated that the location was essentially an IED factory.  The cache included all of the
23 necessary tools and materials for manufacturing Dual Tone Multi Frequency (DTMF) decoder

24

25 ─────────────────────
[1] A radio-controlled IED ("RCIED") provides a wireless method of IED initiation through the use of
26 a transmitter and a matched receiver. RCIEDs recovered from the battlefield in Iraq include a mobile phone used
as the receiver connected to a homemade dual-tone multi-frequency (DTMF) circuit board to decode the
27 incoming signals.

28                                        2

1  custom circuits and also included documents with apparent design plans. The materials found
2  at the Omar Cache could also have been used for modifying commercial electronics to function
3  as low power RCIEDs and for manufacturing the DTMF type of custom circuits which are
4  commonly used as initiators in RCIEDs. Photographs of the cache are attached to this affidavit
5  as Attachment 4.

6  7.  Some of the key items that indicated the cache likely served as an IED factory are listed
7  below:

8  a. Assorted documents, including a DTMF circuit board layout, parts list, and datasheets
9  – these documents are likely design notes for the manufacturing of IED electronics;

10  b. Several sheets of blank, copper-clad boards – the boards are sent through a chemical
11  etching process to produce custom circuit boards;

12  c. Hydrochloric (muriatic) acid, hydrogen peroxide, and acetone – the hydrochloric acid
13  and hydrogen peroxide form an etching solution, and the acetone is used as a cleaning agent in
14  the process of producing custom circuit boards;

15  d. Angle grinder and electric drill – these tools cut finished circuit boards from the sheet
16  and make holes in the boards for mounting electronic components;

17  e. Unpopulated, etched circuit boards – these boards represent the finished product of
18  the etching and cutting process. Multiple types of unpopulated DTMF decoder custom circuits
19  were recovered;

20  f. Electronic components – all of the components needed to build DTMF circuits were
21  recovered in large quantities;

22  g. Soldering irons and solder – these items are used to mount electronic components to
23  the circuit boards;

24  h. Completed DTMF circuits – there were at least six complete DTMF circuits from the
25  cache, which represented the finished product of the board manufacturing process;

26  i. Mobile phones and Personal Mobile Radios (PMRs) – DTMF circuits are commonly
27  combined with these wireless devices to operate as receivers in RCIEDs.

28  3

8.      The items found at the Omar Cache were sufficient to produce approximately 60 DTMF custom circuits.   Notably, the cache included design documents, intermediate products (unpopulated circuit boards), and tools required for the manufacturing process. Such a collection indicates that the cache was not simply a storage site for IED-related materials, but that it was likely intended to build electronic IED switches (i.e., an IED electronics factory).

9.      In addition, the cache included circuitry for use in other types of RCIEDs, including many completed devices. The JDQ-6A radio controlled switches, YK1000, and YK1500 transmitters discovered at the cache are commonly used in low-power RCIEDs. The Remote Controlled (RC) toy car transmitter and receiver and Al Khateeb key fob transmitters found at the cache have low-power RCIED applications as well. The cache also included a DTMF-9 type of custom circuit and multiple Microchip PIC microcontrollers (key component for the DTMF-9 custom circuits). The cache could have been used to exploit commercial devices for use in low-power RCIEDs or to manufacture DTMF custom circuits. Numerous documents clearly indicated that the individual(s) involved with the Omar Cache were interested in improving the functionality of the IED designs through incorporation of innovative technologies and advanced electronic components. For instance:

        a.   Technical specifications for the TRW-400-5 transceiver – while this specific device has not been found in IEDs, similar devices operating at the same frequency have been employed in IED circuits in Iraq since June 2005. Emails belonging to Al-Ahmad in August 2005 discussed this component.

        b.   Technical notes on dual-tone multiple-frequency (DTMF) technology used in touch-tone telephones – this technology was introduced in Iraqi IEDs in November 2005.

        c.   Schematics and technical notes on IED design incorporating the Microchip PIC16F84A and a DTMF decoder chip. This design is typical of many IED circuits employed in Iraq.

        d.   Technical specifications of the Princeton Technologies PT2262 and PT2272 remote control devices. These components were used in IEDs prior to the Microchip PIC16F84A.

4

1   10.   After examining the IED components recovered from the Omar Cache, it was discovered
2   that certain components were originally manufactured by a company headquartered in the United
3   States, in the State of Arizona.

4   11.   Copies of known fingerprints belonging to Al-Ahmad were sent to the FBI Laboratory
5   in Quantico, Virginia, to conduct a comparative analysis with prints found at the Omar Cache.
6   Those fingerprints are attached to this affidavit as Attachment 2.  To date, the FBI Lab found
7   over 120 matches to various items found at the Omar Cache.  For example, Al-Ahmad's prints
8   were identified on the following types of materials: documents and book pages; a voltage control
9   oscillators in original packaging; a lid to a power meter; an unknown electronics device in light
10  blue metal case; and a piece of white electrical tape (the electrical tape was wrapped around an
11  IED switch and a matching transmitter was also recovered with this device).

12  12.   In addition, a collection of documents were seized from the Omar Cache which included
13  the following: various photos of Ahmad Ibrahim Ahmad;  a handwritten document in Arabic
14  with a translated title of "Explosives," comprising 19 chapters covering the classification and
15  effects of various explosives, accessories used with explosives, detonation circuits, handling of
16  explosives, demolition of buildings, bridges, airports, roads, etc., and timing devices; a voltage
17  tester that is labeled "Al Ahmad Manufacturing for Electronic Products" (it appeared that a small
18  number of voltage testers were also being constructed at the Omar Cache); electronic circuit
19  board designs and diagrams on micro fiche slides which included a sticker for Al Ahmadi
20  electronics production warranty and an envelope with "Ahmad Al Ahmadi" written on it
21  containing an order of "neon board;" a notebook that had the name "Ahmad Al Ahmad" written
22  on the front from the Mustansriyyah University Nuclear lab; a second notebook that had the
23  name "Ahmad Al Ahmad" written on the front containing drawings of electrical circuits, circuit
24  board designs, and formulas from the "Al Rafidayn" school.  There was also a letter from 'Abd
25  al Karim 'Amur to Ahmad Ibrahim Al Ahmad; documents containing technical notes and lessons
26  (on an "Al Ahmad Electronics Industries" notebook) detailing electrical and electronic circuits,
27  automotive sensors and wiring, batteries, frequencies, math calculations, current and voltage,

28                                                        5

1   and various electronic components; documents also included emails, sales receipts, letters, and
2   personal statements; an electronics booklet describing how to employ remote control technology
3   to command a mobile phone, wireless device, and land line phone to detonate explosives.

4   13.     As part of the investigation, an analysis determined that materials of the kind seized at
5   the Omar Cache were associated with IED attacks where U.S. Forces incurred casualties. For
6   example, two attacks which were caused by RCIED initiators using a DTMF custom circuit and
7   a mobile phone are linked to the materials found in the Omar Cache. One incident used an
8   initiator circuit that matched circuits recovered from the Omar Cache. The other incident used
9   a circuit that is very similar to those found in the Omar Cache. On April 6, 2007, in the outskirts
10   of southern Baghdad, near Baghdad International Airport, three U.S. soldiers were killed in
11   action by a cellular phone initiated IED. The IED initiator used in this incident includes a
12   DTMF custom circuit that matched three circuits recovered in the Omar Cache. The circuits
13   all have nearly identical traces, share a common set of electrical components, and function
14   identically. Furthermore, the circuits were likely manufactured using the same processes. On
15   May 14, 2007, in northern Baghdad, approximately one-half mile from the Omar Street facility,
16   one U.S. soldier was killed in action and four wounded in action by a cellular phone initiated
17   IED. The IED electronic switch used in this incident included a DTMF custom circuit that was
18   very similar to three custom circuits recovered in the Omar Cache. The custom circuits had
19   subtle differences in their trace layouts, but otherwise used a common set of components and
20   functioned identically.

21   14.     During a custodial interview, W-1, a cooperating witness who has agreed to testify,
22   provided the following information about Al-Ahmad. W-1 was shown a photograph of
23   Al-Ahmad, whom he identified as "Ahmad." W-1 indicated he met Al-Ahmad approximately
24   six times, always in Baghdad, even though Al-Ahmad was originally from Syria. W-1 stated that
25   in 2007, Al-Ahmad relocated to China, via Syria, with his wife and child. W-1 stated that while
26   in China, Al-Ahmad designed DTMF boards to remotely detonate IEDs and commissioned a
27   Chinese factory to manufacture them. Al-Ahmad told W-1 that he had designed the DTMF

28                                      6

1 boards, and that he was selling them solely to the 1920 Revolution Brigades to assist in the
2 resistance against American Forces. W-1 acknowledged that Al-Ahmad was aware the DTMF
3 boards were being used in IEDs against Americans. Al-Ahmad told W-1 he "would do anything
4 against Americans." W-1 explained the DTMF boards shipped by Al-Ahmad did not have any
5 other purpose, or commercial value, other than being used to detonate IEDs. W-1 advised he had
6 seen a DTMF board early in 2007, when Al-Ahmad showed one to 1920 Revolution Brigades'
7 members.

8   15.   The 1920 Revolution Brigades (Kataib Thawrat al Ishreen) ("the Brigades") is an armed
9 Iraqi resistance group that opposes foreign occupation in Iraq. During the height of the group's
10 operational activities from approximately 2003 to 2007, the Brigades was among one of the most
11 prominent jihadist groups in Iraq.

12   16.   On September 6, 2007, the Brigades announced that they joined eight other like minded
13 Iraqi armed factions in forming a unified front against the U.S. led coalition under the name of
14 "Jihad and Change Front (JACF)." From its inception to present day, the Brigades'/JACF's
15 objective of resisting what they view as the "U.S. occupation" has translated into a campaign of
16 violent hit and run attacks against U.S. forces by the Brigades and attempts to sway public
17 opinion against the U.S. through negative media reports generated by the Brigades'/JACF's
18 media wings. Press statements published by the Brigades reflect the group's use of Improvised
19 Explosive Devices (IEDs) to target U.S. military vehicles and dismounted foot patrols; the use
20 of mortars, rockets, and missiles to shell U.S. military bases and positions; and the use of snipers
21 to shoot U.S. military personnel.

22   17.   According to its media wing, the Brigades claimed responsibility for approximately 230
23 IED attacks, 156 shelling attacks, 82 sniper and small arms attacks, and 45 non-specific attacks
24 targeting U.S. military personnel from 2005 to 2010. In some instances these press statements
25 were accompanied by video footage documenting the attacks. Many of these videos show
26 dramatic attacks on U.S. military vehicles which likely resulted in casualties to U.S. military
27 personnel.

28                                        7

18.     Additionally, the investigation found contacts between Al-Ahmad and other individuals who were members or associates of the 1920 Revolution Brigades primarily located in Iraq and Syria. Many of the contacts involved Al-Ahmad supplying these individuals with components that could be used in the construction and operation of IEDs.

**Location and Identification Information**

19.     Al-Ahmad is a citizen of Syria, born on October 1, 1977, in Deir Azzor, Syria. Al-Ahmad was born to mother Subhieh Alhammoud and father Ebrahim Alabdaloklah. He has a Syrian passport numbered 004365665 in the name of Ahmed Alahmedalabdaloklah, and an Iraqi passport numbered G2143019 in the name of Ahmed Hassan Farhan. Those passports are attached to this affidavit as Attachment 1. Additionally, Al-Ahmad has a number of aliases and dates of birth to include:

      a.  ALAHMEDALABDALOKLAH, f/n Ahmed;

      b.  FARHAN, f/n Ahmed Hassan;

      c.  IBRAHIM, f/n Ahmad;

      d.  EBRAHIM, f/n Ahmad;

      e.  FARHAN, f/n Ahmed Hassan (born 7 April 1975);

      f.  ALAHMEDALABDALOKLAH, f/n Ahmed (born 1 January 1977); and

      g.  ALAHMEDALABDALOKLAH, f/n Ahmed (born 10 January 1977).

20.     A photograph of Al-Ahmad is attached as Attachment 3 to this affidavit. Through my investigation, I am aware of Al-Ahmad's appearance and can attest that the photograph attached as Attachment 3 is a photograph of Al-Ahmad.

21.     Al-Ahmad arrived in Istanbul, Turkey on May 17, 2011 on flight EK 121. He was, thereafter, arrested and is currently in the custody of Turkish authorities.

//

//

8

1   List of **Attachments**

2   22.   The following attachments are incorporated into this affidavit by reference:

3         Attachment 1 - Copies of Al-Ahmad's Syrian and Iraqi passports;

4         Attachment 2 - Known thumb prints of Al-Ahmad;

5         Attachment 3 - Photograph of Al-Ahmad; and

6         Attachment 4 - Photographs of Omar Cache

7

8         _____

9         DINA L. MCCARTHY
          Federal Bureau of Investigation, Special Agent

10

11        I hereby certify that this is the original affidavit subscribed and sworn to before me on this

12        _____ day of July, 2012.

13

14

15        HONORABLE DAVID K. DUNCAN
          U.S. Magistrate Judge
16        U.S. District Court for the District of Arizona

17

18

19

20

21

22

23

24

25

26

27

28                                         9



REPUBLIC OF IRAQ

جمهورية العراق

P | IRQ | G2143019

لحمد حسن فرحان

GIVEN NAMES
**AHMED HASSAN FARHAN**

فرحان

**FARHAN**
PLACE OF BIRTH

قرق - بغداد

**BAGHDAD - IRQ**
DATE OF BIRTH    PERSONAL No.    SEX

1975-04-07    M    1975-04-07

نكر

SANAA FADHEL

سناء فاضل

DATE OF ISSUE
2016-07-14    2008-07 15    بغداد

BAGHDAD

P<IRQFARHAN<<AHMED<HASSAN<FARHAN<<<<<<<<<<<<
G2143019<0IRQ7504079M1607141<<<<<<<<<<<<<<04



رقم الجواز

وزارة الداخلية – إدارة الهجرة والجوازات

MINISTRY OF INTERIOR - DEPARTMENT OF IMMIGRATION AND PASSPORTS
MINISTÈRE DE L'INTÉRIEUR – DÉPARTEMENT DE L'IMMIGRATION ET DES PASSPORTS

**Passport No.**
Passeport N°

N 004365665

Directeur du Département
de l'Immigration et des
Passports
ou le Consul Général

Director of Department
of Immigration and
Passports
or the General Consul

الجمهورية العربية السورية

P        SYR

Issue no. N délivrance.         001 08 0009969

Given Name Prénom              AHMED

Surname Nom:                    AL AHMED AL ABDALOKLAH

Father Name Nom du pere        EBRAHIM

Mother Name Nom de la mère     SUBHEH

Birth Date Date de naissance:  01/01/1927

Birth Place Lieu de naissance  DEIR AZZOR

Sex Sexe:                       M

PNSYRALAHMEDALABDALOKLAH<<AHMED<<<<<<<<<<<<<
0043656653SYR7711D012M1011197<<<<<<<<<<<<08

Filter Review





Filter Review00000395





Filter Review00000396





Filter Review00000397







Filter Review00000399

**Statute of Limitations**
18 U.S.C. § 3282

Offenses not capital

(a) In general.--Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

**Extension of Statute of Limitation for Certain Terrorism Offenses**
18 U.S.C. § 3286

. . . . .

(b) No limitation.--Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense listed in section 2332b(g)(5)(B), if the commission of such offense resulted in, or created a forseeable risk of, death or serious bodily injury to another person.

18 U.S.C. § 2332b(g)(5)(B)

. . . . .

(g) Definitions.--As used in this section--

    (5) the term "Federal crime of terrorism" means an offense that--

. . . . .

        (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and

        (B) is a violation of--

            (i) . . . . 844(f)(2) or (3) (relating to arson and bombing of Government property risking or causing death), . . . . 2332a (relating to use of weapons of mass destruction).

. . . . of this title.

1
2
3
4
5
6                     IN THE UNITED STATES DISTRICT COURT
7                       FOR THE DISTRICT OF ARIZONA
8
9   United States of America,            )   No. CR 12-01263-PHX-NVW
10          Plaintiff,                    )   **SEALED ORDER**
11  vs.                                   )
12                                        )
    Ahmad Ibrahim Al-Ahmad,               )
13          Defendant.                    )
14  ─────────────────────────────────────
15          Based upon the Motion (Doc. 9) of the United States of America, and good cause
16  appearing,
17          **IT IS ORDERED** granting the Government's Motion to Unseal (Doc. 9).
18          **IT IS FURTHER ORDERED** that the Indictment in the above-captioned case be
19  unsealed for the limited purpose of providing a certified copy of the Indictment and Arrest
20  Warrant to a representative of the United States Attorney's Office for the District of Arizona.
21          **IT IS FURTHER ORDERED** that the certified Indictment and Arrest Warrant may
22  be used by the government for the defendant's extradition.
23          **IT IS FURTHER ORDERED** that the Indictment and Arrest Warrant remain sealed
24  for all other purposes until further order from this Court.
25          DATED this 16th day of July, 2012.
26
27                          _____
                                    Neil V. Wake
28  cc: AUSA                 United States District Judge



# United States of America



## DEPARTMENT OF STATE

## *To all to whom these presents shall come, Greetings:*

I Certify That the document hereunto annexed is under the Seal of the Department of Justice of the United States of America, and that such Seal is entitled to full faith and credit.

*This certificate is not valid if it is removed or altered in any way whatsoever*



Issu... ...uant to CHXIV, ... ...f
Sept... 1789, 1 Stat. 68-...
USC ... 22USC 2651a; ...
301; ...C 1733 et. seq.; ...
1443... ...LE 44 Federal Ru...
Civil ... ...dure.

In testimony whereof, I, Hillary Rodham Clinton, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this sixteenth day of June, 2011.

Secretary of State

By

Assistant Authentication Officer,
Department of State

Filter Review00000403

# United States
# Department of Justice



Washington, D.C., _____June 16_____ , 20 _11_

## To all to whom these presents shall come, Greeting:

**I certify** That _____David Warner_____ whose name is signed

to the accompanying paper, is now, and was at the time of signing the same,

_Associate Director, Office of International Affairs, Criminal Division,_

_U.S. Department of Justice, Washington, D.C._

_____ duly commissioned and qualified.

**In witness, whereof, I,** _____Eric H. Holder, Jr._____



Attorney General of the United States, have hereunto caused the Seal of the Department of Justice to be affixed and my name to be attested by the Director/ Deputy Director, Office of International Affairs, Criminal Division, of the said Department on the day and year first above written.

_Eric H. Holder, Jr._

**Attorney General**

By _____Randy Toledo_____

Director/Deputy Director, Office of International Affairs,
Criminal Division

## C E R T I F I C A T I O N

I, David Warner, Associate Director, Office of International Affairs, United States Department of Justice, United States of America, do hereby certify that attached hereto is the original affidavit, with attachments and translation, of Assistant United States Attorney David A. Pimsner, of the District of Arizona, which was sworn to before United States Magistrate Judge Michelle H. Burns on May 26, 2011, and which is offered in support of the request for the extradition of **Ahmad Ibrahim Al-Ahmad** from Turkey.

True copies of these documents are maintained in the official files of the United States Department of Justice in Washington, D.C.

_15 JUNE 2011_
DATE

David Warner
Associate Director
Office of International Affairs
Criminal Division
Department of Justice
United States of America

DENNIS K. BURKE
United States Attorney
District of Arizona

DAVID A. PIMSNER
Assistant U.S. Attorney
Arizona State Bar No. 007480
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
david.pimsner@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 11-7234 M |
| Plaintiff, | **AUSA AFFIDAVIT IN SUPPORT OF REQUEST FOR EXTRADITION OF AHMAD IBRAHIM AL-AHMAD** |
| v. | |
| Ahmad Ibrahim Al-Ahmad, | |
| Defendant. | |

**AFFIDAVIT OF DAVID A. PIMSNER**

I, DAVID A. PIMSNER, being duly sworn, depose and state:

1.     I am a citizen of the United States of America, and a resident of the state of Arizona.

2.     I am an Assistant U.S. Attorney in the U.S. Attorney's Office for the District of Arizona. As an Assistant U.S. Attorney for the District of Arizona, I am responsible for the preparation and prosecution of criminal cases. My duties are to prosecute persons charged with criminal violations of the laws of the United States.

3.     This affidavit is submitted in support of the United States of America's request for extradition of Ahmad Ibrahim Al-Ahmad (Al-Ahmad) from the country of Turkey to the United States to face criminal charges of Conspiracy to Commit Extraterritorial Murder of a United States National and for Providing Material Support to Terrorists in the District of Arizona as alleged in the criminal complaint filed May 10, 2011.

4.     This case arose from an investigation by the United States Federal Bureau of Investigation. The investigation revealed that beginning in January 2005, Al-Ahmad supplied component parts for improvised explosive devices to members and associates of the 1920

1  Revolution Brigades (Brigades), an Iraqi insurgent group that has claimed responsibility for
2  approximately 230 improvised explosive device attacks, 156 shelling attacks, and 82 sniper
3  and small arms attacks targeting United States military personnel from 2005 to 2010. The
4  parts supplied by Al-Ahmad were used in improvised explosive devices that were employed
5  against United States military personnel in Iraq.  Al-Ahmad was also involved in the research
6  and development of new technologies and methods for the manufacture of improvised
7  explosive devices that were also used against United States military personnel.
8  5.      Under the laws of the United States a criminal prosecution may be originally initiated
9  by a federal agent through the filing of a complaint or commenced by a grand jury through its
10  return of an indictment.  When a complaint is filed, an arrest warrant is issued and the
11  defendant must be indicted by the grand jury within 30 days of arrest. If the defendant is not
12  found and arrested, he may be indicted at any time.  The formal charging instrument required
13  before all trials is a grand jury indictment.  A grand jury is composed of at least sixteen (16)
14  citizens of the United States whom the United States District Court selects at random from
15  the residents of the judicial district where the crime was committed, in this instance the
16  District of Arizona.  The grand jury is part of the Judicial Branch of the Federal Government.
17  The purpose of the grand jury is to independently review evidence of crimes as presented by
18  United States law enforcement authorities.  After reviewing this evidence, each member of
19  the grand jury must determine and vote on whether there is probable cause to believe that a
20  crime has been committed and probable cause to believe that the particular defendant named
21  in the indictment committed the crime.  If at least twelve (12) grand jurors affirmatively vote
22  that there is probable cause to believe that the defendant committed the crimes listed in the
23  indictment, the indictment containing the formal charges is returned.  An indictment is thus
24  the formal written document that charges the defendant with the crimes and describes the
25  specific laws that the defendant is charged with violating as well as a brief description of the
26  acts of the defendant that are alleged to be violations of the law.  After the indictment is
27
28

Filter Review00000407

1   returned, warrants for the arrest of the defendant's named in the indictment are issued by the

2   United States District Clerk at the direction of the United States District Judge.

3   6.    A complaint and warrant were filed against Ahmad Ibrahim Al-Ahmad on May 10,

4   2011, in Case Number 11-7234 M.

5   7.    It is the practice of the United States District Court for the District of Arizona to retain

6   the original complaints, indictments, and warrants and file them with the records of the court

7   maintained by the clerk of the court or his deputy.  Therefore, I have obtained certified copies

8   of these documents and have attached them as Exhibits A through B to this affidavit.

9   8.    In Case Number 11-7234 M, Ahmad Ibrahim Al-Ahmad is charged with the following

10  crimes:

11

| Counts | Name of Offense | Statute | Maximum Penalties |
|---|---|---|---|
| 1. | Conspiracy to Commit Extraterritorial Murder of a United States National | 18 U.S.C. § 2332(b)(2) | Life Imprisonment and $250,000 Fine, or both. |
| 2. | Providing Material Support to Terrorists | 18 U.S.C. § 2339A | Life Imprisonment and $250,000 Fine, or both. |

16  9.    The first count in the indictment charges Al-Ahmad with conspiracy to commit

17  extraterritorial murder of a United States national.  The Government must establish each of

18  the following elements beyond a reasonable doubt:

19      a. First, that two or more persons entered into a conspiracy, the object of which was

20  to murder a national of the United States.  A "national of the United States" is a citizen of the

21  United States or a person owing permanent allegiance to the United States.  A conspiracy is

22  an agreement made or entered into by at least two people to violate the law by some common

23  plan or course of action.  The agreement or understanding need not be formal, written, or

24  even expressed directly in every detail.  The Government, however, must prove beyond a

25  reasonable doubt that those who were involved shared a general understanding about the

26  crime.  Mere similarity of conduct among various people or the fact that they may have

27

28                                                          3                        Filter Review00000408

1   associated with each other or discussed common aims and interests does not necessarily

2   establish proof of the existence of a conspiracy, but may be considered in determining

3   whether a conspiracy existed and whether the defendant participated in it.

4       b.  Second, that the defendant knowingly and voluntarily became a member of the

5   conspiracy, with the intent to further its unlawful purpose.  The Government must show that

6   the defendant voluntarily joined in the agreement with an awareness of at least some of the

7   basic aims and purposes of the unlawful agreement and an intent to further them, and that he

8   was also aware that the conduct contemplated by the scheme was wrongful or unlawful.  The

9   Government need not show that the defendant was aware of every detail of the agreement or

10  even the identity of the other parties to the agreement.  The defendant need not have joined in

11  all of the conspiracy's unlawful objectives.  Nor is it necessary that the defendant receive any

12  monetary benefit from participating in the conspiracy or have any financial stake in the

13  outcome.  Rather, the Government must prove beyond a reasonable doubt that the defendant

14  willfully joined in the agreement - that is, that he was aware of and intended to further its

15  objectives and appreciated their unlawful or wrongful nature.

16      c.  Third, that the defendant engaged in the conspiracy while outside the United States.

17  It does not matter if you find that the defendant, in addition to his participation outside the

18  United States, also participated in that conspiracy while in the United States.  The term

19  "United States" includes all the states, territories, and possessions of the United States, and

20  all places and waters subject to the jurisdiction of the United States.

21      d.  Fourth, that one or more of the conspirators knowingly committed an overt act to

22  effect the object of the conspiracy.  To commit an overt act in furtherance of an object of a

23  conspiracy, a participant need not undertake a course of action that is certain or even likely to

24  result in the success of the conspiracy.  The law does not require that the act in question be

25  likely to yield an illegal result, or that the act in question even be prohibited by law.  Instead,

26  the Government must prove that a participant in the conspiracy undertook some action for the

27  purpose of furthering an object of the illegal agreement.

28

Filter Review00000409

1            i.  For the Government to meet its burden with respect to this element,

2    the defendant need not have personally engaged in an act in furtherance of the conspiracy.  In

3    fact, the defendant need not have known that another participant did something to further an

4    object of the conspiracy, or even have known the identity of the participant that undertook

5    the act in question.  The Government is also not required to show that the act in question

6    actually succeeded in furthering the objectives of the conspiracy.  Rather, for the

7    Government to meet its burden it must prove beyond a reasonable doubt that any one of the

8    participants in the conspiracy in which the defendant was a party committed an act to further

9    an object of the conspiracy.

10            ii.  However, the Government must prove beyond a reasonable doubt

11    that the act in furtherance of the conspiracy took place during the existence of the illegal

12    agreement.  An act undertaken by a participant in a conspiracy after the agreement has been

13    terminated is insufficient to meet the Government's burden with respect to this element.

14    10.    The second count in the indictment charges Al-Ahmad with providing material

15    support to terrorists.  To satisfy its burden of proof, the government must establish each of

16    the following elements beyond a reasonable doubt:

17        a.  First, that the defendant provided material support or resources.  For the purposes

18    of this element, the phrase "material support or resources" includes any property, tangible or

19    intangible, or service, including currency or monetary instruments or financial securities,

20    financial services, lodging, training, expert advice or assistance, safehouses, false

21    documentation or identification, communications equipment, facilities, weapons, lethal

22    substances, explosives, personnel, and transportation.  It does not include medicine or

23    religious materials. The term "training" means instruction or teaching designed to impart a

24    specific skill, as opposed to general knowledge.  The term "expert advice or assistance"

25    means advice or assistance derived from scientific, technical or other specialized knowledge.

26        b.  Second, that the defendant did so knowing or intending that such support or

27    resources would be used in preparation for or in carrying out the conspiracy to commit

28                                     5

Filter Review00000410

1  extraterritorial murder of a United States national, in violation of 18 U.S.C. § 2332(b).

2  Specifically, the Government must prove that the defendant knew that the material support or

3  resources would be used either in preparation for or in carrying out the conspiracy to commit

4  extraterritorial murder of a United States national, in violation of 18 U.S.C. § 2332(b).  The

5  Government does not have to prove that the defendant knew any particular statute would be

6  violated; instead, the Government must prove that the defendant knew or intended that his

7  actions would result in the type of conduct forbidden under the statute.

8  11.     The text of all relevant statutes is attached as Exhibit C.

9

10  **Factual Summary**

11  12.     On August 30, 2006, Coalition Forces discovered one of the largest improvised

12  explosive device (IED) caches in Iraq (hereinafter "Omar Cache") at 50 Omar Street,

13  Baghdad, Iraq.  At that site, U.S. military personnel found numerous IED-related

14  construction materials, test equipment, schematics, and other items related to IED

15  construction – including an IED initiator, hundreds of components for various types of Radio

16  Controlled IEDs and extensive bomb making training aids.  Also found were internet

17  printouts bearing Al-Ahmad's name which featured diagrams and instructions on the process

18  of wiring and controlling a fixed or cellular telephone and documents with electrical and

19  electronics equipment diagrams featuring transistor connections.  An analysis of the items

20  seized from the Omar Cache indicated that the location was essentially an IED factory.

21  13.     Al-Ahmad, while not present at the time of the discovery, was later linked to the Omar

22  Cache by various evidence found there.  Copies of known fingerprints belonging to Al-

23  Ahmad were sent to the FBI Laboratory in Quantico, Virginia, to conduct a comparative

24  analysis with prints found at the Omar Cache.  To date, the FBI Lab has found 114 matches

25  to various items found at the Omar Cache.  For example, Al-Ahmad's prints were identified

26  on the following types of materials: documents and book pages; a voltage control oscillators

27  in original packaging; a lid to a power meter; an unknown electronics device in light blue

28                                          6

1 metal case; and a piece of white electrical tape (the electrical tape was wrapped around an

2 IED switch and a matching transmitter was also recovered with this device).

3 14.    Moreover, an analysis determined that materials of the kind seized at the Omar Cache

4 were associated with IED attacks where U.S. Forces incurred casualties.  For example, two

5 attacks which were caused by RCIED initiators using a DTMF 11 custom circuit and a

6 mobile phone are linked to the materials found in the Omar Cache.  One incident used an

7 initiator circuit that matched circuits recovered from the Omar Cache. The other incident

8 used a circuit that is very similar to those found in the Omar Cache.  On April 6, 2007, in the

9 outskirts of southern Baghdad, near Baghdad International Airport, three U.S. soldiers were

10 killed in action by a cellular phone initiated IED.  The IED initiator used in this incident

11 includes a DTMF 11 custom circuit that matched three circuits recovered in the Omar Cache.

12 The circuits all have nearly identical traces, share a common set of electrical components,

13 and function identically.  Furthermore, the circuits were likely manufactured using the same

14 processes.  On May 14, 2007, in northern Baghdad, approximately one-half mile from the

15 Omar Street facility, one U.S. soldier was killed in action and four wounded in action by a

16 cellular phone initiated IED.  The IED electronic switch used in this incident included a

17 DTMF 11 custom circuit that was very similar to three custom circuits recovered in the Omar

18 Cache. The custom circuits had subtle differences in their trace layouts, but otherwise used a

19 common set of components and functioned identically.

20 15.    During a custodial interview, a cooperating witness who has agreed to testify, was

21 shown a photograph of Al-Ahmad, whom he identified as "Ahmad."  The cooperating

22 witness indicated he met Al-Ahmad approximately six times, always in Baghdad, even

23 though Al-Ahmad was originally from Syria.  He also stated that in 2007, Al-Ahmad

24 relocated to China, via Syria, with his wife and child and that, while in China, Al-Ahmad

25 designed DTMF boards to remotely detonate IEDs and commissioned a Chinese factory to

26 manufacture them.  Al-Ahmad told the cooperating witness that he had designed the DTMF

27 boards, and that he was selling them solely to the 1920 Revolution Brigades to assist in the

28

Filter Review00000412

resistance against American Forces.  The cooperating witness stated that Al-Ahmad was aware the DTMF boards were being used in IEDs against Americans.  Al-Ahmad told the cooperating witness that he "would do anything against Americans" and explained the DTMF boards shipped by Al-Ahmad did not have any other purpose, or commercial value, other than being used to detonate IEDs.  The cooperating witness advised he had seen a DTMF board early in 2007, when Al-Ahmad showed one to 1920 Revolution Brigades' members.

16.    Additionally, the investigation found contacts between Al-Ahmad and other individuals who were members or associates of the 1920 Revolution Brigades primarily located in Iraq and Syria.  Many of the contacts involved Al-Ahmad supplying these individuals with components that could be used in the construction and operation of IEDs.

17.    The evidence of these crimes is outlined in more detail in Exhibit D, the affidavit of FBI Special Agent Dina L. McCarthy.

**Statute of Limitations**

18.    As death or serious physical injury occurred as a result of Al-Ahmad's criminal activity, according to 18 U.S.C. § 3286(b), there is no statute of limitations for the crimes with which he is charged.  This means that formal charges may be filed at any time and no period of time will bar prosecution of these offenses.  In this case, the offenses listed in the complaint are alleged to have taken place beginning in or about 2005 and continuing to in or about July 2010.  The complaint was filed on May 10, 2011.  The charges are not impacted by the lapse of time or any statute of limitations.  The text of 18 U.S.C. § 3286 is attached as Exhibit E.

**Applicability of the Extradition Treaty**

19.    Violations of the laws of the United States, for which the defendants are charged, are offenses for which extradition may be granted under the laws of the United States and are

8

Filter Review00000413