**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Ahmed Alahmedalabdaloklah,<br><br>Defendant. | No. CR-12-01263-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant's Motion to Suppress E-Mail Content and Derivative Evidence (Doc. 196).

Defendant seeks the suppression of "all e-mail content (including, but not limited to, all e-mails, attachments, 'buddy lists,' and private messages) produced by all third party Internet Service Providers ('ISPs') to the Government pursuant to a search warrant or based upon an order pursuant to 18 U.S.C. § 2703(d), and all evidence derived therefrom." (*Id.* at 1.) Defendant contends that ten court orders and two search warrants[1] used to obtain email evidence in this case did not comply with requirements of the Stored Communication Act ("SCA"), 18 U.S.C. 2701 et seq., and therefore were invalid, rendering the search and seizure a violation of Defendant's Fourth Amendment rights. Defendant seeks suppression as a remedy for the constitutional violation.[2]

---

[1] The Motion refers to one search warrant, but includes two in its exhibits, which the Government noted in its response. It is assumed that Defendant seeks suppression of both search warrants.

[2] The remedies and sanctions described in 18 U.S.C. 2701 et seq., which do not include suppression of evidence, are the only judicial remedies and sanctions for

As explained below, suppression as a remedy for a Fourth Amendment violation is not available to Defendant. Even if it were, the challenged orders and warrants would not be suppressed for any of the reasons raised by Defendant.

## I. FACTUAL BACKGROUND

Defendant is a Syrian national charged with committing multiple crimes while residing in Iraq and China related to the death of United States soldiers and destruction of United States property in Iraq. Defendant had not been in the United States before he was arrested in Turkey for extradition and brought to Arizona in 2014.

Defendant's alleged criminal conduct began in about January 2005 and continued to about July 2010. Investigators learned that some component parts related to the alleged crimes were manufactured by a company headquartered in Arizona. In December 2009, the Phoenix FBI opened an investigation, and a federal grand jury in Arizona commenced an investigation.

Between December 2009 and June 2011, the Government applied for and obtained from the United States District Court for the District of Arizona ten orders for email records and content pursuant to 18 U.S.C. § 2703(b)(1)(B) and (d) ("§ 2703(d) Orders") and two email search warrants pursuant to 18 U.S.C. § 2703(b)(1)(A) ("Warrants"). When the Government obtained each of the § 2703(d) Orders, the court authorized delayed notification pursuant to § 2705(a). Through investigation, the Government determined that Defendant was not a subscriber or a customer to many of the target email accounts. On September 24, 2014, the Government notified Defendant via letter to his counsel of the § 2703(d) Orders for the email accounts for which Defendant is the subscriber or customer. On September 18, 2014, the Government provided the content obtained from the accounts to Defendant. Copies of the Warrants and content obtained from the Warrants were provided to Defendant through discovery.

---

nonconstitutional violations of that chapter. 18 U.S.C. § 2708; *United States v. Perrine*, 518 F.3d 1196, 1202 (10th Cir. 2008) (violations of § 2703 do not warrant exclusion of evidence).

## II. THE FOURTH AMENDMENT DOES NOT APPLY TO THE EVIDENCE OBTAINED UNDER THE § 2703(d) ORDERS AND WARRANTS.

Defendant seeks suppression of email evidence obtained pursuant to the § 2703(d) Orders and Warrants as a remedy for violation of the Fourth Amendment. The parties have not cited, and the Court has not found, authority deciding whether the Fourth Amendment protects a nonresident alien, who has had no previous significant voluntary connection with the United States, from an unreasonable search and seizure of property located in the United States. Relevant binding authority, however, indicates that it does not.

In *United States v. Verdugo-Urquidez*, the Supreme Court held that the Fourth Amendment does not apply to the search and seizure by United States agents of property that is owned by a nonresident alien and located in a foreign country. 494 U.S. 259, 261 (1990). The case involved the search of the Mexican residences of a citizen and resident of Mexico who had no previous significant voluntary connection with the United States. The Court explained that, unlike amendments that protect a "person" or an "accused," the Fourth Amendment protects only "the people," a term of art used in select parts of the Constitution and related to the Preamble's use of "the People of the United States." *Id.* at 265. It is a term of art that "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* Reviewing the history of the drafting of the Fourth Amendment, the Court concluded "its purpose was to restrict searches and seizures which might be conducted by the United States in domestic matters." *Id.* at 266. The Court summarized its review:

> The available historical data show, therefore, that the purpose of the Fourth Amendment was to protect the people of the United States against arbitrary action by their own Government; it was never suggested that the provision was intended to restrain the actions of the Federal Government against aliens outside of the United States territory.

*Id.* Therefore, although aliens receive certain constitutional protections when they have come within the territory of the United States and developed substantial connections with the United States, they may be denied protection outside the sovereign territory of the United States. *Id.* at 269-71. However, the issue presented in *Verdugo-Urquidez* involved only a search and seizure conducted outside the United States.

In *United States v. Barona*, the Ninth Circuit summarized *Verdugo-Urquidez* as holding the Fourth Amendment is inapplicable to "foreign searches involving aliens with 'no voluntary connection' to the United States." 56 F.3d 1087, 1093 (9th Cir. 1995). At issue was whether wiretap evidence obtained in Denmark and Italy should have been suppressed. The Ninth Circuit declined to reach the question of whether the resident alien defendants had undertaken sufficient obligations of citizenship or had otherwise developed sufficient connection with the United States to be considered one of "the People of the United States" entitled to receive Fourth Amendment protection in the context of an extraterritorial search. *Id.* at 1094.

In *United States v. Zakharov*, after the United States Coast Guard seized a foreign fishing vessel smuggling cocaine in international waters and took its crew members into custody, one of the crew members confessed in San Diego, California, during an interview with an agent of the United States Drug Enforcement Administration. 468 F.3d 1171 (9th Cir. 2006). The crew member argued that failure to obtain a probable cause determination before he was physically present in the United States constituted undue delay under the Fourth Amendment and justified suppressing his confession made in the United States. The Ninth Circuit stated, "[T]he district court properly determined that Zakharov's confession should not be suppressed because the Fourth Amendment does not apply to non-resident aliens outside of the United States." *Id.* at 1174. Relying on *Verdugo-Urquidez* and *Barona*, the Ninth Circuit noted that the Fourth Amendment does not apply to searches and seizures by the United States against a non-resident alien in a foreign country, the alleged unconstitutional delay occurred outside of the United States in international waters, and there was no suggestion that the defendant had any

- 4 -

substantial connection to the United States. *Id.* at 1179. The opinion did not address the fact that the evidence to be suppressed was obtained in the United States.

In *United States v. Mohamud*, the Ninth Circuit decided multiple issues involving the government's use of evidence against a United States resident that was incidentally obtained from electronic surveillance targeting a foreign national pursuant to the Foreign Intelligence Surveillance Act. 843 F.3d 420 (9th Cir. 2016). The searches took place in the United States, but no evidence showed the targeted foreign national had sufficient voluntary connection with the United States for the Fourth Amendment to apply. *Id.* at 439 & n. 22. The Ninth Circuit concluded the search did not require a warrant because it was not directed at a United States person's communications and because "the search was targeted at a non-U.S. person with no Fourth Amendment right." *Id.* at 439. The Ninth Circuit explained that "what matters here is the location of the *target*, and not where the government literally obtained the electronic data." *Id.* (internal quotation marks and citation omitted). The Ninth Circuit held the incidental interception of a non-targeted United States person's email communications was lawful because the warrantless search of the email communications of a non-United States person located outside of the United States at the time of the surveillance was lawful. *Id.* at 441.

Here, it is undisputed that Defendant is a nonresident alien who had no previous significant voluntary connection with the United States. When the § 2703(d) Orders and Warrants were obtained and implemented, Defendant was located and resided outside of the United States. When the electronic communications were allegedly made by Defendant, he was located and resided outside of the United States. No physical property located in the United States was seized. The storage of the content of electronic communications on servers located in the United States—without more—cannot justify extending Fourth Amendment protection to a person who does not have substantial connections to the United States.

## III. EVEN IF SUPPRESSION UNDER THE FOURTH AMENDMENT WERE AVAILABLE TO DEFENDANT, HE HAS NOT RAISED A BASIS FOR DOING SO.

### A. The § 2703(d) Orders and Warrants Were Issued by a "Court of Competent Jurisdiction" Under the Stored Communications Act.

Defendant contends the § 2703(d) Orders and Warrants are invalid because the United States District Court for the District of Arizona was not a "court of competent jurisdiction" as required by the SCA.

Section 2703 permits a governmental entity to require a provider of electronic communication service to disclose the contents of a wire or electronic communication. If the contents to be disclosed have been stored for 180 days or less, disclosure may be required "only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction." 18 U.S.C. § 2703(a).

If the length of storage has been more than 180 days, disclosure may be required without notice to the subscriber or customer "if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction." 18 U.S.C. § 2703(b)(1)(A). Alternatively, disclosure may be required "with prior notice from the governmental entity to the subscriber or customer if the governmental entity . . . obtains a court order for such disclosure under subsection (d) of this section; except that delayed notice may be given pursuant to section 2705 of this title." 18 U.S.C. § 2703(b)(1)(B). The orders challenged here were made pursuant to § 2703(b)(1)(B) and (d).[3] Subsection (d) authorizes issuance of a court order for disclosure "by any court that is a court of competent jurisdiction." 18 U.S.C. § 2703(d).

Section 2711(3) defines the term "court of competent jurisdiction" to include:

(A) any district court of the United States (including a magistrate judge of such a court) . . . that—

---

[3] Defendant does not separately address the validity of the Warrants.

> (i) has jurisdiction over the offense being investigated;
>
> (ii) is in or for a district in which the provider of a wire or electronic communication service is located or in which the wire or electronic communications, records, or other information are stored; or
>
> (iii) is acting on a request for foreign assistance pursuant to section 3512 of this title; or
>
> (B) a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants.

Legislative history indicates that the Stored Communications Act was amended by the Patriot Act "to authorize the court with jurisdiction over the investigation to issue the warrant directly, without requiring the intervention of its counterpart in the district where the [Internet service provider] is located." *United States v. Scully*, 108 F. Supp. 3d 59, 77 (E.D.N.Y. 2015). The amendment was intended "to address the investigative delays caused by the cross-jurisdictional nature of the Internet" and to relieve the burden on district courts in which major communications providers are located. *Id.* at 77-79.

Defendant contends that the United States District Court for the District of Arizona did not have "jurisdiction over the offense being investigated" when it issued the § 2703(d) Orders and Warrants because only the district court for the district where the crime occurred has "jurisdiction over the offense being investigated." The few courts that have interpreted the phrase "jurisdiction over the offense being investigated" concerning domestic crimes have concluded it refers to territorial jurisdiction, or "something akin to territorial jurisdiction," but they have not considered the situation in which the offense occurred outside of the district in which it was being investigated. *See, e.g., United States v. Barber*, 184 F. Supp. 3d 1013, 1017-18 (D. Kan. 2016) (Maryland magistrate judge lacked jurisdiction over the offense being investigated because the email account was associated with a Kansas resident and the government presented no evidence that the offense being investigated occurred in Maryland); *In re Search Warrant*, No. 6:05-MC-168-Orl-31JGG, 2005 WL 3844032 (M.D. Fla. Feb. 13, 2006) (§ 2703(a) permits federal district court where the alleged crime occurred to issue warrants for

production of electronically stored evidence located in another district); *In re Search of Yahoo, Inc.*, No. 07-3194-MB, 2007 WL 1539971 (D. Ariz. May 21, 2007) (same). These courts concluded that judicial and prosecutorial efficiency is served by permitting the federal district court for the district where the federal crime allegedly occurred to preside over both the prosecution and the investigation (including issuance of warrants) of the case:

> [I]t makes little sense to require the government, once it has opened an investigation into an alleged federal crime in the district where that crime allegedly occurred, to have to look to the courts, prosecutors and agents in another district where certain evidence may be found in order to procure a warrant for a search in that other district.

*In re Search Warrant*, 2005 WL 3844032, at *5.

However, the text of § 2711(3) does not limit "jurisdiction over the offense being investigated" to the location where the offense occurred. In order to obtain a disclosure order under § 2703(b)(1)(B)(ii) and (d), a governmental entity must offer "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an *ongoing criminal investigation*." 18 U.S.C. § 2703(d) (emphasis added). In the typical case, the criminal investigation will be opened where the crime occurred. But where an alleged federal crime has occurred outside of the United States, the governmental entity may open its investigation in a district other than where the crime occurred. In such circumstances, the federal district court for the district where the ongoing criminal investigation is located must have "jurisdiction over the offense being investigated" and be a "court of competent jurisdiction" under § 2703(d).

In this case, the Phoenix FBI office opened an investigation based on Defendant's alleged use of microchips manufactured by a company headquartered in Arizona. Subsequently, then, the United States District Court for the District of Arizona had "jurisdiction over the offense being investigated" and was a "court of competent jurisdiction" authorized to issue the § 2703(d) Orders and Warrants.

### B. The § 2703(d) Orders Are Valid.

Defendant contends that the § 2703(d) Orders[4] violate the Fourth Amendment because they were not tailored to confine the seizures to evidence of a particular crime and the applications did not contain facts justifying disclosure of email content as far back as January 1, 2005. For the purpose of considering overbreadth and lack of particularity issues, the Court assumes Defendant has Fourth Amendment rights even though it concluded above that he does not. However, as explained below, the Fourth Amendment does not supply the standard for determining the validity of the § 2703(d) Orders in this case.

On December 14, 2010, the Sixth Circuit held that the SCA violates the Fourth Amendment to the extent it purports to permit the government to compel an Internet service provider to disclose the contents of a subscriber's emails without first obtaining a warrant based on probable cause. *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010). The Sixth Circuit found, however, that the provisions of the SCA at issue were not so conspicuously unconstitutional as to preclude good faith reliance, and the government's reasonable reliance on the SCA precluded exclusion of the emails. *Id.* at 288-89. The Sixth Circuit also determined that the government's failure to comply with SCA requirements for extending delayed notice did not warrant exclusion of the emails because the exclusionary rule was designed to deter constitutional violations. *Id.* at 289-

---

[4] Defendant's Motion argues that the "§ 2703(d) orders" are overbroad and lack particularity. (Doc. 196 at 12-13.) The Motion does not argue that the Warrants are overbroad or lack particularity. (*Id.* at 12-15.) Defendant's reply incorrectly states, "In his Motion, Mr. Alahmedalabdalokla argued that the warrant [singular] and § 2703(d) orders were invalid because they did not comply with the particularity requirement of the Fourth Amendment." (Doc. 288 at 14.) The next sentence also incorrectly asserts that the Motion argued "the warrants [plural] and the § 2703(d) orders amounted to forbidden general warrants." (*Id.*) The Court does not consider issues raised for the first time in a reply brief and therefore does not consider Defendant's argument to apply to the Warrants. Moreover, the Warrants were sought and issued pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) using the procedures described in Rule 41(c) of the Federal Rules of Criminal Procedure—not § 2703(d). (Docs. 197-2, 197-3.)

90. Here, eight of the § 2703(d) Orders in this case were issued before *Warshak* was decided, and two were issued within a few days after. Subsequently, the Government applied only for warrants. Defendant does not contend that *Warshak* governs here, but even if it did, the Government has established good faith reliance on the constitutionality of the SCA at the time it applied for the § 2703(d) Orders.

The § 2703(d) Orders sought disclosure of contents of emails under § 2703(b) and records related to emails under § 2703(c). Section 2703(b)(1)(B)(ii) permits a governmental entity to require a provider of remote computing service to disclose the contents of certain wire or electronic communications with prior notice if the governmental entity obtains a court order under subsection (d). Section 2703(c)(1) provides the same with respect to records concerning electronic communication service or remote computing service.

Subsection (d) provides the following requirements for a court order:

> A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue **only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.** In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State. A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.

18 U.S.C. § 2703(d)(emphasis added).

Thus, the standard for determining the validity of the § 2703 Orders is whether the § 2703(d) Orders are based on an application offering "specific and articulable facts showing there are reasonable grounds that the contents of a wire or electronic communication . . . are relevant and material to an ongoing criminal investigation." Supported by legislative history, courts have described this standard as an intermediate

one—higher than that required for a subpoena, but lower than that of probable cause. *In re Applications of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 206 F. Supp. 3d 454, 455-56 (D.D.C. 2016); *In re Application of the United States for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to the Gov't*, 620 F.3d 304, 313, 314 (3d Cir. 2010) (the intermediate standard for a § 2703(d) order does not require traditional probable cause determination). "The [Stored Communications] Act stakes out a middle ground between full Fourth Amendment protection and no protection at all, requiring that the government show 'reasonable grounds' but not 'probable cause' to obtain" a § 2703(d) order. *United States v. Carpenter*, 819 F.3d 880, 889 (6th Cir. 2016), *cert. granted on other grounds,* 2017 WL 2407484 (U.S. June 5, 2017). Nevertheless, § 2703(d) does not permit disclosure based on conclusory government statements or allow government fishing expeditions. *In re Applications*, 206 F. Supp. 3d at 456.

The Court has reviewed each of the ten applications for the § 2703(d) Orders, including those for which Defendant concedes he lacks standing to challenge,[5] and the ten § 2703(d) Orders issued. One of the applications, dated December 16, 2010, sought information regarding two Facebook accounts linked to email accounts that were the subject of other § 2703(d) Orders. It identified the specific information to be disclosed regarding the account subscriber, records of user activity, and information regarding each communication sent or received by the account. In addition, it sought the contents of "wire and electronic communications associated with the Account that have been in electronic storage in Facebook's electronic communications system for more than 180 days."

---

[5] Defendant concedes he lacks standing to seek suppression of the contents of emails related to any email account for which he is not the subscriber. (Doc. 288 at 15.) Seven of the ten § 2703(d) Orders seek disclosure for email accounts that the Government contends belong to Defendant.

- 11 -

The other nine applications identified specific email account information and user connection log information to be disclosed related to a specific email account or accounts for the period January 1, 2005, to the date of the order. Eight applications also requested disclosure of "the content of electronic communications (not in electronic storage) that were placed or stored in [the Internet service provider's] computer systems in directories or files owned or controlled by the account identified in Part A above" for a specific period, such as January 1, 2005, to July 2, 2009, or January 1, 2005, to November 4, 2009. The ninth application, dated December 21, 2010, regarding one Gmail account, requested disclosure of the contents of "wire and electronic communications associated with the Account that have been in electronic storage in Google's electronic communications system for more than 180 days" without reference to specific dates.

Each of the ten applications for the § 2703(d) Orders included an attachment that provided specific facts obtained from an ongoing criminal investigation that showed a reasonable basis for believing that the information sought was relevant and material to the investigation. For example, the application dated December 30, 2009, stated that documents found in August 2006 at 50 Omar Street, Baghdad, Iraq, which was believed to be Defendant's residence and/or location for making Improvised Explosive Devices ("IEDs"), included copies of emails between Defendant and a company in Taipei, Taiwan, regarding the sale of electronic components that could be used to make IEDs. The application also stated that documents were found linking Defendant to a Lebanese company known for sending electronics to bomb-makers in Iraq. The application sought information from the Yahoo account that Defendant was using to communicate with the Taiwanese company and which Defendant may have used to communicate with other companies that sell electronic parts that could be used in making IEDs. The other applications similarly provided specific facts from the ongoing investigation and explained why the requested information was believed to be relevant and material to the investigation.

Moreover, the magistrate judges who issued the § 2703(d) Orders expressly found that the applicant had offered specific and articulable facts showing there were reasonable grounds to believe that the records, other information, and the content of the electronic communications sought were relevant and material to an ongoing criminal investigation. Therefore, the Court finds that the application for each of the ten § 2703(d) Orders satisfied statutory requirements, *i.e.*, provided specific and articulable facts showing that there are reasonable grounds to believe that the information sought was relevant and material to an ongoing criminal investigation.

### C. The Stored Communications Act's Delayed Notice Provisions Are Not Unconstitutional.

Defendant's Motion contends that "18 U.S.C. §§ 2703 and 2705(b), which provide exceptions to the SCA's notice requirement, violate the Fourth Amendment facially and as applied." (Doc. 196 at 15.) For the purpose of considering Defendant's challenge to the SCA's delayed notice provisions, the Court assumes Defendant has Fourth Amendment rights even though it concluded above that he does not.

Under § 2703(b)(1)(A), a governmental entity may require a remote computing service provider to disclose contents of certain wire or electronic communications by obtaining a warrant using procedures described in the Federal Rules of Criminal Procedure. Under this approach, the governmental entity is not required to give notice to the subscriber or customer. Rule 41(f)(1)(C) of the Federal Rules of Criminal Procedure requires the officer executing the warrant to give a copy of the warrant and a receipt for property taken to the person from whom, or from whose premises, the property was taken. "For a warrant to use remote access to search electronic storage media and seize or copy electronically stored information, the officer must make reasonable efforts to serve a copy of the warrant and receipt on the person whose property was searched or who possessed the information that was seized or copied." Fed. R. Crim. P. 41(f)(1)(C). Thus, a § 2703(b) warrant requires the governmental entity to give notice to the remote computing service provider, but not to the subscriber or customer.

Under § 2703(b)(1)(B)(ii), a governmental entity may use an administrative subpoena or court order to require a provider of remote computing service to disclose the contents of certain wire or electronic communications "with prior notice from the governmental entity to the subscriber or customer . . . except that delayed notice may be given pursuant to section 2705." Section 2705(a)(1) permits the governmental entity to request an order delaying the required notification for a period not to exceed 90 days if the court determines that there is reason to believe that notification of the existence of the court order may have "an adverse result." "An adverse result" is "(A) endangering the life or physical safety of an individual; (B) flight from prosecution; (C) destruction of or tampering with evidence; (D) intimidation of potential witnesses; or (E) otherwise seriously jeopardizing an investigation or unduly delaying a trial." 18 U.S.C. § 2705(a)(2). A court may grant extensions of the delay of notification of up to 90 days each. 18 U.S.C. § 2705(a)(4). The number of extensions allowed is not limited by the statute, but an extension can be granted only in accordance with § 2705(b).

Under § 2705(b), if certain conditions are met, a governmental entity may obtain a notice preclusion order, which prohibits a remote computing service provider from notifying anyone that it has disclosed information to the government. Section § 2705(b) provides:

> **(b) Preclusion of notice to subject of governmental access.**—A governmental entity acting under section 2703, when it is not required to notify the subscriber or customer under section 2703(b)(1), or to the extent that it may delay such notice pursuant to subsection (a) of this section, may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—
>
> (1) endangering the life or physical safety of an individual;
>
> (2) flight from prosecution;

> (3) destruction of or tampering with evidence;
>
> (4) intimidation of potential witnesses; or
>
> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b).

The parties have cited, and the Court has found, no authority deciding whether the SCA's delayed notice provisions violate the Fourth Amendment. Some courts have observed that the combination of §§ 2703 and 2705(b) could allow a governmental entity to indefinitely delay giving notice to a target while indefinitely restraining the provider from notifying the targeted subscriber. *In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 131 F. Supp. 3d 1266, 1271-72 (D. Utah 2015); *Microsoft Corp. v. United States Dep't of Justice*, No. C16-0538JLR, 2017 WL 530353, at * 2 (W.D. Wash. Feb. 8, 2017). However, permitting extension of notice delay periods does not mean that notice can be delayed indefinitely. Notice can be delayed only if a court initially determines that providing notice to the subscriber or customer may have an adverse result, such as endangering the life or physical safety of an individual, destruction of or tampering with evidence, etc., and makes a similar determination each time the governmental entity applies for an extension of up to 90 days. 18 U.S.C. § 2705(a)(4) (extensions of notification delay may be granted only in accordance with subsection (b), which requires finding of potential adverse result).

The Motion also argues that Defendant's Fourth Amendment rights were violated because he was not provided notice of the § 2703(d) Orders and Warrants until September 24, 2014, for some email accounts and was provided no notice for others. However, he was not the subscriber or customer for many of the email accounts and not entitled to notice for those. The Government concedes that it provided untimely notice to Defendant for four of the § 2703(d) Orders involving accounts that the Government contends belongs to or was used by Defendant. For those four orders, the notice extension periods expired on August 29, 2014, or September 6, 2014, Defendant made

his initial appearance in Arizona on August 28, 2014, and notice was provided to Defendant through his counsel on September 24, 2014. The delay of less than one month does not warrant exclusion. *See Warshak*, 631 F.3d at 289 (notice delay of more than a year did not warrant exclusion).

Therefore, Defendant has not established that the SCA's delayed notice provisions are unconstitutional facially or as applied.

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress E-Mail Content and Derivative Evidence (Doc. 196) is denied.

Dated this 3rd day of July, 2017.

_____
Neil V. Wake
Senior United States District Judge