**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Ahmed Alahmedalabdaloklah,<br><br>Defendant. | No. CR-12-01263-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant's Motion to Dismiss Counts Two, Three, and Four for Failure to State an Offense Due to Lack of Extraterritorial Application (Statutory) (Doc. 180).

**I.  LEGAL STANDARD**

The indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007).

In ruling on a pretrial motion under Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). In analyzing whether a cognizable offense has been charged,

the court must accept as true the allegations in the indictment. *Id.* The court should not consider evidence not appearing on the face of the indictment. *Id.*

## II. ANALYSIS

### A. Extraterritoriality

"It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (citations omitted). "Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. European Comm'ty*, __ U.S. __, 136 S. Ct. 2090, 2100 (2016).

Courts apply a two-step framework to analyze extraterritoriality issues. *Id.* at 2101. At the first step, courts determine "whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Id.* If it does not, then at the second step, courts determine whether the case involves a domestic application of the statute. *Id.* If the presumption against extraterritoriality is rebutted at the first step, there is no need to proceed to the second step. *Id.* at 2101 n.5.

A "clear, affirmative indication" does not require an express statement of extraterritoriality, but rather may be demonstrated by context. *Id.* at 2102. Congressional intent can be inferred from the nature of the crime. *United States v. Bowman*, 260 U.S. 94, 97-98 (1922). If punishment of crimes against private individuals or their property is to be extended to include crimes outside of the strict territorial jurisdiction of the government exercising jurisdiction, it is expected that Congress would expressly say so. *Id.* at 98. However, it may be inferred that Congress intended extraterritorial application of a criminal statute punishing crimes against government without making an express statement:

> But the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the

> government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens officers or agents. Some such offenses can only be committed within the territorial jurisdiction of the government because of the local acts required to constitute them. Others are such that to limit their locus to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the locus shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense.

*Id.*

> Thus, a criminal statute dealing with acts that are directly injurious to the government, and are capable of perpetration without regard to particular locality, is to be construed as applicable to citizens of the United States upon the high seas or in a foreign country, though there be no express declaration to that effect.

*Skiriotes v. Florida*, 313 U.S. 69, 73-74 (1941); *accord Stegeman v. United States*, 425 F.2d 984, 986 (9th Cir. 1970) (criminal statute applied extraterritorially because it "was enacted to serve important interests of government, not merely to protect individuals who might be harmed by the prohibited conduct"). *See also United States v. Ubaldo*, 859 F.3d 690, 2017 WL 2485848, at *7 (9th Cir. 2017) (presumption against extraterritoriality rebutted by legislative history and because "illegally importing weapons into the United States by its very nature targets conduct that almost always originates outside the United States"); *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1204 (9th Cir. 1991) (extraterritorial jurisdiction will be inferred for criminal statutes that were enacted because of the government's right to defend itself).

"Where the locus of the conduct is not relevant to the end sought by the enactment of the statute, and the statute prohibits conduct that obstructs the functioning of the United States government, it is reasonable to infer congressional intent to reach crimes committed abroad." *United States v. Vasquez-Velasco*, 15 F.3d 833, 839 (9th Cir. 1994) (internal quotation marks and citation omitted). Moreover, incorporation of predicates

that plainly apply to foreign conduct provides a clear, affirmative indication of a statute's extraterritorial application, but only to the extent that the predicates alleged in a specific case themselves apply extraterritorially. *RJR Nabisco*, 136 S. Ct. at 2102.

### B. Count Two: Conspiracy to Maliciously Damage or Destroy U.S. Government Property by Means of an Explosive (18 U.S.C. § 844(f)(1), (2), and (n))

Count Two alleges violation of 18 U.S.C. § 844(f)(1), (2), and (n) by knowingly conspiring to "maliciously damage, destroy, attempt to damage, attempt to destroy, vehicles, used by the United States Military in Iraq, in whole and in part owned, or possessed by the United States Department of Defense, a department of the United States, by means of explosives." Subsection 844(f) expressly applies to malicious damage to or destruction of, by means of an explosive, any vehicle owned or possessed by the United States or any department or agency thereof.

The express terms of § 844(f)(1), (2), and (n) indicate that it is not logically dependent on locality for jurisdiction, but was enacted because of the "right of the government to defend itself . . . wherever perpetrated." *See Bowman*, 260 U.S. at 98. Although "§ 844(f) contains no provision explicitly authorizing extraterritorial use," "[d]amaging or destroying U.S. property unquestionably harms the U.S. Government," and "§ 844(f) had many obvious extraterritorial applications at the time of its enactment or most recent amendment." *United States v. Abu Khatallah*, 151 F. Supp. 3d 116, 134 (D.D.C. 2015).

> Section 844 clearly targets a vast range of destructive behavior undertaken within the territorial United States. But its independently operative provisions that protect U.S. property could foreseeably be applied abroad in a great number of situations; this must have been known when the statute was modified in 2002, as well.

*Id.* at 134-35 (concluding § 844(f) applies extraterritorially). Considering a similar criminal statute, the Ninth Circuit held that 18 U.S.C. § 641 prohibits theft of government property wherever located because it prohibits conduct that is obstructive of the functions

of government and the locus of the conduct is not relevant to the end sought by the statute. *United States v. Cotton*, 471 F.2d 744, 751 (9th Cir. 1973).

The Court infers a clear, affirmative indication of congressional intent that § 844(f)(1), (2), and (n) has extraterritorial application because it punishes crimes against government and is not logically dependent on their locality.

**C. Count Three: Possession of a Destructive Device in Furtherance of a Crime of Violence and Aiding and Abetting (18 U.S.C. §§ 924(c)(1)(A), (B)(ii), and 2)**

**Count Four: Conspiracy to Possess a Destructive Device in Furtherance of a Crime of Violence (18 U.S.C. § 924(o))**

Counts Three and Four allege possession of a destructive device in furtherance of a crime of violence as set forth in Counts One and Two. As determined above, Count Two alleges violation of a criminal statute with extraterritorial application. Count One alleges violation of 18 U.S.C. § 2332a(a)(1) and (3), which criminalizes conspiracy to use a weapon of mass destruction "against a national of the United States while such national is outside the United States" and "against any property that is owned, leased or used by the United States or by any department or agency of the United States, whether the property is within or outside of the United States." Incorporation of predicates that apply to foreign conduct establishes extraterritorial application for the criminal violations alleged in Counts Three and Four. See *RJR Nabisco*, 136 S. Ct. at 2102.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Counts Two, Three, and Four for Failure to State an Offense Due to Lack of Extraterritorial Application (Statutory) (Doc. 180) is denied.

Dated this 7th day of July, 2017.

_____
Neil V. Wake
Senior United States District Judge