JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona  85007
Telephone: 602-382-2700

GREGORY A. BARTOLOMEI, Bar No. 011803
JAMI JOHNSON, NY Bar No. 4823373
MOLLY A. KARLIN, Bar No.032902
Assistant Federal Public Defenders
gregory_bartolomei@fd.org
jami_johnson@fd.org
molly_karlin@fd.org

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>     vs.<br><br>Ahmed Alahmedalabdaloklah,<br><br>            Defendant. | CR-12-01263-PHX-NVW<br><br>**DEFENDANT'S OBJECTIONS TO PROPOSED GOVERNMENT EXPERTS STEVE MALLOY, CHRISTOPHER GRAHAM AND STEVE LUHOWY**<br><br>**(FILED UNDER SEAL)** |

Ahmed Alahmedalabdaloklah, through counsel, respectfully submits the following objections to the testimony of proposed government experts Steve Malloy [ECF No. 97 at 4–6; ECF No. 309 at 5–7], Christopher Graham and Steve Luhowy [ECF No. 97 at 6–7; ECF No. 309 at 7–8] on the grounds that the government disclosure fails to comport with the requirements of Rule 16 insofar as it fails reasonably to apprise Mr. Alahmedalabdaloklah of the opinions Mr. Malloy, Mr. Graham and Mr. Luhowy intend to offer and/or the bases for those opinions.

**I.   Preliminary Statement**

The government's expert disclosure with respect to Messrs. Malloy, Graham, and Luhowy continues an unfortunate and ultimately prejudicial trend of inadequate, incomplete and/or late disclosure that continues to leave Mr. Alahmedalabdaloklah—now a mere 2.5 months away from the start of his trial—woefully ill-apprised of what, specifically he is accused of having done and how the government intends to prove he has done it.

The indictment in this case alleges very specifically that Mr. Alahmedalabdaloklah "designed Dual Tone Multi Frequency ("DTMF") decoder custom circuit boards which were utilized in radio-controlled IEDs that were used to target U.S. military personnel and U.S. military vehicle in Iraq." [ECF No. 13.] The indictment further alleges quite specifically that "unknown co-conspirators" of Mr. Alahmedalabdaloklah used component parts supplied by Mr. Alahmedalabdaloklah to kill three U.S. soldiers on April 6, 2007 near Baghdad Airport and to kill one U.S. soldier on May 14, 2017 in northern Baghdad. Id.

As far as Mr. Alahmedalabdaloklah is aware, the government does not intend to produce at trial any witness who will say that s/he is responsible for the bombings that that happened on those dates and that s/he procured the products used in those explosions from Mr. Alahmedalabdaloklah.  Mr. Alahmedalabdaloklah therefore assumes that it will fall to the subject-matter experts—presumably one from among Messrs. Malloy, Graham, and Luhowy—to establish (1) how the jury can tell that Mr. Alahmedalabdaloklah was a "designer" (and not merely a casual possessor or recipient of) DMTF boards, and (2) how the jury can tell that the specific component parts used in the explosions were "supplied" by Mr. Alahmedalabdaloklah.

Rather however than producing a report or, at a minimum, a succinct statement of how Messrs. Malloy, Graham, and/or Luhowy have determined these things to be true, the expert disclosures fall back on vague generalizations, oblique references,

2

ambiguous descriptors and hand-waving in the general direction of the nearly terabyte of discovery produced in this case to inform Mr. Alahmedalabdaloklah what their testimony proses to be about. Such disclosures are insufficient to satisfy the government's Rule 16 disclosures and leave the defendant unable to mount a meaningful Rule 702 challenge insofar as he still does not understand what, exactly, their opinion is going to be and how that opinion was reached.

Most troublingly, in its vague references to unspecified "other IED events" and "other caches," the notice appears to suggest that Messrs. Malloy, Graham, and/or Luhowy may intend to rely on information obtained from sources not produced to Mr. Alahmedalabdaloklah in discovery over Mr. Alahmedalabdaloklah's vigorous objections, including the filing of a motion under *Brady v. Maryland*, in which Mr. Alahmedalabdaloklah's argued that the government's failure to disclose, at a minimum the reports listing the dates, times, locations, and individuals associated with the other IED/cache events also containing any allegedly "signature" design, materially hampered Mr. Alahmedalabdaloklah's defense.

Mr. Alahmedalabdaloklah has been asking for years for information about "other IED events" and "other caches" associated with whatever "signature" the government intends to allege ties Mr. Alahmedalabdaloklah to these events and to this day Mr. Alahmedalabdaloklah possess no information about where else, when else, under what conditions, and in relationship to what parties other identical or virtually identical items were found. Messrs. Malloy, Graham, and/or Luhowy should not now be able to base their so-called "expert" opinion, in whole or in part, on reliance on these undisclosed items.

Mr. Alahmedalabdaloklah therefore objects to the testimony of Messrs. Malloy, Graham, and/or Luhowy on the ground that the government disclosure with respect to these witnesses falls far short of the specificity called for by Rule 16 and prejudicially prevents Mr. Alahmedalabdaloklah from being able to understand what exactly they

3

propose to say as and to assess the bases for that testimony. Mr. Alahmedalabdaloklah further objects to these witnesses' testimony about or reliance on unspecified "other IED events" or "other IED caches" as the basis for their opinions in this case on the ground that no information about such events or caches has been produced to Mr. Alahmedalabdaloklah, notwithstanding that he has been requesting this information for many years.

## II.     Legal Standard

Federal Rule of Criminal Procedure 16(a)(1)(G) ("Rule 16") requires the government to "give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). This summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."

Rule 16 quite specifically requires production of a "summary . . . [of] opinions" and not merely a list of topics. Rule 16(G); *see also United States v. Cervantes*, No. CR 12-792 YGR, 2016 U.S. Dist. LEXIS 15837 at *4 (N.D. Cal. Feb. 9, 2016) (citing *United States v. Cerna*, No. 08-0730, 2010 U.S. Dist. LEXIS 62907 at *1 (N.D. Cal. Jun. 8, 2010)) (Rule 16 requires a degree of disclosure sufficiently specific to allow counsel "to frame a *Daubert* motion (or other motion in limine), to prepare for cross examination, and to allow a possible counter-expert to meet the purport of the case in chief testimony.")

Failure to comply with Rule 16 is grounds for excluding an expert opinion. *United States v. Somee*, No. 13-10404, 2014 U.S. App. LEXIS 18304, at *2 (9th Cir. Sept. 24, 2014).

## III.    Steve Malloy

As far as Mr. Alahmedalabdaloklah is aware, Steve Malloy did not author, or at least did not sign, a single report contained within the nearly one terabyte of discovery

that has been produced in this case. When therefore the government claims that Mr. Malloy "will testify about the examinations, analyses, opinions, and observations related to specific items of evidence sent to TEDAC," Mr. Alahmedalabdaloklah is not meaningfully apprised of what items of evidence Mr. Malloy proposes to testify about and what his "opinions" about those items of evidence will be.

The contention that "Mr. Malloy will also testify about comparisons (similarities and differences) between various electronic devices, schematics and circuit board provided to TEDAC from locations throughout Iraq" is even more alarming given that not only does the statement provide Mr. Alahmedalabdaloklah with no reasonable notice of what devices Mr. Malloy will speak about and how, specifically, they are similar and different, but it tends to suggest that Mr. Malloy intends to speak about evidence gathered "throughout Iraq," despite the fact that Mr. Alahmedalabdaloklah has repeatedly asked for—and the government has refused to provide—information about where else in Iraq, and when else in time, any allegedly relevant "similar" items of evidence have been recovered.

The government offers that Mr. Malloy "will also opine that electronic components referenced in Defendant's emails were consistent with components that were used to manufacture IED transmitters and receivers." This assertion at least offers an identifiable opinion but fails to provide the "basis and reasons" for those opinions as required under Rule 16(G), particularly insofar as it fails to identify with particularly even a single one of the "components referenced in Defendant's emails" that Mr. Malloy believes is "consistent with components" used to make IEDs. The assertion also falls back on the generalized term "consistent with" with no specific explanation of what, exactly the "consistency" consists of. A similar problem befalls the equally non-revelatory statement that the "schematics and parts" listed in Mr. Alahmedalabdaloklah's email were "consistent with" IED submissions analyzed by TEDAC.

5

These statements are quite specific and grounded in science—an electrical engineer should presumably be able to explain how a certain schematic successfully functions as an IED, and that explanation should be grounded in scientific principles of electronic circuitry that Mr. Alahmedalabdaloklah can take to his own expert to ask whether Mr. Alahmedalabdaloklah's expert agrees or disagrees with the conclusions Mr. Malloy draws.  The government however provides no such notice of the scientific bases for Mr. Malloy's opinions but rather alleges that Mr. Malloy will identify the items based on "training and experience."  "Training and experience" however do not make a bomb explode.  Science and electrical currents do.  Mr. Malloy should not be permitted to simply testify that some or other circuit is an IED because he says so.  Mr. Malloy's unsupported opinion that in his experience a certain (wholly unidentified) circuits are "consistent with" bombs falls woefully short of the requirements of Rule 16 and prevent Mr. Alahmedalabdaloklah from mounting any kind of meaningful challenge to those opinions.

The government further offers that Mr. Malloy will "provide his expert opinion on certain documents recovered from the Omar Street Cache, specifically but not limited to Q140" but offers an actual opinion only as to Q140.  Mr. Alahmedalabdaloklah therefore objects to testimony regarding any other "documents recovered from the Omar Street Cache" other than Q140 on grounds that Mr. Alahmedalabdaloklah has not been provided with adequate notice of such opinions, as required by Rule 16.

The government similarly offers that Mr. Malloy will "provide his expert opinion on certain other items of evidence recovered at Omar Street Cache and their use in IED's (sic), to include but not limited to Q22," but fails to identify any opinion Mr. Malloy intends to offer with respect to evidence item Q22, much less any other unidentified "items of evidence."  Mr. Alahmedalabdaloklah therefore objects to testimony regarding any "other items of evidence recovered at Omar Street Cache" on

the grounds that Mr. Alahmedalabdaloklah has not been provided with adequate notice of such opinions, as required by Rule 16.

Mr. Alahmedalabdaloklah objects to any and all testimony by Mr. Malloy about the "Rabie Street Cache," about which Mr. Alahmedalabdaloklah has been provided with no discovery.

Mr. Alahmedalabdaloklah further objects to testimony regarding "the similarities between circuit boards recovered at the Omar Street Cache—in terms of design, components, and functionality—and boards recovered from other IED events" on the grounds that such statement provides Mr. Alahmedalabdaloklah with no meaningful notice of exactly what Mr. Malloy intends to say about these circuit boards as required by Rule 16. Specifically, Mr. Alahmedalabdaloklah does not know what "other IED events" the notice is referring to, how (and which) "boards recovered at the Omar Street Cache" are "similar" to those other, unspecified events and what particular design features or components Mr. Malloy proposes to use for his comparison or how he believes those (again, still unspecified "board") are supposed to function.

The government's notice that Mr. Malloy intends to testify about "other IED events" is particularly outrageous in light of the governments absolute refusal to provide to Mr. Alahmedalabdaloklah any information whatsoever about any IED events—up to and including information about a third explosion that was originally charged in the criminal complaint but that mysteriously dismissed from the ultimate indictment—other than the ones listed in the indictment or to provide information about other caches seized by the government that contain materials similar or even identical to the materials about which Mr. Malloy intends to testify.

Although the government has steadfastly refused to reveal how it intends to link Mr. Alahmedalabdaloklah to the specific IED events listed in the indictment—and the expert notice regarding Mr. Malloy does not further enlighten as to this topic—Mr. Alahmedalabdaloklah has generally gleaned that the government appears to intend to

7

argue that Mr. Alahmedalabdaloklah's email and Omar Cache both contained one or more DTMF-11 circuits and that a DTMF-11 circuit was used in each of those explosions. The TEDAC report provided to Mr. Alahmedalabdaloklah regarding the DTMF-11 circuit reveals however that literally dozens of "nearly identical custom circuits" as well as additional dozens of "similar" custom circuits were recovered in Iraq from various unidentified locations, at various unidentified times, and through various unidentified means. Mr. Alahmedalabdaloklah has asked repeatedly for information about these other DTMF-11 recoveries pursuant, inter alia, to *Brady v. Maryland* and has been provided with none of the information he has sought.

If Mr. Malloy has some opinion about why the explosion in question must have originated from Mr. Alahmedalabdaloklah and/or 50 Omar Street instead of from any one of the apparently more than 100 other sites with very similar or actually identical schematics, or information how the jurors are supposed to be able to tell that the same group must have been responsible fo all 100+ sites, the time to disclose it has long passed. Mr. Alahmedalabdaloklah objects to any testimony about this topic from Mr. Malloy.

The government should not be allowed to call Mr. Malloy to opine about "other IED events" while at the same time refusing to produce to Mr. Alahmedalabdaloklah information about any IED events other than those listed in the indictment.

**IV.     Christopher Graham and Steve Luhowy**

Messrs Graham and Luhowy's proposed testimony suffers from the same flaw that plagues the majority of the government disclosures, namely that it consists in large part of topics rather than opinions, and these topics described mostly at a high level of generality that leaves Mr. Alahmedalabdaloklah unapprised of what, specifically, they intend to say or what the bases are for whatever undisclosed opinion they intend to offer. As previously discussed, these highly generalized disclosures violate the plain

8

language of Rule 16 and leave Mr. Alahmedalabdaloklah ill-prepared to consult with his own experts regarding whether the undisclosed opinion has a sound basis in science.

The July 7, 2016 Graham/Luhowy disclosure (the "July 7 notice") for example offers that Messrs. Graham and Luhowy will "explain the creation, manufacturing process and use of [DTMF] boards and their purpose and use in IEDs." This vague statement provides Mr. Alahmedalabdaloklah with insufficient notice regarding how, precisely DTMF boards are used in IED manufacturing.

The July 7 notice also claims that Messrs. Graham and Luhowy will testify to the "evolution of various boards" about "comparisons between items, evidence, boards and schematics" the "the use of these kinds of materials in insurgency devices against coalition forces." Lastly, the July 7 notice also informs that Messrs. Graham and Luhowy will "opine about these items (sic) availability in Iraq during 2006–2009." None of these statements however leaves Mr. Alahmedalabdaloklah any more informed about what opinions Messrs. Graham and Luhowy will offer than he was before he read the notice. Specifically, Mr. Alahmedalabdaloklah does not understand how the boards allegedly "evolved," or how they were used in "insurgency devices." Mr. Alahmedalabdaloklah additionally does not know whether Messrs. Graham and Luhowy intend to testify that these items were very easy to obtain, very difficult to obtain, or anything in between.

The June 23, 2017 notice (the "June 23" notice) compounds rather than clears up the problems with insufficient disclosure exhibited by the July 7 notice. It offers that Messrs. Graham and Luhowy will testify about "specific items" that "were significant to them," but doesn't share what those items were or why they were significant. It also offers that they will share unspecified opinions about "patterns and types of items . . . found together in other caches, labs or sites," but does not identify what those patterns are or what other caches labs and sites they are referring to.

9

For the sake of brevity, Mr. Alahmedalabdaloklah will not repeat the objection to the reliance on undisclosed "other caches," but as noted above with respect to the proposed testimony of Mr. Malloy, Mr. Alahmedalabdaloklah specifically objects to testimony about "patterns" or other data derived from "other caches" in light of the government's refusal to provide Mr. Alahmedalabdaloklah with access to any of this data.

For the reasons stated herein, the government notices with respect to proposed expert witnesses Steve Malloy, Christopher Graham and Steve Luhowy are insufficient under Rule 16 and Mr. Alahmedalabdaloklah therefore objects to the proposed testimony in its entirety Rule 16.

Respectfully submitted: July 17, 2017.

JON M. SANDS
Federal Public Defender

*s/ Jami Johnson*
JAMI JOHNSON
Asst. Federal Public Defender
*Attorneys for Defendant*

Copy of the foregoing transmitted by ECF for filing July 17, 2017, to:

**Clerk's Office**
United States District Court
Sandra Day O'Connor Courthouse
401 West Washington Street
Phoenix, Arizona 85003

**DAVID PIMSNER**
**MELISSA KARLEN**
**JOSEPH N. KASTER**
**WILLIAM SOLOMON**
Assistant U.S. Attorney
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408

Copy mailed to Defendant:

**Mr. Ahmed Alahmedalabdaloklah**
USM #30021-408
CAFCC
PO Box 6300
Florence, Arizona 85132

*s/G. Bartolomei / ny*
G. Bartolomei / ny