**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Ahmed Alahmedalabdaloklah,<br><br>Defendant. | No. CR-12-01263-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant's Motion to Dismiss the Superseding Indictment Due to Violation of the Sixth Amendment Right to a Speedy Trial, or, Alternatively, to Dismiss Counts 5 and 6 Under the Speedy Trial Act (Doc. 213).

**I. OVERVIEW**

Defendant was arrested by Turkish authorities on May 18, 2011, and surrendered to the United States on August 27, 2014. Trial is set for October 3, 2017. Defendant contends that his Sixth Amendment right to a speedy trial was violated by the Government's intentional delay in obtaining his extradition. Defendant also contends that, under the Speedy Trial Act, Counts Five and Six of the Second Superseding Indictment must be dismissed with prejudice because the Government did not obtain an indictment against him within thirty days after his arrest by Turkish authorities.

This case involves two extradition requests. The first request was presented to Turkey on June 21, 2011, and based on a criminal complaint with two charges, which was filed on May 10, 2011. The second request was presented to Turkey on November 2,

2012, and based on a grand jury indictment with four different charges, which was returned on June 28, 2012. Defendant's theory is the Government made a strategic decision to file the second extradition request for the purpose of delaying processing of the first request because it did not have sufficient evidence to obtain an indictment on the two charges in the criminal complaint and it would not be able to bring different charges after Defendant was extradited. The Government contends that Turkish authorities said the second request would be considered by the Turkish courts separately from the first request, for which judicial review had been completed and executive decision for implementation was pending. It appears that the two requests were decided separately by the Turkish courts, but the executive decision to implement the judicial determinations was made for both extradition requests at the same time. It is not apparent, however, that the second request delayed the executive decision.

After Defendant was surrendered to the United States on August 27, 2014, trial continuances have been granted only with his consent. The Motion to Dismiss does not argue that any delay after August 27, 2014, is a violation of Defendant's rights, but rather argues that the Government's delay in producing exculpatory evidence demonstrates an intentional strategy of delay and necessitated the trial continuances.

## II.  DEFENDANT'S EVIDENTIARY OBJECTIONS

The Government's response includes the Declaration of Jeffrey M. Olson, an Associate Director with the Office of International Affairs in the Criminal Division of the United States Department of Justice. (Doc. 268-1.) Defendant objects to paragraphs 14–32 of the Olson Declaration as inadmissible under Rules 602 and 802 of the Federal Rules of Evidence because, Defendant contends, those paragraphs are not based on personal knowledge and include inadmissible hearsay.[1]

---

[1] Although Defendant contends the Court must consider only admissible evidence in deciding this motion, his motion and reply brief include numerous exhibits, including letters, translations, and other out-of-court statements, without any justification for their admissibility.

Although Rule 104(a) of the Federal Rules of Evidence provides that a court is not bound by evidence rules in deciding certain preliminary questions, the parties have not cited any authority expressly deciding whether Rule 104(a) applies in the present circumstances. Nevertheless, a declaration or affidavit is relevant only to the extent it is reliable, and the Federal Rules of Evidence provide guidance for assessing the reliability of the Olson Declaration.

The Olson Declaration, made under penalty of perjury, describes Olson's employment history with and responsibilities for the Office of International Affairs. It declares that in 2013 Olson began overseeing matters in Turkey, in 2013 and 2014 he had in-person communications with his Turkish counterparts regarding Defendant, and he supervised others responsible for the day-to-day communications regarding this case. It further declares that Olson reviewed the file regarding Defendant's extradition.

Paragraphs 15, 17, 21, 22, and 25 of the Olson Declaration declare facts consistent with those asserted by Defendant and are therefore undisputed. Paragraphs 14, 16, 18–20, 23–24, and 26–31 declare facts based on Olson's personal knowledge or his review of the Office of International Affairs' file for Defendant. Information from the file is not considered as proving the truth of the information in the records, but rather as showing the basis for Olson's conclusion in paragraph 32, which is:

> In sum, the United States remained in constant contact with Turkish authorities during the relevant period and took all reasonable steps possible to speed [Defendant's] extradition. In my opinion, the extradition occurred as expeditiously as possible given the United States' relations with Turkey and the applicable Turkish process.

(Doc. 268-1 at 11.)

Defendant's evidentiary objections to paragraphs 14–32 of the Olson Declaration are therefore overruled.

## III. FACTUAL BACKGROUND

### A. Defendant's Arrest by Turkish Authorities

On May 10, 2011, the United States filed a sealed criminal complaint against Defendant, and the Court issued an arrest warrant. On May 12, 2011, Interpol Washington disseminated a request to locate Defendant and notify United States authorities to enable them to seek Defendant's arrest and extradition. On May 16, 2011, United States authorities learned that Defendant would be traveling from China to Turkey on a flight that departed China on May 17, 2011. On May 16, 2011, the Office of International Affairs transmitted a request for Defendant's provisional arrest to the Department of State, which submitted the request to the United States Embassy in Ankara. On May 17, 2011, the United States Embassy in Ankara presented the provisional arrest request to the Turkish government via diplomatic note. On May 18, 2011, Turkish authorities arrested Defendant at the Istanbul Ataturk Airport after he disembarked from a flight from China. He was transferred to the Office of the State Prosecutor. On May 20, 2011, Defendant was ordered detained by the Barkiköy 11th Lower Criminal Court. On May 23, 2011, through Turkish counsel, Defendant appealed the detention order. On May 27, 2011, the appeal was denied.

### B. Extradition from Turkey Generally

The process for submitting extradition requests involves the local United States Attorney's Office, the Office of International Affairs in the Criminal Division of the Department of Justice, the United States Department of State, the United States Embassy in Ankara, Turkey, and the Department of Justice's National Security Division. The process requires preparation, review, and translation of materials that are sent by the Department of State to the United States Embassy in Ankara, which presents the extradition package and diplomatic note requesting extradition to the Turkish government.

Generally, an extradition request is initially routed through the Turkish Ministry of Justice, which serves as the point of contact for the Office of International Affairs and coordinates with other Turkish government authorities regarding the request. If a defendant opposes extradition, the extradition request is reviewed by a lower level court and an appellate court. If the courts find the defendant eligible for extradition, the judicial decision is submitted for implementation to the Council of Ministers, which has final authority over extradition requests under the Turkish Penal Code.

### C. The First Extradition Request

On June 21, 2011, the United States Embassy in Ankara presented its first extradition request to the Turkish government via diplomatic note. Defendant challenged his extradition in the Turkish courts. On July 29, 2011, after an evidentiary hearing over several days, the Barkiköy 8th Aggravated Felony Court found Defendant eligible for extradition. Defendant then appealed to the Supreme Court 9th Criminal Department. On November 1, 2011, the Supreme Court dismissed the appeal. On March 6, 2012, Defendant's petition for reconsideration of the Supreme Court's decision was denied. On August 17, 2012, the first extradition request was submitted to the Council of Ministers for implementation.

On September 24, 2012, Defendant was notified by the Ministry of Justice that the decision of the Council of Ministers was pending for implementation of the decision for Defendant's eligibility for extradition. In response to Defendant's inquiries regarding the status of his extradition, he was notified by the Ministry of Justice that the decision was still pending on November 16, 2012, January 30, 2013, and February 21, 2013.

On March 13, 2013, Defendant began a hunger strike to protest the delay in receiving a decision from the Council of Ministers whether to implement his extradition. On April 12, 2013, Defendant submitted a letter to prison authorities in which he stated that he accepted the July 29, 2011 decision by the Barkiköy 8th Aggravated Felony Court

regarding his extradition. On April 15, 2013, Defendant ended the hunger strike because it had not had any effect.

### D. The Second Extradition Request

On June 28, 2012, a grand jury indictment against Defendant was returned with four charges, which were different from the two charges included in the May 10, 2011 complaint, but based on the same factual allegations. On November 2, 2012, the Government submitted a second request to Turkey for Defendant's extradition based on the June 28, 2012 indictment. The Office of International Affairs' file indicates that before submitting the second request, the Government was informed by the Ministry of Justice that the second request would be processed separately from the first request and that Defendant could be extradited on the first request while the second request remained under consideration. The file indicates that the Government inquired again on January 4, 2013, and on March 27, 2013. On March 28, 2013, the Government received a communication from the Ministry of Justice suggesting that the second request would not be considered by the Turkish courts, but instead be sent directly to the Council of Ministers. However, on June 10, 2013, the Ministry of Justice informed the Office of International Affairs the second extradition request had been sent to the Turkish courts.

On June 13, 2013, the Ministry of Justice informed Defendant that the first extradition request was still pending before the Council of Ministers. The Ministry of Justice also stated that a second extradition request had been forwarded to the Bakirköy State Prosecutor and that a decision of the Council of Ministers and a response from the Bakirköy State Prosecutor were expected before Defendant's extradition would be executed. On July 10, 2013, Defendant told the Bakirköy 16th Criminal Court he did not accept the request for extradition because he believed he would be tortured if he was extradited to the United States. On November 21, 2013, the Bakirköy 16th Criminal Court granted the second extradition request. Defendant waived his right to appeal that

decision. The second request was forwarded to the Council of Ministers, which in approximately June 2014 decided to implement the judicial extradition decision.

### E. The United States' Communications with Turkey

The Office of International Affairs' file indicates that the Department of Justice's Resident Legal Adviser at the United States Embassy in Ankara met with a representative of the Turkish Ministry of Justice on May 20, 2011, December 14, 2011, April 25, 2012, and August 28, 2012. On November 20, 2012, the Turkish Ministry of Foreign Affairs contacted the United States Embassy in Ankara to confirm that the extradition had been approved by the Supreme Court on November 1, 2011, and that the extradition request was submitted to the Council of Ministers on August 17, 2012. On December 27, 2012, the Office of International Affairs requested a status update and was told by the Ministry of Justice that the case remained with the Council of Ministers. On January 3, 2013, the Ministry of Justice stated that it could take up to a year and a half for the executive phase to conclude. On March 27, 2013, the Office of International Affairs again asked the Ministry of Justice for a status update. On May 9, 2013, the Ministry of Justice informed the Office of International Affairs it had no estimate about a final decision.

In late August 2013, Olson, representing the Office of International Affairs, went to Turkey and was informed by his Turkish counterparts that no decision had been made by the Council of Ministers on the first extradition request. Olson was informed that the second extradition request remained with the Turkish court.

The Office of International Affairs made inquiries regarding the status of Defendant's extradition on October 9, 2013, December 3, 2013, March 14, 2014, and April 3, 2014. On December 4, 2013, the Ministry of Justice said the second extradition request remained with the 16th Aggravated Felony Court. On April 11, 2014, the Ministry of Justice said the Turkish court had found Defendant eligible for extradition on the second request and had submitted the second request to the Council of Ministers four

or five months earlier. On May 23, 2014, Olson met with his Turkish counterparts and was told Defendant's case remained pending with the Council of Ministers.

On June 26, 2014, the Ministry of Justice notified Olson that the Council of Ministers had decided to extradite Defendant. Transfer of custody involved the United States Attorney's Office for the District of Arizona, the National Security Division of the United States Department of Justice, the Office of International Affairs, the FBI, the United States Embassy in Ankara, and Turkish authorities. On August 27, 2014, Defendant was surrendered to the United States.

### F. The Charges Against Defendant

The first extradition request was based on a criminal complaint filed May 10, 2011, which charged Defendant with:

(1) Conspiracy to Commit Extraterritorial Murder of a United States National (18 U.S.C. § 2332(b)(2)) and

(2) Providing Material Support to Terrorists (18 U.S.C. § 2339A).

The second extradition request was based on the June 28, 2012 indictment, which charged Defendant with:

(1) Conspiracy to Use a Weapon of Mass Destruction (18 U.S.C. §§ 2332a(a)(1), (3));

(2) Conspiracy to Maliciously Damage or Destroy U.S. Government Property by Means of an Explosive (18 U.S.C. 844(f)(1), (2), and (n));

(3) Possession of a Destructive Device in Furtherance of a Crime of Violence and Aiding and Abetting (18 U.S.C. §§ 924(c)(1)(A), (B)(ii), and 2); and

(4) Conspiracy to Possess a Destructive Device in Furtherance of a Crime of Violence (18 U.S.C. § 924(o)).

On August 12, 2014, the grand jury returned a Superseding Indictment, which charged Defendant with:

(1) Conspiracy to Use a Weapon of Mass Destruction (18 U.S.C. §§ 2332a(a)(1), (3));

(2) Conspiracy to Maliciously Damage or Destroy U.S. Government Property by Means of an Explosive (18 U.S.C. § 844(f)(1), (2), and (n));

(3) Possession of a Destructive Device in Furtherance of a Crime of Violence and Aiding and Abetting (18 U.S.C. §§ 924(c)(1)(A), (B)(ii), and 2);

(4) Conspiracy to Possess a Destructive Device in Furtherance of a Crime of Violence (18 U.S.C. § 924(o));

(5) Conspiracy to Commit Extraterritorial Murder of a United States National (18 U.S.C. § 2332(b)(2)); and

(6) Providing Material Support to Terrorists (18 U.S.C. § 2339A).

Thus, the Superseding Indictment incorporates the two charges from the criminal complaint as Counts Five and Six. On May 30, 2017, the grand jury returned the Second Superseding Indictment, which includes the same six charges. All of the charges in the criminal complaint and the indictments rely on essentially the same factual allegations.

## IV. SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL

### A. Legal Standard

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." "[U]nlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself." *Barker v. Wingo*, 407 U.S. 514, 521 (1972). It is impossible to determine with precision when the right to a speedy trial has been denied. *Id.* For example, a "continuance is not a violation of the right to speedy trial unless the circumstances of the case are such that further delay would endanger the values the right protects." *Id.* at 522. "Thus, . . . , any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Id.* The only possible remedy for deprivation of the right to a speedy trial is dismissal of the indictment. *Id.*

To determine whether a defendant's right to a speedy trial has been deprived, courts weigh four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 530. The length of the delay is a threshold factor. *United States v. Alexander*, 817 F.3d 1178, 1181 (9th Cir. 2016). "[T]he length of the delay is measured from the time of the indictment to the time of trial." *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008) (internal quotation marks and citations omitted). "If the length of delay is long enough to be considered presumptively prejudicial, an inquiry into the other three factors is triggered. Generally, a delay of more than one year is presumptively prejudicial." *Id.* (citations omitted). However, the length of delay that will be considered presumptively prejudicial depends on the particular circumstances of the case. *Barker*, 407 U.S. at 530-31. For example, the length of delay tolerable for an ordinary street crime is considerably less than for a serious, complex conspiracy charge. *Id.* at 531.

"The reason for the delay is the focal inquiry." *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739 (9th Cir. 1989). If the government is reasonably diligent in pursuing a defendant and bringing him to trial, the defendant does not have a speedy trial claim. *Mendoza*, 530 F.3d at 762-63. But "if the government is negligent in pursuing the defendant, prejudice is presumed." *Id.* at 763. Evidence that the government intentionally delayed prosecution to gain some impermissible advantage at trial would weigh heavily against the government. *Doggett v. United States*, 505 U.S. 647, 656 (1992). "If the government intentionally delayed or negligently pursued the proceedings, . . . prejudice may be presumed, and its weight in the defendant's favor depends on the reason for the delay and the length of the delay." *Alexander*, 817 F.3d at 1182.

"[W]here our government has a good faith belief supported by substantial evidence that seeking extradition from a foreign country would be futile, due diligence does not require our government to do so." *United States v. Corona-Verbera*, 509 F. 3d 1105, 1114 (9th Cir. 2007) (after extradition became more likely, the government

- 10 -

obtained an arrest warrant and diligently sought extradition). Further, where our government pursued extradition with reasonable diligence, and it did not participate in or encourage the delay caused by the foreign authorities, the length of delay attributed to the United States excluded both the delay caused by the foreign authorities and the delay caused by the defendant's opposition to extradition. *Alexander*, 817 F.3d at 1182-83.

"[A]ffirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 656. "The amount of prejudice a defendant must show is inversely proportional to the length and reason for the delay." *Alexander*, 817 F.3d at 1183. Post-indictment delay can cause different types of prejudice: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) potential loss of exculpatory evidence and impaired memories resulting in a defendant's inability to adequately prepare his case. *Doggett*, 505 U.S. at 654. But, generally, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at 655.

### B. Analysis

Length of delay. The length of the delay, *i.e.*, the time from the initial indictment on June 28, 2012, to October 3, 2017, is five years and three months. The length of delay is presumptively prejudicial.

Reasons for delay in Turkey. After the June 28, 2012 indictment, Defendant was detained in Turkey until he was surrendered to the United States on August 27, 2014. Even before the indictment, however, the Government acted with reasonable diligence in obtaining Defendant's extradition.

On May 18, 2011, Defendant was arrested by Turkish authorities. By June 21, 2011, the Government had prepared the formal extradition request and presented it to the Turkish government via diplomatic note. On March 6, 2012, Defendant's petition for reconsideration of the Supreme Court's decision denying his appeal was denied. The Office of International Affairs' file indicates that the Government contacted a Turkish

- 11 -

representative on April 25, 2012. Nevertheless, the Turkish court did not submit the extradition request to the Council of Ministers for implementation until August 17, 2012. The file indicates that the Government repeatedly contacted Turkish authorities regarding the status of Defendant's extradition. On April 15, 2013, Defendant submitted a letter to prison authorities stating he accepted the judicial decision regarding the first request, but by that point the judicial decision already had been submitted to the Council of Ministers for implementation.

Defendant concedes the Government is not responsible for the period during which its first extradition request was pending in the Turkish court and administrative system. He contends, however, that the Government is responsible for delay caused by the second extradition request, which the Government presented on November 2, 2012. There is no evidence, however, that the Government intended or caused delay in the processing of either extradition request. The records indicate that the Government monitored proceedings and made frequent contacts with Turkish authorities. Communications from Turkish authorities were inconsistent, but they indicated that the length of time for decision by the Council of Ministers was indefinite. The first extradition request was submitted to the Council of Ministers on August 17, 2012, and the second request was submitted to the Council of Ministers in December 2013. It is possible that the Council of Ministers delayed implementation of the first extradition request after it received the judicial decision on the second request, but even so, the first request had been pending for sixteen months by then.

Moreover, there was no apparent incentive for the Government to delay processing of the first extradition request. Defendant speculates that the Government delayed extradition because it did not have the evidence necessary to obtain a grand jury indictment. There is no basis in the record for such speculation. The statement of probable cause supporting the criminal complaint includes many of the same factual allegations as the original indictment.

- 12 -

Defendant further contends that, under the doctrine of specialty, if the Government took custody of Defendant more than thirty days before it was able to obtain an indictment, it would be required to dismiss the charges described in the first extradition request. "The doctrine of specialty prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering nation agreed to extradite." *United States v. Iribe*, 564 F.3d 1155, 1158 (9th Cir. 2009) (internal quotation marks and citations omitted). However, a "criminal defendant is protected under an extradition treaty only to the extent that the surrendering country wishes." *Id.* at 1159. "An extradition treaty does not purport to limit the discretion of the two sovereigns to surrender fugitives for reasons of comity, prudence, or even as a whim." *Id.* An extradition treaty does not create a right to avoid extradition outside of the treaty's express terms. *Id.* (the surrendering country agreed to prosecution under a superseding indictment that was obtained after extradition where the indictment added charges based on the same facts underlying the extradition request). Thus, it would have been possible to obtain Turkey's approval of additional charges after extradition, especially where the additional charges were no more serious than the initial charges.

Therefore, Defendant and Turkish authorities are responsible for all of the time Defendant was detained in Turkey after the June 28, 2012 indictment, until he was surrendered to the United States on August 27, 2014.

Reasons for delay after extradition. Defendant has agreed to every trial continuance that the Court has granted. He contends that continuances have been necessary because the Government has not timely fulfilled its disclosure obligations, but he did not oppose any continuance.

Defendant's assertion of his right to a speedy trial. While in Turkey, Defendant made numerous inquiries regarding the status of his extradition. But he did not plainly agree to accept the judicial decision regarding the first request until April 12, 2013. Although he received notice of the second extradition request on June 13, 2013, he did

not inform Turkish authorities at that time that he agreed to be extradited, and he did not waive his right to appeal the judicial decision regarding the second request after November 21, 2013. In fact, on July 10, 2013, Defendant told the Turkish court that he opposed extradition.

Prejudice. Trial preparation for both parties likely has been adversely affected by the lengthy time Defendant was detained in Turkey, but more so for Defendant who was confined and lacked American legal counsel. Defendant has identified one exculpatory witness with whom he lost contact and certain physical evidence that defense counsel believes to be lost or destroyed. It is undisputed that Defendant suffered anxiety and distress being held in a Turkish prison.

Nevertheless, the Government was reasonably diligent in pursuing Defendant's extradition, and it is not responsible for delay caused by Turkish authorities and Defendant's opposition to extradition. Defendant's constitutional right to a speedy trial has not been violated.

## V. SPEEDY TRIAL ACT (18 U.S.C. § 3161(b))

### A. Legal Standard

The Speedy Trial Act provides: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). "If a violation of this provision occurs, the Act requires dismissal." *United States v. Benitez*, 34 F.3d 1489, 1493 (9th Cir. 1994) (citing 18 U.S.C. § 3162(a)(1)). Only a federal arrest, *i.e.*, detention pursuant to federal charges, triggers the running of the thirty-day period set by § 3161(b). *Id.*

### B. Analysis

Defendant contends that Counts Five and Six must be dismissed because the Superseding Indictment that included Counts Five and Six was filed more than thirty days after his provisional arrest by Turkish authorities on May 18, 2011. However, his

federal arrest on federal charges occurred on August 27, 2014, which occurred after the grand jury returned the Superseding Indictment on August 12, 2014. Therefore, the Speedy Trial Act was not violated.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss the Superseding Indictment Due to Violation of the Sixth Amendment Right to a Speedy Trial, or, Alternatively, to Dismiss Counts 5 and 6 Under the Speedy Trial Act (Doc. 213) is denied.

Dated this 26th day of July, 2017.

_____
Neil V. Wake
Senior United States District Judge