# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Ahmed Alahmedalabdaloklah,<br><br>Defendant. | No. CR-12-01263-PHX-NVW<br><br>**ORDER** |

Before the Court is the Motion to Continue Trial and to Reset Remaining Schedule (Doc. 371), the Supplement (Doc. 373), and the Further Supplement (Doc. 375). The Motion will be denied and all pre-trial and trial scheduling is affirmed.

**A.  Brief Background**

This prosecution was commenced by a Complaint on May 10, 2011. Defendant is charged with conspiring and participating in the manufacture of detonation devices for use in explosive devices used against United States soldiers and equipment in Iraq from 2005 to 2010. Defendant was indicted on June 28, 2012. (Doc. 3, 4.) A superseding indictment issued on August 12, 2014. (Doc.13, 14.) Defendant was detained in Turkey in 2011 and extradited to the United States in August 2014. (Doc. 17.) The indictment was superseded again on May 30, 2017. (Doc. 231, 232.) Defendant has been in United States custody in this District for three years awaiting trial.

The case was designated as complex on joint motion of the parties filed September 18, 2014. (Doc. 25.) The parties' first proposed schedule was indefinite (Doc. 33), so the

time to propose and order a firm case schedule was reset to April 13, 2015. (Doc. 34.) The parties submitted another proposed schedule on April 9, 2015, which they again stated was not firm. (Doc. 38.) A later joint schedule was entered on November 18, 2015. (Doc. 48.) It called for a trial on September 5, 2017. (Doc. 48.) That was a true schedule, not an aspirational one like the earlier proposals.

On November 2, 2016, Defendant's counsel filed a joint motion to extend the trial date one month from September 5, 2017, to October 3, 2017. That showed everyone knew that the existing schedule and trial date were firm. The extension was granted, but Defendant himself objected that he had not been consulted and had not agreed to the one-month continuance. At an ex parte hearing on November 16, 2016, Defendant protested that he had been in United States custody for over two years (over five years counting his extradition proceedings in Turkey), had not seen his family, and wanted his trial with no further delay. Ultimately, he agreed to the one-month delay that had been granted without his knowledge. (Doc. 135.) It was clear before then and especially clear after then that the trial schedule was firm. The trial was then still eleven months away.

In light of the need to know ahead of time how long the trial would take and to pick a jury, the Court ordered on February 24, 2017, that counsel submit by March 17, 2017, the anticipated trial time and, if the Government contemplated more than twelve trial days (three weeks) "an outline of the case it will present, describing each point of proof it intends to present, identifying each lay and expert witness for each point, explaining how the witnesses are not duplicative, and estimating the time for each point of proof." (Doc. 156.) The Government responded that would be impossible before July. (Doc. 157.)

A status conference was set for March 24, 2017. At the hearing the parties were directed to exchange by April 14, 2017, their lists of all tasks to be completed, including all motions and court proceedings, and by April 21, 2017, proposed schedules to accomplish those tasks. A hearing was set to resolve all scheduling disputes on April 28, 2017. (Doc. 165.) The parties submitted a proposed schedule of 17 lines and a motion to

vacate the April 28, 2017 hearing as unnecessary. (Doc. 168, 169.) The motion to vacate the hearing was denied, as the "proposed schedule is far from adequate and will require substantial discussion and modification." (Doc. 170.) Counsel who will try the case were ordered to attend in person and were informally told the hearing would continue from day to day until a real schedule was reached. The scheduling hearing proceeded on April 28 and March 1, 2017. It resulted in a detailed scheduling order concerning everything any party thought needed before the October 3, 2017 trial. (Doc.175.) That included party productions and other obligations, motions, hearings, foreign depositions, and all pretrial filings, documents, and deadlines. The schedule was repeated in a signed order on May 9, 2017. (Doc. 182.) There was nothing the slightest bit uncertain, unfirm, or tentative about that schedule. It assured that the Defendant would have his trial, though after more than three years in pre-trial custody in the United States.

The Court did grant some later extensions of the parties' time obligations. (Doc. 187, 261, 277, 317, 325, 339.) All extensions were granted at the expense of the Court's time to work on matters and without jeopardy to the trial date. On July 14, 2017, the Court restated previous deadlines and inserted some additional intermediate deadlines. (Doc. 341.)

### B. Judicial Resources

The Court has already expended and committed substantial resources in preparing for and conducting the October 3, 2017 trial.[1] Numerous motions have been filed and decided or are in briefing. The Jury Administrator is in the midst of summoning and screening 2,000 persons for jury selection. The Court has obtained emergency funding from the Circuit Executive' Office for extra staff for the trial, but that funding expires in December.

---

[1] That included a motion to dismiss for violation of Defendant's constitutional speedy trial right, notwithstanding Defendant's agreement to every continuance granted in this Court. (Doc. 213). The motion was denied (Doc. 353), but it serves notice that the length of these proceedings may be the subject of appeal even with Defendant requesting further delay.

This Court has preserved and protected the three months for immediate pre-trial preparation and trial of this case. A trial continuance would squander the time and effort put into that. This court has long been one of the most overworked in the federal judiciary and has been operating at a 25% vacancy of active district judges for the last year. This court does not have the luxury of allowing litigants to walk away from trials—especially two-month trials—and then come back at their convenience.

### C. The Supposed Grounds Given for a Last Minute Trial Continuance Are Unpersuasive.

1. Defense counsel cannot complain that they themselves filed "eleven substantive motions and motions under CIPA." (Doc. 373 at 2.) The substantive motions were mostly challenges to the sufficiency of the charges and could have been filed any time in the preceding two years. The CIPA motions were known in advance and accounted for in the agreed schedule.

2. Complaints about documents received prejudicially late from the Government, if valid, will result in protection of the Defendant by exclusion of evidence, exclusion of issues, or other curative instructions to the jury. To allow them to force a trial continuance would be to empower the Government to override Court management by disregarding its own obligations under the Rules and the case management orders.

3. Defendant's objections to the Government's expert witnesses have been filed. They are serious on their face, and if they stand, wide swaths of the Government's expert testimony will be excluded. That would greatly simply the trial and Defendant's trial preparation.

4. The overseas travel for depositions is no basis for trial continuance. Complications are foreseeable. More importantly, they could have been done earlier. Counsel cannot complain of inconvenience if they insisted on traveling on government passports rather than just getting a visa and going on their personal passports.

5. If the Government cannot substantiate the qualifications of its foreign language translators, their documents will be excluded (except to the extent Defendant may want them and closely related documents).

6. The withdrawal of the Hong Kong witness is unfortunate, but a trial continuance could not cure that. The Government will be required to disclose to the defense everything it knows about the circumstances around that withdrawal. The Government should stipulate to what it otherwise knows that witness would say. If she does return to cooperation, she should be brought to testify at trial. If so, the Government will be ordered to cooperate. If there is a persuasive inference that the Government is involved or if the Government is not forthcoming, a curing direction can be given to the jury. Defense counsel must adapt to the loss of that witness. Trial lawyers do that all the time. It is no basis for a trial continuance.

7. The Court too is concerned with the Government's contribution to the Joint Trial Outline. Much of it may be too attenuated to pass Rule 403, or even Rule 401. As noted, much of the expert testimony may not be sufficiently disclosed. Some of it may not be valid expert testimony at all. Substantial duplication appears likely and will be excluded. The Joint Trial Outline is inadequate to justify even the seven weeks of trial time that has been reserved. All these matters and others will be addressed promptly in pre-trial hearings. Such hearings will winnow wheat from chaff in lieu of numerous motions in limine. Moreover, there is no reason to think the Government's last-minute approach to working out its trial plan will change before the next last minute arrives.

8. Sidebars will rarely be allowed, and if hearings outside the presence of the jury are necessary, they can be done on Mondays when the jury is not in trial.

9. Recently received 261 pages of discovery concerning government expert witnesses may not be burdensome. But it is too late to give new expert disclosures, and experts whose testimony is predicated on late disclosed reports will be excluded unless the lateness is harmless.

10. The hearing on expert challenges will continue from day to day until concluded.

11. Motions in limine are always foreseeable and must be presented as best they can in the time that the parties themselves agreed to in the case schedule. They often do not require oral argument and can be granted or denied on the papers.

12. *Daubert* hearings may be necessary for some experts, but that has been foreseeable for the last three years and the parties should have planned more time for them if they wanted. It is likely, however, that much challenged expert testimony may be excluded or allowed without even reaching *Daubert* hearings. Hearings are often not needed to assess validity of expert testimony, which can be determined from the nature of the opinions and the expert report itself. This may even include challenges to linguists, whose credentials the Government must show. However, such hearings will be held if necessary. If the expert testimony concerning "signature" circuit boards was not adequately disclosed—and the limited materials the Court has reviewed already does not show it was—the Government's whole case may fail. The Court looks forward to the Government's response to the motion.

13. Marking two depositions for trial use is easy. It is not a basis for delay of trial. Objections to deposition passages must be noted, and the Court does not rule on them before they are read at trial. Much of what gets marked in depositions is never offered at trial. There will be no pre-trial hearings, briefs, argument, or decision on deposition readings.

14. The lack of model jury instructions is not a basis for trial continuance. Trial lawyers know how to write jury instructions that track statutes. We do it all the time.

15. No doubt counsel have worked hard in recent months. But the objection that new work is coming in is a concession that both sides agreed to a case schedule that necessarily left a lot to be done at the back end because they had not gotten it done

earlier. The Government is especially at risk, as culpable delay on its part necessary to have the case ready for trial can be cured by sanctions at trial.

16. The Government's production of 419 pages of new disclosure on August 3, 2017, if unexcused and especially if fairly exculpatory, can be dealt with by jury instructions concerning preclusion or establishment of facts or issues. Again, the Government cannot disregard the long-time firm trial schedule by violating its obligations. Neither can the Defendant defeat the schedule by ignoring it. Nor can the Defendant be made to pay the price.

### D. Overview

The last minute delay of this case that the parties request is remarkable. The parties managed the case themselves for two years with the Court trusting them to get things done in light of their expertise and the high regard all counsel enjoy. But they did not actually bring things to conclusion, or even plan out everything that needed to be done. Beginning eleven months before the long-set firm trial date, the Court took over proactive case management with frequent intervention. It has been clear that the schedule set eleven months before trial, after two previous years, was firm and the trial date had to be met. To the extent the Government has been non-compliant with Rules or orders, the Government, not the Defendant, will pay the price of it.

The cost of the delay the parties seek is enormous. Most immediately visible to the Court is the massive waste of court resources in having this case ready for trial, only to have it go away until the parties want it to come back. There is also a great burden on the Defendant, in custody now for three years in this country after three years in extradition in Turkey. The delay is not yet unconstitutional, but it is approaching scandalous.

Finally, the Court has no confidence that anything better than repetition of the past will happen if the Court vacates the trial because "respective counsel have agreed to meet, prepare and to submit to this Court a revised schedule to address remaining matters that presently have filing deadlines." (Doc. 371 at 2.) It would be a gross abuse of

discretion to walk away from the impending trial and let the parties propose something to start over with. Another blank check will prove just as costly as the previous ones. Justice can only be served by staying with the case management this Court has proactively directed for the last ten months, with counsel's participation and almost always their agreement.

IT IS THEREFORE ORDERED that the Motion to Continue Trial and to Reset Remaining Schedule (Doc. 371) is denied. All pre-trial and trial scheduling is reaffirmed.

IT IS FURTHER ORDERED that the United States disclose to defense counsel forthwith anything it knows about the withdrawal of the Hong Kong witness.

Dated: August 4, 2017.

_____
Neil V. Wake
Senior United States District Judge