JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

GREGORY A. BARTOLOMEI, Bar No. 011803
JAMI JOHNSON, NY Bar No. 4823373
MOLLY A. KARLIN, Bar No.032902
Assistant Federal Public Defenders
gregory_bartolomei@fd.org
jami_johnson@fd.org
molly_karlin@fd.org

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Ahmed Alahmedalabdaloklah,<br><br>　　　　　　Defendant. | **CR-12-01263-PHX-NVW**<br><br>**MOTION TO STRIKE OVERT ACTS (e)(i) and (e)(ii) AND MOTION IN LIMINE TO PRECLUDE GOVERNMENT FROM INTRODUCING EVIDENCE RELATED TO APRIL 6, 2007 AND MAY 14, 2007 EXPLOSIONS**<br><br>**(Oral Argument Requested)** |

　　　　Defendant Ahmed Alahmedalabdaloklah ("Mr. Alahmedalabdaloklah"), through undersigned counsel moves to strike from the Second Superseding Indictment [ECF No. 231] overt acts (e)(i) and (e)(ii), relating to IED explosions on April 6, 2007 (the "April 6, 2007 explosion") and May 14, 2007 (the "May 14, 2007 explosion"), as well as the two sentences in overt act (e) that precede these subparts on grounds that there is no evidence connecting Mr. Alahmedalabdaloklah to either explosion. Mr. Alahmedalabdaloklah further moves *in limine* to preclude the government from introducing into evidence related to either explosion because such evidence is irrelevant and the prejudice of admitting it substantially outweighs any probative value.

## I. Allegations Relating to the April 6, 2007 and May 14, 2007 Explosions Should Be Stricken.

While the Second Superseding Indictment—obtained just ten weeks ago—continues to allege that "[u]nknown coconspirators of the defendant . . . employed [ ] component parts ["supplied" by Mr. Alahmedalabdaloklah] against U.S. military personnel including, but not limited to" the April 6, 2007 and May 14, 2007 explosions, nowhere does the joint trial outline suggest the government will even attempt to prove these allegations are true. Rather, the joint trial outlines alleges simply that the government intends to introduce testimony that the April 6, 2007 explosion involved a circuit board that "matches" three found at 50 Omar Street and that that the May 14, 2007 explosion involved an initiator that was "very similar" to three recovered from 50 Omar Street. [ECF No. 362 at 22.] The government has not noticed any expert witness who is going to testify that s/he can tell that a "match" or "similarity" between circuits necessarily indicates that the circuits must have been "supplied" by the same person, nor is there any intuitive reason to believe that must be the case. Nor—notwithstanding the allegation in the Second Superseding Indictment that Mr. Alahmedalabdaloklah "designed" circuit boards [ECF No. 231 at 3]—has the government suggested any expert or fact witness will testify that Mr. Alahmedalabdaloklah was the "inventor" of the DTMF-11 or that he has some other relationship to the DTMF-11 that might reasonably be used to hold him accountable for such boards, regardless of where found. In short, the government appears to have abandoned the allegations in the indictment regarding the April 6, 2007 and May 14, 2007. This alone is reason enough alone to strike them.

It is unsurprising that the government appears to have walked away from any argument that Mr. Alahmedalabdaloklah "supplied" the parts used in either the April 6, 2007 or May 14, 2007 explosions given that it appears from the discovery that the use of DTMF-11s in IEDs was pervasive in Iraq. Indeed, the FBI reports that were 381

such circuits found by coalition forces during the time period November 19, 2005 to December 27, 2006 alone and that of those 381, fully 119 of them were "nearly identical" to boards found at 50 Omar Street. The sheer number of such devices found throughout the country—an average of apparently one a day—makes it implausible that any one person or group of individuals working closely together could be responsible for all of them, and the government has produced no evidence in this case suggesting that that is the case.

Mr. Alahmedalabdaloklah has limited his count to those boards located from November 19, 2005 to December 27, 2006 not because there is any common sense reason to do so but rather because—for reasons never explained to Mr. Alahmedalabdaloklah—no discovery at all has been provided regarding the recovery of DTMF-11 boards outside that period of time despite the fact that both explosions referenced in the indictment occurred significantly after the latest date in that range. As will be discussed further herein, the failure to provide discovery regarding the recovery of DTMF-11s after December 27, 2006 while attempting to hold Mr. Alahmedalabdaloklah responsible for DTMF-11s found outside this time frame raises significant questions regarding the government's fulfillment of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), which is an additional reason to strike these overt acts. It is safe to assume however that, at a minimum, the coalition forces continued to find DTMF-11 boards well into at least 2007, making it all the more unlikely that every DTMF-11s can be attributed to any single person or group.

The government appears at trial to have no intention of proving that Mr. Alahmedalabdaloklah or anyone connected with him was responsible for either the April 6, 2007 or May 14, 2007 bombings, and no evidence in support of such allegations has been produced. The overt acts should therefore be stricken.

3

## II. The Bombings Are Not Relevant Under Federal Rules of Evidence 401 and 402.

Evidence related to the April 6, 2007 explosion and the May 14, 2007 explosion is irrelevant to the charges against Mr. Alahmedalabdaloklah. Federal Rule of Evidence 401 provides, "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The fact that four American soldiers were killed in explosions using DTMF-11 boards that have no known link to Mr. Alahmedalabdaloklah or any of his alleged coconspirators does not make it more or less likely that Mr. Alahmedalabdaloklah supplied component parts to the 1920 Revolutionary Brigades, that Mr. Alahmedalabdaloklah conspired with others to use a weapon of mass destruction, or any other fact at issue in this case. The fact that any particular DTMF-11 was located simply does not make any fact in this case more or less probable where no known or alleged connection exists between Mr. Alahmedalabdaloklah and the device in question.

## III. References to the Explosion Should be Excluded under Federal Rule of Evidence 403.

Even if the explosions were somehow relevant—which they are not—they should be excluded because the probative value of any such evidence is substantially outweighed by its risk of unfair prejudice. Fed. R. Evid. 403. It is difficult to imagine more powerfully prejudicially testimony than testimony about the deaths of U.S. soldiers. Introduction of such evidence would substantially prejudice Mr. Alahmedalabdaloklah because the government evidently intends to introduce this evidence without having or producing any evidence showing he is responsible for them. Allowing evidence of the deaths would unduly inflame the emotions of the jury and would provide little or no probative value since the devices in question have no known connection to Mr. Alahmedalabdaloklah. The balancing test of Federal Rule of

4

Evidence 403 therefore weighs heavily in favor of excluding this evidence as substantially more prejudicial than probative.

**IV. The Government's Duty Under *Brady v. Maryland*.**

As noted above, the failure of the government to provide any discovery at all related to DTMF-11 boards recovered in Iraq after December 27, 2006 while charging Mr. Alahmedalabdaloklah with "suppl[ying]" boards used in two explosions after that date raises substantial questions about the extent of the government's compliance with its obligations under *Brady v. Maryland*. The government recently congratulated itself for "t[aking] the initiative" to compile limited information regarding the 119 "nearly identical" boards recovered from November 19, 2005 to December 27, 2006 and suggested that information "was not readily available." That information, once complied, showed that the government had made fingerprint identifications on a number of the 119 boards—including at least two from different events that were linked to the same person—and that none of those fingerprint identifications were to Mr. Alahmedalabdaloklah or anyone known to be connected with him.

It is unclear what a similar analysis of boards recovered after December 27, 2006—*i.e.*, during the time period when the charged explosions actually occurred—would reveal, and it does not appear that the government has ever gathered or even looked into this information.

Mr. Alahmedalabdaloklah understands that it is no doubt an extraordinarily burdensome task to review information on hundreds—perhaps even as many as a thousand—individual circuit boards in order to determine whether the government is aware of any exculpatory information with respect to those boards. But it is the government—not Mr. Alahmedalabdaloklah—who has chosen to adopt a theory of guilt so expansive that it appears to suggest it would be proper hold Mr. Alahmedalabdaloklah responsible for any DTMF-11 board found anywhere in Iraq at any time, without limitation and without having to show any connection to Mr.

5

Alahmedalabdaloklah other than that the board was a DTMF-11 board. Extraordinarily expansive theories of guilt bring with them correspondingly expansive obligations under *Brady v. Maryland*. The failure of the government apparently to even investigate DTMF-11 boards found in Iraq during the time period of the explosions is further reason to preclude the proposed testimony.

**V.    Conclusion.**

Because the evidence related of the April 6, 2007 and May 14, 2007 explosions is irrelevant and the prejudice of its admission would substantially outweigh any probative value, the evidence must be excluded from the government's presentation of its case.

Respectfully submitted: August 14, 2017.

JON M. SANDS
Federal Public Defender

*s/ Jami Johnson*
JAMI JOHNSON
Asst. Federal Public Defender

CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2017, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF system for filing documents and sent a copy of the foregoing document to:

David A. Pimsner
Melissa Karlen
Bill Solomon
Joseph Kaster
Assistant U.S. Attorneys

*s/ny*