**EXHIBIT A**

JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

GREGORY A. BARTOLOMEI, Bar No. 011803
SHISHENE JING, CA Bar. No. 315067
JAMI JOHNSON, NY Bar No. 4823373
MOLLY A. KARLIN, Bar No. 032902
Assistant Federal Public Defenders
gregory_bartolomei@fd.org
shishene_jing@fd.org
jami_johnson@fd.org
molly_karlin@fd.org

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Ahmed Alahmedalabdaloklah,<br><br>Defendant. | CR-12-01263-PHX-ROS<br><br>**RENEWED MOTION TO STRIKE OVERT ACTS (e)(i) AND (e)(ii) AND MOTION *IN LIMINE* REGARDING THE APRIL 6, 2007 AND MAY 14, 2007 EXPLOSIONS PURSUANT TO THE COURT'S AUGUST 30, 2017 ORDER**<br><br>**(Oral Argument/Evidentiary Hearing Requested)**<br><br>Assigned to the Hon. Roslyn O. Silver |

On August 31, 2017, the Court (Wake, J.) issued an order (the "August 31 Order," ECF No. 486) denying "without prejudice as premature" Mr. Alahmedalabdaloklah's Motion to Strike Overt Acts (e)(i) and (e)(ii) and Motion *in Limine* to Preclude Government from Introducing Evidence Related to April 6, 2007 and May 14, 2007 Explosions (the "Motion," ECF No. 411), "subject to the Court's requirement that the Government prove up the connections for the April 6 and May 14, 2007, explosions in advance of presenting evidence about them." ECF No. 486 at 1. The Government has

1

now indicated that it does not intend to "prove up" any such connection. Accordingly, Defendant Ahmed Alahmedalabdaloklah, through undersigned counsel, renews his Motion. In the event the Government claims, in response to this motion, that it *does* intend to link Mr. Alahmedalabdaloklah with the explosions, the Court should order the Government to make a proffer and resolve the Motion before trial.

This motion is supported by the accompanying Memorandum of Points and Authorities, incorporated herein by reference. Excludable delay under 18 U.S.C. § 3161(h)(1)(D) may result from this Motion or from an order based thereon.[1] LOCAL R. CRIM. P. 12.2(a).

Respectfully submitted: December 5, 2017.

        JON M. SANDS
        Federal Public Defender

        *s/Shishene Jing*
        SHISHENE JING
        Assistant Federal Public Defender

        *Attorneys for Defendant*
        *Ahmed Alahmedalabdaloklah*

---

[1] *But see Bloate v. United States*, 559 U.S. 196, 206 (2010) ("Subparagraph D . . . renders automatically excludable only the delay that occurs 'from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of,' the motion.") (quoting 18 U.S.C. § 3161(h)(1)(D)) (emphasis omitted).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**FACTUAL BACKGROUND**

According to the Second Superseding Indictment, Mr. Alahmedalabdaloklah

> supplied component parts to members and associates of the 1920 Revolution Brigades, an Iraqi insurgent group. Those parts were then used in improvised explosive devices (IEDs) that were employed against United States military personnel and U.S. military vehicles in Iraq.

ECF No. 231 at 3-4. The Government has further alleged that "[u]nknown coconspirators of [Mr. Alahmedalabdaloklah] then employed the component parts against U.S. military personnel[,]" including . . . i. [o]n April 6, 2007, in the outskirts of southern Baghdad, near Baghdad International Airport, [when] three U.S. soldiers were killed in action by a cellular phone initiated IED"; and "ii. [o]n May 14, 2007, in northern Baghdad, approximately one-half mile from the [sic] 50 Omar Street, Baghdad, Iraq, [when] one U.S. soldier was killed in action and four wounded in action by a cellular phone initiated IED." *Id.* at 4.

On August 14, 2017, Mr. Alahmedalabdaloklah moved to strike these two overt acts from the indictment and *in limine* to preclude the Government from introducing evidence related to either event. ECF No. 411. He argued to strike the two overt acts as follows:

> [N]owhere does the joint trial outline suggest the government will even attempt to prove these allegations are true. Rather, the joint trial outlines alleges simply that the government intends to introduce testimony that the April 6, 2007 explosion involved a circuit board that "matches" three found at 50 Omar Street and that that the May 14, 2007 explosion involved an initiator that was "very similar" to three recovered from 50 Omar Street. [ECF No. 362 at 22.] The government has not noticed any expert witness who is going to testify that s/he can tell that a "match" or "similarity" between circuits necessarily indicates that the circuits must have been "supplied" by the same person, nor is there any intuitive reason to believe that must be the case.

> . . . .
>
> It is unsurprising that the government appears to have walked away from any argument that Mr. Alahmedalabdaloklah "supplied" the parts used in either the April 6, 2007 or May 14, 2007 explosions given that it appears from the discovery that the use of DTMF-11s in IEDs was pervasive in Iraq. Indeed, the FBI reports that were 381 such circuits found by coalition forces during the time period November 19, 2005 to December 27, 2006 alone and that of those 381, fully 119 of them were "nearly identical" to boards found at 50 Omar Street. The sheer number of such devices found throughout the country—an average of apparently one a day—makes it implausible that any one person or group of individuals working closely together could be responsible for all of them, and the government has produced no evidence in this case suggesting that that is the case.

*Id.* at 2-3. He further argued with respect to his motion *in limine* to preclude the Government from introducing evidence related to either event that:

> Evidence related to the April 6, 2007 explosion and the May 14, 2007 explosion is irrelevant to the charges against Mr. Alahmedalabdaloklah. Federal Rule of Evidence 401 provides, "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The fact that four American soldiers were killed in explosions using DTMF-11 boards that have no known link to Mr. Alahmedalabdaloklah or any of his alleged coconspirators does not make it more or less likely that Mr. Alahmedalabdaloklah supplied component parts to the 1920 Revolutionary Brigades, that Mr. Alahmedalabdaloklah conspired with others to use a weapon of mass destruction, or any other fact at issue in this case. The fact that any particular DTMF-11 was located simply does not make any fact in this case more or less probable where no known or alleged connection exists between Mr. Alahmedalabdaloklah and the device in question.
>
> . . . .

1

> Even if the explosions were somehow relevant—which they are not—they should be excluded because the probative value of any such evidence is substantially outweighed by its risk of unfair prejudice. Fed. R. Evid. 403. It is difficult to imagine more powerfully prejudicially testimony than testimony about the deaths of U.S. soldiers. Introduction of such evidence would substantially prejudice Mr. Alahmedalabdaloklah because the government evidently intends to introduce this evidence without having or producing any evidence showing he is responsible for them. Allowing evidence of the deaths would unduly inflame the emotions of the jury and would provide little or no probative value since the devices in question have no known connection to Mr. Alahmedalabdaloklah. The balancing test of Federal Rule of Evidence 403 therefore weighs heavily in favor of excluding this evidence as substantially more prejudicial than probative.

*Id.* at 4-5. At the motions *in limine* hearing on August 30, 2017, the Government represented that it did indeed intend to present at least circumstantial evidence supporting its allegations that Mr. Alahmedalabdaloklah bore criminal responsibility for the explosions and was entitled to attempt to do so. ECF No. 487, Hr'g Tr., Aug. 30, 2017, at 23:22-29:18. The Court agreed, but with the following limitation:

> THE COURT: . . . I would want to have the foundation for this established ahead of time. I would not want this to come in subject to being linked up, because frankly, I think if I had to strike it, it might be a mistrial to have evidence that inflammatory come in and not be connected up. I don't want any mistrials here.

*Id.* at 24:14-19. Ultimately, it ruled:

> With respect to Document 411, the motion is denied without prejudice at this time as premature but subject to the Court's requirement that the government prove up the connections for the April 6 and May 14, 2007 explosions in advance of presenting evidence about them so that we will know whether there's sufficient evidence for that connection or there isn't. And I will not be in a position of having that evidence admitted and then stricken later which, like I said, I can't say

2

> for sure, but I think if it came to that, we're probably going to have a mistrial. And the government doesn't want that. I don't want that. And so I do want to avoid that.

*Id.* at 38:20-39:5. The minute entry for the hearing, entered on August 31, 2017, then reflected: "Motion is DENIED without prejudice as premature, subject to the Court's requirement that the Government prove up the connections for the April 6 and May 14, 2007, explosions in advance of presenting evidence about them." ECF No. 486 at 1.

## **ARGUMENT**

The Government now appears to have abandoned any intent or ability to meet the Court's foundational requirement that it "prove up the connections" between Mr. Alahmedalabdaloklah and the two explosions. Because the Government does not intend to "prove up" the connections, or cannot do so, the Motion should now be granted.

The Government has indicated its change of position at least twice since the August 30, 2017 motions *in limine* hearing. *First*, at the October 13, 2017 status conference before this Court (Silver, J.), the Government explicitly stated that it had not, in fact, decided whether it would link Mr. Alahmedalabdaloklah to the explosions, as it had previously represented. The Court asked, "what evidence do you have that you are going to present to the jury that would establish [Mr. Alahmedalabdaloklah's] connection with the two bombings?" Ex. 1, Hr'g. Tr. Oct. 13, 2017, at 83:8-10. After wandering for a bit, Government counsel stated,

> MR. PIMSNER: . . . [i]n an effort to try to see if we—one, to streamline the trial, because I think that's—everybody's in agreement that's the goal we should all try to reach. We are trying to determine how far to take that—the—like the 119 similar—nearly identical boards that were found in 2006. Whether we just use it only to establish that these were found in the battlefield, or whether we say—you know, these type of boards were found in the battlefield, or whether we go to the conclusion that they were made by similar—either same person or group of people working together.

3

*Id.* at 85:11-21. The Court inquired further:

> THE COURT: When you say "identical," that doesn't mean identical meaning there could be no other one? It means identical parts? . . . . [I]t is not as if those parts were not – there weren't any of them somewhere in the world, correct?
>
> MR. PIMNSER: Correct.
>
> . . . .
>
> THE COURT: So [the boards] are identical, but then how many of those are there or were there at the time [of the explosions], **or do you have somebody that's going to bring it closer to establishing that this defendant was responsible for manufacturing those particular ones**?
>
> MR. PIMNSER: The comparisons pretty much is the similarity or the—as one conclusion, identical nature of—identical boards. **We don't have a witness that says he manufactured that one**.
>
> THE COURT: That's right. But how do you get close to the jury on that?
>
> MR. PIMSNER: Again, Your Honor, I would—you know, if **we use it only for the proposition that boards like this were found and so—that they had no other purpose than a nefarious purpose**.

*Id.* at 85:1-87:1 (emphasis added).

The Court's threshold requirement for admission of evidence concerning the explosions, however, was that the Government link those two explosions to Mr. Alahmedalabdaloklah. Evidence that the circuit boards found at 50 Omar Street have a "nefarious purpose" because other identical boards were used in bombings does not satisfy that requirement. The Court itself alluded that such a link-up seemed tenuous and that the Government had failed to "prove up the connections," when posing the following hypothetical:

4

> THE COURT: Okay. So let me give you a hypothetical here. There are many assault rifles in the United States and maybe automatic rifles now that have been converted. So is that not a fair comparison to these particular circuit boards? You have a weapon that was – defendant was involved in, or there was a killing somewhere with an automatic weapon and another defendant was found with an automatic weapon, and he was selling those automatic weapons. **How in the world could you get to the jury with that limited evidence to establish that he was involved in the killing**?

*Id.* 87:7-16 (emphasis added).

*Second*, in its Renewed Notice of Expert Opinions, filed October 31, 2017, ECF No. 560, the Government further indicated that it had all but abandoned any attempt to prove any connection between Mr. Alahmedalabdaloklah and any devices or parts found at either of the two explosions. Instead, the Government similarly states that its expert will testify only that, "based on the tracings and components, DTMF-11 boards found at the Omar Street cache matched those found at two post-blast IED events," which it contends "corroborates the conclusion that the boards at the Omar Street location were designed and made for an illicit end use and not an innocent purpose." *Id.* at 19-20. This is consistent with its representation to the Court at the prior October 13, 2017 status conference.

This Court has made clear its priority to "resolve[] before trial" the "issues that remain is this case that Judge Wake hoped to resolve at trial[,]" including by having additional hearings, "inasmuch as is necessary[.]" Ex. 1 at 4:1-5. This is one such issue, and a crucial one, at that. The Government has been investigating the explosions for a decade, and has had more than seven years to prepare for trial. It now appears to concede that it will not attempt to "prove up" any connection between Mr. Alahmedalabdaloklah and the explosions, as the Court ruled it must. It would be unfair to require the defense to waste further precious time and resources preparing to rebut allegations that the Government either has no intention of pressing or for which it cannot lay a foundation. To the extent the Government is still "trying to determine" whether to attempt to link the

5

explosions to Mr. Alahmedalabdaloklah, Ex. 1 at 85:14, it is now time for the Government to make that decision.

**CONCLUSION**

For these reasons and those set forth in Mr. Alahmedalabdaloklah's Motion, ECF No. 411, and at the motions *in limine* hearing, ECF No. 487 at 5:13-23:20, the Motion should now be granted. In the event the Government claims it still intends to attempt to link the explosions to Mr. Alahmedalabdaloklah, the Court should require a proffer.

Respectfully submitted: December 5, 2017.

JON M. SANDS
Federal Public Defender

 *s/Shishene Jing*
SHISHENE JING
Assistant Federal Public Defender

*Attorneys for Defendant*
*Ahmed Alahmedalabdaloklah*

| | |
|---|---|
| 1 | Copy of the foregoing transmitted by ECF |
| 2 | for filing December 5, 2017, to: |
| 3 | CLERK'S OFFICE |
| 4 | United States District Court |
| 5 | Sandra Day O'Connor Courthouse<br>401 West Washington Street |
| 6 | Phoenix, Arizona 85003 |
| 7 | DAVID PIMSNER |
| 8 | MELISSA KARLEN |
| 9 | JOSEPH N. KASTER<br>WILLIAM C. SOLOMON |
| 10 | Assistant U.S. Attorneys |
| 11 | United States Attorney's Office<br>Two Renaissance Square |
| 12 | 40 N. Central Avenue, Suite 1200 |
| 13 | Phoenix, Arizona 85004-4408 |
| 14 | |
| 15 | Copy mailed to Defendant: |
| 16 | AHMED ALAHMEDALABDALOKLAH |
| 17 | USM #30021-408<br>CCA/CADC |
| 18 | PO Box 6300 |
| 19 | Florence, Arizona 85132 |
| 20 | *s/Ny Magary*<br>Ny Magary |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Copy of the foregoing transmitted by ECF for filing December 5, 2017, to:

CLERK'S OFFICE
United States District Court
Sandra Day O'Connor Courthouse
401 West Washington Street
Phoenix, Arizona 85003

DAVID PIMSNER
MELISSA KARLEN
JOSEPH N. KASTER
WILLIAM C. SOLOMON
Assistant U.S. Attorneys
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408

Copy mailed to Defendant:

AHMED ALAHMEDALABDALOKLAH
USM #30021-408
CCA/CADC
PO Box 6300
Florence, Arizona 85132

*s/S. Jing / ny*
S. Jing / ny