JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

GREGORY A. BARTOLOMEI, Bar No. 011803
SHISHENE JING, CA Bar. No. 315067
JAMI JOHNSON, NY Bar No. 4823373
MOLLY A. KARLIN, Bar No. 032902
Assistant Federal Public Defenders
gregory_bartolomei@fd.org
shishene_jing@fd.org
jami_johnson@fd.org
molly_karlin@fd.org

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | CR-12-01263-PHX-ROS |
|---|---|
| Plaintiff, | **REPLY IN SUPPORT OF RENEWED MOTION TO STRIKE OVERT ACTS (e)(i) AND (e)(ii) AND MOTION *IN LIMINE* REGARDING THE APRIL 6, 2007 AND MAY 14, 2007 EXPLOSIONS PURSUANT TO THE COURT'S AUGUST 30, 2017 ORDER** |
| vs. | |
| Ahmed Alahmedalabdaloklah, | |
| Defendant. | **(Oral Argument/Evidentiary Hearing Requested)** |
| | Assigned to the Hon. Roslyn O. Silver |

Defendant Ahmed Alahmedalabdaloklah, through undersigned counsel, hereby submits the following reply memorandum in support of his Renewed Motion to Strike Overt Acts (e)(i) and (e)(ii) and Motion *in Limine* Regarding April 6, 2007, and May 14, 2007 Explosions (ECF No. 610 the "Motion").

# **INTRODUCTION**

After years of asserting a contrary position to this Court, the defendant, the Turkish government, and three separate grand juries, the government has at last admitted—a mere month before trial—that it cannot and will not attempt to prove the most serious of all the allegations in the indictment, namely that Mr. Alahmedalabdaloklah's alleged actions caused the deaths of Americans. Specifically, "[t]he United States no longer seeks to prove that the Defendant's conspirators employed the component parts used in" the April 6, 2007 and May 14, 2007 explosions. ECF No. 613 at 2, and "will not argue that the Defendant designed or placed those particular DTMF boards at the two IED events." *Id.* at 3.

The government also admits— and also for the first time—that DTMF boards are not, as it has contended for years, "manifestly components for explosive devices or facially dangerous." ECF No. 613 at 2. In other words, it admits that it cannot and will not attempt to prove that anything about the design or function of the boards found at 50 Omar Street suggests that the boards could not be used for anything other than a nefarious purpose. This admission is about-face from representations the government was making to this Court as late as October 13, 2017:

> THE COURT: What evidence is there? What opinion evidence do you have that [DTMF-11s] can only be used for nefarious purpose?
>
> MR. PIMSNER: The engineers will say the way they were designed, how they were modified.

Ex. 1, Hr'g Tr., Oct. 13, 2017, at 87:2–6.

Having conceded, as the defense has argued for years, that the government has insufficient evidence to link Mr. Alahmedalabdaloklah to *any* bombings of Americans or *any* deaths of Americans, the government nevertheless seeks to maintain the strategic advantage that accrues from inflaming the emotions of the jury by introducing evidence of deaths from bombings unconnected to Mr. Alahmedalabdaloklah and through calling

2

soldier witnesses—at least one of whom has significant, visible, permanent injuries from the bombing in question—simply to prove the uncontroverted point that one could theoretically use a DTMF-11 circuit board to detonate an explosion and that some people in Iraq in fact did use them in this fashion.

This Court has however already ruled that the bombings are not admissible for this purpose, and law of the case dictates that "the Court[] require[s] that the Government prove up the connections for the April 6 and May 14, 2007, explosions *in advance of presenting [any] evidence about them*." ECF No. 486 at 1 (emphasis added). As this Court has previously noted, it would lead to "a mistrial to have evidence that inflammatory come in and not be connected up," stating "I don't want any mistrials here." Ex. 2, Hr'g Tr., Aug. 30, 2017, at 24:14-19. The Court should thus grant the Motion. *See* ECF No. 610. In addition, such evidence is inadmissible for the separate reason that it is more prejudicial than probative under Rule 403 and is moreover cumulative and a waste of time under Rule 403.

## **FACTUAL BACKGROUND**

According to the Joint Trial Outline, ECF No. 362, the government intends to use evidence of the April 6 and May 14, 2007 explosions at trial as follows:

> [T]he United States will offer evidence concerning two IED events. The first IED event occurred near Al-Radwiniyah on April 6, 2007, in the outskirts of southern Baghdad, near Baghdad International Airport. **Three U.S. soldiers were killed**, and one M1114 "Humvee" was destroyed, by a cellular phone initiated IED. The next event occurred in the Adhamiyah neighborhood in north Baghdad on May 14, 2007, approximate one half-mile from the Omar Street facility. **One U.S. soldier was killed in action**, **four soldiers were severely wounded**, and one M1151 "Humvee" was destroyed by a cellular phone initiated IED.
>
> **During both of these attacks, U.S. soldiers were injured** and killed, and U.S. military equipment was destroyed. **At**

3

> **trial, the United States will call some of these percipient military witnesses to testify to the events of those days, their recollection of the attacks**, and their roles in the collection of the IED evidence and the documentation of what occurred.

ECF No. 362 at 21 (emphasis added). The government estimates that it will call "7-10 [w]itnesses" and use up "5-6 trial days" to present "[p]hysical [e]vidence from IED [a]ttacks and [o]ther IED [c]aches." *Id*.

At the motions *in limine* hearing on August 30, 2017, the Court stated:

> THE COURT: . . . **I would not want this to come in subject to being linked up**, because frankly . . . **it might be a mistrial to have evidence that inflammatory come in and not be connected up**. I don't want any mistrials here.

Ex. 2, Hr'g Tr., Aug. 30, 2017, at 24:14-19 (emphasis added). The response accuses the defendant of selective quotation or—even more outrageously—of having "conceded" (in its motion to preclude introduction of *any* evidence of either explosion, nonetheless) that limited evidence about the bombings is somehow admissible. ECF No. 613 at 6. These allegations are without merit. The Court was quite clear that "connecting up" the explosions meant linking the explosions *to the defendant:*

> THE COURT: . . . I viewed this motion as more a matter of saying, hey, the government **can't really adequately connect that up with the defendant**, and I think we have already said you can get your chance to try to do that . . . . **But you still have to do it**.

Ex. 2, Hr'g Tr., Aug. 30, 2017, at 26:23–27:5 (emphasis added). The Court further ruled:

> With respect to Document 411, the motion is denied without prejudice at this time as premature but **subject to the Court's requirement that the government prove up the connections for the April 6 and May 14, 2007 explosions in advance of presenting evidence about them** so that we will know whether there's sufficient evidence for that connection or there isn't. And I will not be in a position of

4

> having that evidence admitted and then stricken later which, like I said, I can't say for sure, but I think if it came to that, we're probably going to have a mistrial. And the government doesn't want that. I don't want that. And so I do want to avoid that.

*Id.* at 38:20-39:5 (emphasis added). The minute entry for the hearing, entered on August 31, 2017, then reflected: "Motion is DENIED without prejudice as premature, **subject to the Court's requirement** that the Government prove up the connections for the April 6 and May 14, 2007, explosions in advance of presenting [any] evidence about them." ECF No. 486 at 1 (emphasis added).

The Government now admits that it will not even attempt to satisfy the Court's requirement because it "will not argue that the Defendant designed or emplaced those particular DTMF boards at the two IED events." ECF 613 at 3. And, despite its prior representation that it wished to submit evidence that "four soldiers were **severely wounded**," ECF No. 362 (emphasis added), the government now represents that "the United States has no intention of eliciting graphic testimony, submitting autopsy photos, or otherwise 'inflaming' the jury," ECF 613 at 6, "nor will its presentation focus on the injuries incurred from these explosions," *id.* at 3. Rather, it seeks to admit "limited evidence regarding these two events" to prove that the "DTMF boards found at Omar Street and linked to the Defendant were designed for RCIEDs and not some legitimate commercial use." *Id.* at 4. It proposes to introduce this evidence through the testimony of soldiers, at least one of whom, as noted above, remains permanently and visibly scarred from the incident.

5

# ARGUMENT

## I. BECAUSE THE GOVERNMENT HAS NOW ADMITTED IT CANNOT CONNECT THE BOMBINGS TO THE DEFENDANT, EVIDENCE ABOUT THE BOMBINGS IS PRECLUDED AS LAW OF THE CASE.

"The law of the case doctrine 'generally preclude[s] [courts] from reconsidering an issue previously decided by the same court.'" *Silva-Pereira v. Lynch*, 827 F.3d 1176, 1190 (9th Cir. 2016) (quoting *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)). "For the law of the case doctrine to bar reconsidering of an issue, 'the issue in question must have been decided explicitly or by necessary implication in the previous disposition.'" *Id.* (quoting *United States v. Lummi Indian Tribe*, 763 F.3d 1180, 1187 (9th Cir. 2014)). The Ninth Circuit has identified only five circumstances in which a court may depart from the law of the case: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). A court's "failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998). None of the five circumstances is applicable here.

The Court previously ruled very clearly that the defense's Motion to Strike Overt Acts (e)(i) and (e)(ii) and *Motion In Limine* to Exclude the April 6, 2007 and May 14, 2007 Explosions "is [denied] without prejudice as premature, **subject to the Court's requirement** that the **Government prove up the connections** for the April 6 and May 14, 2007, explosions in advance of presenting [any] evidence about them." ECF No. 486 at 1 (emphasis added). The Government now represents that it will not satisfy the Court's requirement and "[t]he United States no longer seeks to prove that the Defendant's conspirators employed the component parts used in" the April 6, 2007 and

6

May 14, 2007 explosions. ECF 613 at 2. None of the five circumstances identified by the Ninth Circuit under which a Court may depart from the law of the case without abusing its discretion applies. The Motion should therefore now be granted in its entirety.

## II. BECAUSE THE GOVERNMENT HAS NOW ADMITTED IT CANNOT TIE THE BOMBINGS TO THE DEFENDANT, EVIDENCE ABOUT THE BOMBINGS MUST BE EXCLUDED UNDER RULE 403.

The government argues that evidence regarding these explosions is nevertheless admissible to "show[] that DTMF-11 boards were used in RCIEDs." ECF No. 613 at 5. Even assuming *arguendo* that departing from law of the case would not be an abuse of this court's discretion, use of these explosions for the government's intended purpose violates Rule 403, because the probative value of such evidence is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Federal Rules of Evidence 403. "Unfair prejudice . . . means an undue tendency to **suggest decision** on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Notes on Fed. Rule Evid. 403, 28 U.S.C. app. at 860 (emphasis added).

The government's attempted use of the evidence it seeks to introduce is analogous to introducing evidence of a school shooting which led to the deaths of innocent children, to establish that guns found in a location associated with an individual with no connection to the school shooting *could have been* used for nefarious rather than recreational purposes. Introducing evidence concerning two specific bombings in Iraq where significant numbers of American soldiers were killed and/or injured, where no evidence connects the defendant's conduct to the particular bombings, risks misleading the jury with respect to the defendant's culpability in the bombings introduced, risks confusing the jury with insinuations that the defendant may have been

7

involved in particular violent anti-American conduct for which no evidence exists, and risks suggesting a decision as to the defendant's involvement in a conspiracy on an improper emotional basis.

The response misrepresents the nature of defendant's proposed expert testimony in order to suggest that testimony about the bombings is somehow necessary to combat an argument which the defense has no intention of making – that the DTMF-11s found at Omar Street could only have been used for an innocent purpose. The Defendant has however, not noticed *any* expert testimony about the purported purpose (innocent or nefarious) of the DTMF-11 boards found at 50 Omar Street, and further has not noticed any expert testimony to establish that the DTMF-11 boards could not have been used for nefarious purposes. Rather, the defendant has simply provided notice that its expert will testify that DTMF decoder technology of the sort incorporated in the DTMF-11 boards found at 50 Omar Street has a legitimate commercial purpose. ECF No. 573 at 4–5. The government apparently no longer disagrees with this proposition. *See* ECF No. 613 at 1. Indeed, DTMF decoders simply "decode" touchtone phone signals such that when a certain set of tones (often referred to as a "password" or "PIN") is received, the DTMF circuit will engage some secondary action. That secondary action may be playing back voicemails on an answering machine, turning on or off a home security system or locking or unlocking a door. Or, that secondary action may be initiating an explosion. The range of secondary actions that can be initiated through the use of DTMF technology is limited only by the creator's imagination, and defense does not intend to argue that DTMF-11s cannot be used to trigger an explosion, nor does it intend to deny that at least some individuals in Iraq were using them in this fashion during the relevant time period. In other words, the sole purported relevance of the testimony is to establish facts not in dispute, at the expense of prejudicing the jury, being cumulative, and wasting significant time.

Case-law cited by the Government regarding Rule 403 is not instructive. *See* ECF No. 613 at 9. For instance, in *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000), the court admitted evidence as more probative than prejudicial from an expert that gang members who testify against their own are beaten or killed by the gang to impeach a gang member's testimony that the defendant was not involved in particular illegal conduct. This bears no resemblance to introducing testimony of two bombings which killed American soldiers, with no connection to the defendant, just to prove that various circuit boards could have been used in explosive devices. In *United States v. Benkahla*, 530 F.3d 300 (4th Cir. 2008), the Court admitted expert testimony concerning the background, history, and people connected with radical Islam in its prosecution of an individual who was part of a network of people the government was investigating for crimes connected to radical Islam. However, this is mere background contextual information rather than testimony concerning specific violent events entirely unconnected to the defendant.

Lastly, the government's argument that the proposed evidence is not "unduly" prejudicial because "[t]he 'prejudice' of this evidence flows from the [d]efendant being a member of a violent criminal conspiracy and not the evidence *per se*" necessarily fails because the defendant, as the government now concedes, has *no* demonstrable connection to the prejudicial events. ECF No. 613 at 9 (citing *United States v. Patterson*, 819 F.2d 1495 (9th Cir. 1987)). In *Patterson*, the Court found that an overt act in the indictment consisting of a shooting was relevant as a form of control exerted by the defendant in furtherance of a conspiracy. Notably, the defendant in *Patterson* actually committed the shooting, whereas here, the defendant has no connection to the bombings at issue, and in fact, the Government has agreed to strike the overt acts from its indictment.

In sum, admitting days of testimony from injured American soldiers to establish the uncontested fact that DTMF-11's could be used in a range of devices, including explosives, is irrelevant, more prejudicial than probative, and cumulative under Rule 403.

## **CONCLUSION**

For these reasons and those set forth in Mr. Alahmedalabdaloklah's Motion, ECF No. 610, and at the motions *in limine* hearing, Ex. 2, at 5:13-23:20, the Motion should now be granted.

Respectfully submitted: December 19, 2017.

JON M. SANDS
Federal Public Defender

 *s/Shishene Jing*
SHISHENE JING
Assistant Federal Public Defender

*Attorneys for Defendant*
*Ahmed Alahmedalabdaloklah*

| | |
|---|---|
| 1 | Copy of the foregoing transmitted by ECF |
| 2 | for filing December 19, 2017, to: |
| 3 | CLERK'S OFFICE |
| 4 | United States District Court |
| 5 | Sandra Day O'Connor Courthouse<br>401 West Washington Street |
| 6 | Phoenix, Arizona 85003 |
| 7 | DAVID PIMSNER |
| 8 | MELISSA KARLEN |
| 9 | JOSEPH N. KASTER<br>WILLIAM C. SOLOMON |
| 10 | Assistant U.S. Attorneys |
| 11 | United States Attorney's Office<br>Two Renaissance Square |
| 12 | 40 N. Central Avenue, Suite 1200 |
| 13 | Phoenix, Arizona 85004-4408 |
| 14 | |
| 15 | Copy mailed to Defendant: |
| 16 | AHMED ALAHMEDALABDALOKLAH |
| 17 | *s/ny* |

11