# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>　　　　Plaintiff,<br>v.<br>Ahmed Alahmedalabdaloklah,<br>　　　　Defendant. | No. CR-12-01263-001-PHX-ROS<br>**ORDER** |

There are a variety of pending motions and issues, some of which have been addressed at recent conference others which were not addressed during a conference but are fully briefed and can be resolved on the papers.

**I. Victim-Related Evidence (Doc. 415)**

Defendant sought to "preclude the government from introducing victim-related photographic, testimonial, or physical evidence that carries little or no probative value." (Doc. 415). In light of subsequent developments regarding the nature of evidence the government plans to present, this motion will be denied as moot.

**II. Use of Inflammatory Terms (Doc. 418)**

Defendant sought to prevent the government from using the terms "terrorist," "jihadist," "extremist," or other similar terms. (Doc. 418). Defendant also requested the government not equate "any conduct at issue in this case to 'terrorism,' 'jihad,'" or other similar terms. Finally, Defendant requested the government not refer to the 1920 Revolution Brigades as having any affiliation with other groups, such as Al Qaeda or the

Muslim Brotherhood. During multiple hearings the Court addressed the terms the government may use and, in light of those discussions, the Court understands the government does not plan to engage in any of the behavior Defendant feared. Therefore, the motion will be denied as moot.

**III. Inadmissible Portions of Foreign Depositions (Doc. 426)**

Defendant sought an advance ruling regarding the admissibility of the deposition testimony of Jamal Abdul Khamees Al-Dhari and Muhammad Hussain Ali-Ways Al Zawbai. The parties later submitted deposition designations, indicating which portions of the depositions the government hopes to introduce and Defendant's objections to those portions. (Doc. 505-3, 505-4). That submission rendered the earlier motion moot. Assuming the Court determines the depositions should not be excluded based on one of Defendant's other motions, the Court will resolve the particular objections prior to trial. To allow for an informed decision regarding those objections, the government will be required to submit its responses to Defendant's objections.

**IV. Renumbering of Exhibits (Doc. 521, 540)**

Defendant requested the Court require the government renumber its exhibits. The Court did so but Defendant subsequently filed motions connected to his belief that the renumbering was inadequate. (Doc. 521, 540). Based on the discussion at the December 21, 2017, hearing, the parties continue to have difficulty with evidence numbering but they are working together to identify any remaining errors. Therefore, the motions addressed to this issue will be denied as moot.

**V. Striking Overt Acts and All References to Two Events (Doc. 610)**

Defendant sought to strike two overt acts involving explosions from the indictment and to exclude from trial all references to those overt acts. (Doc. 610). At the December 21, 2017, hearing the Court explained there was no need to strike the overt acts from the indictment because the indictment will not go to the jury and the government will not quote from the indictment during trial. As for excluding all reference to the explosions, the Court discussed the limited way in which the government

will be allowed to reference the explosions at trial. In an attempt to avoid any disputes during trial, the Court offers the following additional guidance.

At the December 21 hearing the government presented an overview of its evidence regarding circuit boards. The government explained that a board recovered after one of the explosions and a board found at the Omar Street site "matched" while a board found at the other explosion was "very similar" to a board found at the Omar Street site. (Doc. 646 at 17). In light of the government's concession that it will not argue the boards found at the explosions were, in fact, boards created by Defendant, it was not clear why the government would seek to prove they "matched" or were "very similar." But the importance of the similarities seems to be based on the government's belief that the boards found at the explosions, and the boards found at the Omar Street site, had no commercial applications and were *only* used in RCIEDs.

As stated in the government's written opposition to the motion to exclude the explosions, "custom-made DTMF-11 boards like those found at Omar Street and on April 6 and May 14 were used in RCIEDs and were not designed for commercial purposes." (Doc. 613 at 6). The government's support for this appears to be the planned testimony of Mr. Luhowy who will testify that "these kinds of boards were not sold commercially in Iraq or elsewhere." (Doc. 560 at 18).

At present, therefore, the Court understands the government will present very limited evidence regarding the explosions solely to prove DTMF-11 boards have no possible use other than in RCIEDs. In presenting this evidence, the government must focus on that contention and will not be allowed to introduce evidence regarding the injuries or deaths that resulted from those explosions. Thus, the government cannot call soldiers to testify about their explosion-related experiences or injuries. The experiences, injuries, or deaths linked to the explosions would be unduly prejudicial in light of explosions' very limited relevance to the charges. The government may, however, call military personnel for the limited purpose of establishing the authenticity of the boards located at the sites of the explosions. With these limitations in mind, Defendant's request

to exclude the explosions entirely will be denied.

Finally, given the government's constantly shifting approach to the link, or lack thereof, between Defendant and the explosions, it is unclear what overt act or acts the government now plans to prove at trial. The government will be required to identify the overt act or acts it will seek to prove.[1]

**VI. Admissibility of Physical Evidence**

Towards the end of the December 21, 2017, hearing, the Court discussed with the parties the admissibility of physical evidence seized in Iraq. Defense counsel stated they plan to object to the authenticity of each piece of evidence. In response, government counsel seemed to concede there might be issues regarding the evidence, including authenticity and chain of custody, but counsel claimed any such problems would go to the "weight not admissibility" of the evidence. That statement is not entirely correct and to avoid disputes during trial, the court offers the following guidance.

Pursuant to Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." This means for any evidence to be admitted, the government will be required to make "a prima facie showing of authenticity." *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985). A prima facie showing of authenticity requires each piece of evidence be accompanied by "sufficient proof . . . so that a reasonable juror could find in favor of authenticity or identification." *Id.* Only once that showing has been made can the evidence be admitted. *See United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996) ("Once the prima facie case for authenticity is met, the probative value of the evidence is a matter for the jury.").

Given the evidence at issue in this case, the government "must also establish the

---

[1] The government usually need not disclose all overt acts. *See, e.g., United States v. DiCesare*, 765 F.2d 890, 897 (9th Cir. 1985) (bill of particulars not required detailing "all overt acts"). However, this case is unique in that it has been pending for a very substantial period of time yet the Government's main theory of the case appears to be subject to constant revisions.

- 4 -

chain of custody." *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991). This requires the government "introduce sufficient proof so that a reasonable juror could find that the items [of evidence] are in substantially the same condition as when they were seized." *Id.* Similar to authenticity, establishing a chain of custody does not require absolute certainty as to the path evidence took in reaching court. *See id.* Instead, the government need only make a reasonable showing of that path. And once that reasonable showing is made, any "break in the chain of custody goes only to the weight of the evidence." *Id.; United States v. Matta-Ballesteros*, 71 F.3d 754, 769 (9th Cir. 1995) ("[A] defect in the chain of custody goes to the weight, not the admissibility, of the evidence introduced.").

The main evidence in this case allegedly originated at the Omar Street site. Some of that evidence was sent to the Combine Explosive Exploitation Cell, later sent to the Terrorist Explosive Device Analytical Center, and now is in government possession in Phoenix. This path presents unique challenges for the government to establish authenticity and chain of custody. To meet its burden, the government likely will need individuals to testify about the path the evidence took from the Omar Street site. While that path need not be exhaustive, it must be sufficient such that a reasonable juror could conclude the evidence in court is, in fact, the evidence seized from the Omar Street site and it is in substantially the same condition as when it was seized. Thus, to the extent the government believes *any* authenticity or chain of custody issue will go merely to the weight of the evidence, the government is incorrect. The government must be prepared to make a prima facie showing of authenticity and some reasonable chain of custody for each piece of evidence. Once those showings are made, any additional concerns will go to the weight of the evidence.

Finally, the Court notes that these preliminary issues appear crucial because the opinions of the government's expert witnesses rest upon the validity of the physical evidence. If the government cannot make the requisite preliminary showings, it expert witness testimony may not be admissible as it would not be based on "sufficient facts or

data." Fed. R. Evid. 702(b). Accordingly, the preliminary showings impact every aspect of the government's case and the government must be prepared to make the requisite showings.

**VII. Admissibility of Email Evidence**

The parties have long-standing disputes regarding the emails the government plans on using at trial. In August 2017, Defendant filed a motion seeking to exclude "any of the 300+ emails" the government allegedly planned to use. (Doc. 429). In opposing that motion, the government conceded the production of "final email translations was less than ideal," but the government had narrowed the list so that only 70 emails would be used at trial. (Doc. 468 at 2). According to the government, all of those emails were admissible.

At a status hearing on October 13, 2017, the Court discussed the emails with the parties and directed additional briefing regarding their admissibility. (Doc. 554). There was some confusion about the form that additional briefing should take place. Thus, on December 1, 2017, the government filed a single document titled "(1) Notice of Email Evidence and Anticipated Evidentiary Foundations, (2) Response to Defendant's Objections to Email Evidence, and (3) Motion for Pretrial Determination of Admissibility of Email Evidence." (Doc. 591).

The December 1 filing indicated the government had further reduced the number of emails it would use at trial to 35. The government then explained its position on the admissibility of each of those emails. Defendant filed his reply regarding his objections to the emails, addressing the admissibility of each email. That document also sought to strike the government's request for a pretrial determination of admissibility. (Doc. 593). According to Defendant, the government had repeatedly ignored the deadlines for production of emails and appropriate translations and, therefore, it would be prejudicial to allow the government to use any of the emails at trial. On the issue of translations, Defendant claimed the government had not used English translations of the emails during the deposition of Mr. Al-Dhari. (Doc. 593 at 22). The emails allegedly "had not been

translated into English and . . . were therefore unreadable by defense counsel" at the time of the deposition. (Doc. 593 at 23). The transcript of Mr. Al-Dhari's deposition, however, seems to contradict this statement. At the deposition, defense counsel stated the copies they had "include translations." And government counsel stated defense counsel had "already been provided the translations." (Doc. 426-3 at 45). Given those statements, it is unclear what defense counsel means when they contend the emails at the deposition had not been translated.

In light of the strange manner in which the emails issue has been briefed, the government now seeks permission to file a "surreply." (Doc. 640). That document would be a surreply to Defendant's original motion regarding the emails but would seem to only be a reply to the government's motion for pretrial determination of admissibility. In any event, the government will be granted permission to file a surreply. That document should include the matters the government wishes to address but must also explain whether defense counsel had translations of all the emails used at Mr. Al-Dhari's deposition in advance of the deposition. The surreply should also include the English-language translations of the exhibits.

**VIII. Dismissal for Substantial Interference with Defense Witness (Doc. 611)**

Defendant believes the government interfered with his ability to call Guo Xu as a defense witness. Based on that alleged interference, Defendant seeks dismissal with prejudice of the Second Superseding Indictment. (Doc. 611). Defendant has requested discovery and an evidentiary hearing. *See United States v. Lord*, 711 F.2d 887, 891 (9th Cir. 1983) (defendant may be entitled to evidentiary hearing regarding interference with defense witness). Defendant believes that discovery should include "all communications" between the government and "any Chinese or Hong Kong governmental body or official," "all materials" cited in a letter sent to defense counsel, and the identification of "all persons who . . . engaged in any communications with any authority in China (including Hong Kong) regarding this case." (Doc. 611 at 28). And once that discovery is provided, Defendant apparently believes an evidentiary hearing is

necessary for him to present evidence and call witnesses.

The Court cannot determine from the present record whether Defendant has already been provided the information he seeks and, if not, whether the government objects to providing him that information. Therefore, the government will be required to file a statement indicating whether it is willing to provide to Defendant any of the information he seeks. Once the government files that statement, the Court will determine what additional steps are appropriate.

**IX. Final Pretrial Conference Date and Filings**

The final pretrial conference will be set for January 17, 2018. The revised final pretrial order will be due January 12, 2018. That final pretrial order should be accompanied by revised joint proposed jury instructions and a revised joint proposed verdict form.

Accordingly,

**IT IS ORDERED** the following motions are **DENIED**: Doc. 415, 418, 426, 521, 540, 593, 610.

**IT IS FURTHER ORDERED** the Motion for Leave to File Excess Pages (Doc. 627) is **GRANTED**. The Clerk of Court shall file the document lodged at Doc. 628.

**IT IS FURTHER ORDERED** the Motion for Leave to File Surreply (Doc. 640) is **GRANTED**. The government shall file its surreply no later than **January 8, 2018**.

**IT IS FURTHER ORDERED** the government shall file its responses to Defendant's objections to the deposition designations no later than **January 8, 2018**.

**IT IS FURTHER ORDERED** no later than **January 8, 2018**, the government shall disclose to Defendant the overt acts it plans to prove.

**IT IS FURTHER ORDERED** no later than **January 5, 2018**, the government shall file a statement indicating whether it will provide Defendant the information he seeks regarding the Hong Kong witness.

**IT IS FURTHER ORDERED** no later than **January 12, 2018**, the parties shall file their Revised Joint Proposed Pretrial Order and Revised Joint Proposed Jury

Instructions. The Final Pretrial Conference is set for **January 17, 2018 at 9:00 a.m.**

Dated this 2nd day of January, 2018.

_____
Honorable Roslyn O. Silver
Senior United States District Judge