JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

GREGORY A. BARTOLOMEI, Bar No. 011803
SHISHENE JING, CA Bar. No. 315067
JAMI JOHNSON, NY Bar No. 4823373
MOLLY A. KARLIN, Bar No. 032902
Assistant Federal Public Defenders
gregory_bartolomei@fd.org
shishene_jing@fd.org
jami_johnson@fd.org
molly_karlin@fd.org

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>     vs.<br><br>Ahmed Alahmedalabdaloklah,<br><br>            Defendant. | CR-12-01263-PHX-ROS<br><br>**RESPONSE TO THE UNITED STATES OF AMERICA'S CHAIN OF CUSTODY**<br><br>Assigned to the Hon. Roslyn O. Silver |

Defendant Ahmed Alahmedalabdaloklah (Mr. Alahmedalabdaloklah"), through undersigned counsel, respectfully moves to preclude the government from introducing evidence for which no proper foundation exists.

This Motion is supported by the accompanying Memorandum of Points and Authorities, incorporated herein by reference. Excludable delay under 18 U.S.C.

§ 3161(h)(1)(D) may result from this Motion or from an order based thereon.[1]  LOCAL R. CRIM. P. 12.2(a).

      Respectfully submitted:      January 16, 2018.

                                    JON M. SANDS
                                    Federal Public Defender

                                    *s/Shishene Jing*
                                    SHISHENE JING
                                    Assistant Federal Public Defender

                                    *Attorneys for Defendant*
                                    *Ahmed Alahmedalabdaloklah*

---

[1] *But see Bloate v. United States*, 559 U.S. 196, 206 (2010) ("Subparagraph D . . . renders automatically excludable only the delay that occurs 'from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of,' the motion.") (quoting 18 U.S.C. § 3161(h)(1)(D)) (emphasis omitted).

# MEMORANDUM OF POINTS AND AUTHORITIES

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 1

    A.    The Government submits its Chain of Custody Factual Summary for the first time on January 13, 2018, a day and a half prior to the due date of Defense Counsel's submission, and zero business days prior to the due date of Defense Counsel's submission. ........................................................... 1

LEGAL STANDARD ....................................................................................................... 5

ARGUMENT .................................................................................................................... 6

CONCLUSION ................................................................................................................. 7

**PRELIMINARY STATEMENT**

Because the government continues to refuse to provide enough information from which the defense can determine how the government intends to get each specific exhibit into evidence, the defense still cannot respond with individual objections tailored for each exhibit, but instead is limited to a high level overview. The defense objects on foundation grounds to the introduction of all exhibits for which there lacks a witness with personal knowledge to testify as to each link in the chain of custody. The defense further objects to the introduction of evidence for which there is reasonable suspicion that tampering has occurred.

**FACTUAL BACKGROUND**

**A. The Government submits its Chain of Custody Factual Summary for the first time on January 13, 2018, a day and a half prior to the due date of Defense Counsel's submission, and zero business days prior to the due date of Defense Counsel's submission.**

On Saturday January 13, 2018, the Government, for the first time, provided its submission on how it planned to establish chain of custody. Although it had previously provided no more than names of individuals[2] who would be testifying to introduce

---

[2] Exhibits 55-117:
- Todd Wilson, Andy Hasenkamp, William Huff, Neil Reede and Geoffrey Mullin.
- Tamiko Bogad, Daniel Gaston, Eugene Zink, Steven Luhowy, Chris Graham, John Holland and Sam Mum.
- Bob Aleman, Steve Malloy, Chris Graham.
- Testimony of witness with knowledge. FRE 901(b)(1).

. . . .

Exhibit 119a (and sub-exhibits) 122p:
- Todd Wilson, Andy Hasenkamp, William Huff, Neil Reede and Geoffrey Mullin.
- Tamiko Bogad, Eugene Zink, Daniel Gaston, Steve Luhowy, Chris Graham, John Holland and Sam Mum.
- Bob Aleman, Steve Malloy, Chris Graham.
- Court linguist (where needed to translate Arabic).

1

enumerated sets of exhibits, without establishing what any named individual would testify as to, its new submission explains, presumably as a general matter for all exhibits, how chain of custody will be established not on an exhibit by exhibit level but in totality. However, this submission explained much of what the Government planned to establish in the passive voice, e.g., "apartments were secured by padlock," rather than by specifying who secured the apartments. Defense counsel has bolded below examples of portions of chain of custody for which the Government has not yet specified who will testify to the fact to be established. The defense expects that at trial, individuals with personal knowledge will testify as to each of the bolded statements below.

> On August 30, 2006, during a clearing operation, U.S. soldiers located two apartments on "Omar" Street. After the soldiers secured the apartments, another team of soldiers searched the apartments. Those soldiers will testify that they collected numerous items of evidence during their search. They will authenticate photographs of the site and of the evidence collected there. They will testify to their individual recollection of this cache and the standard policy/procedure for evidence collection. They will testify that **the two apartments were secured by padlock** when they concluded the search. They will further testify **that evidence taken on this day was transported** to the former Iraqi Ministry of Defense (MOD) **where it was photographed** again. The evidence **was then transported to CEXC**.
>
> On August 31, 2006, soldiers returned to the two apartments to continue the search and collection of evidence. The soldiers present on the second day will authenticate photographs documenting the state of the apartments, and describe the **search and collection of evidence conducted**

---

- Testimony of witness with knowledge. FRE 901(b)(1).

ECF No. 663 at 8-10.

2

**on that day**. Evidence collected on the second day of the search was **also ultimately taken to CEXC**.

At CEXC, the evidence was initially processed by Tamiko Bogad. A case number **was assigned to the evidence** collection as a whole, and the **items of evidence were separated and processed** in different sections within CEXC for analysis and further review. During this processing, the items of **evidence were photographed, re-bagged**, and a **triage inventory of the evidence was created**.

The electronic items Ms. Bogad forwarded for processing were examined individually by CEXC Engineer, Steve Luhowy. Mr. Luhowy noted his findings, re-bagged the evidence, and forwarded it to other CEXC groups for further processing.

Ultimately items of evidence from Omar Street **were shipped to TEDAC** in the United States for further analysis and processing. Once received at TEDAC, each item of evidence **was assigned a Q-number**, **was photographed, and was forwarded** for further analysis. Processing sections at TEDAC included biometrics, electronics, and DNA. Following TEDAC review and analysis, the "Omar" Street evidence remained in evidence at TEDAC until it was sent to Phoenix FBI in 2017.

All witnesses will testify based upon their individual recollection of the evidence for this cache as well as the standard policies and procedures followed.

As for the two IED incidents, testimony will be elicited from those who collected the IED components at the two sites, those who transported the components to CEXC, and those involved in intake at CEXC. There will also be testimony about how the evidence was processed and photographed by Engineer Kevin Zibari, and then ultimately sent to TEDAC, documented, and put into evidence.

As for the Amiriyah and Rabie Caches, testimony will be elicited from the soldiers who arrived at those scenes. These

3

> soldiers will testify about their search of, and evidence collection at, these sites. They will authenticate photographs taken of the sites and evidence collected from these sites. They will further testify that evidence collected from the sites was transported to CEXC. They will testify to their individual recollection of this cache and the standard policy/procedure for evidence collection.
>
> At CEXC the evidence was initially processed, assigned a case number, separated, and processed to different sections within CEXC for analysis and further review. Ultimately, items of evidence from the Amiriyah and Rabie Caches were shipped to TEDAC in the United States for further analysis and processing. Once received at TEDAC, each item was assigned a Q-number, photographed, and forwarded for further analysis. Processing sections at TEDAC included biometrics, electronics, and DNA.

Ex. 1 Attachment to Email from David Pimsner to Shishene Jing dated 1/13/2018 (emphasis added).

This new submission is the most comprehensive overview of how the Government intends to establish chain of custody available to the defense. Significantly, the Government is not clear on whether it will attempt to establish chain of custody for its evidence in bulk, as suggested by its high level description, or as is customary, individually exhibit by exhibit. In the Government's original chain of custody submission, ECF No. 663, however, the Government provided lists of individuals who presumably will testify as to chain of custody for specific exhibits, which corresponded with sets of exhibit numbers. And prior to its most recent submission, defense counsel presented the Government with its attempted summary of the Government's planned chain of custody, in which defense counsel specified "[i]ntroduction of exhibits from 50 Omar Street will be in bulk, and the government will attempt to establish chain of custody in bulk, rather than on an item-by-item basis." Ex 2. Email from Shishene Jing to David Pimsner dated 1/12/2018. This language was

4

explicitly taken out of the Government's new submission. *See* Ex. 1. Based on these inferences, the defense is working under the presumption that the Government will introduce chain of custody testimony for individual exhibits, exhibit by exhibit, rather than in bulk.

## LEGAL STANDARD

The authentication of each distinct physical item for which no complete chain of custody log exists[3] is required prior to its admission into evidence. This calls for a showing of evidence sufficient to support a finding that "the matter in question is what its proponent claims" – for instance, that the exhibit in court is actually the weapon taken from the defendant, and that it has not been significantly changed. Fed. R. Evid. 901(a). Where items lack a distinctive means of identification, such as an item with a serial number or witnesses' handwriting, "the proponent must also establish the chain of custody." *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991).

The government bears the burden of establishing chain of custody at trial. This requires the prosecution to introduce "sufficient proof" so that a "reasonable juror" could find that the items at issue are "in 'substantially the same condition' as when they were seized." *Id*. This requires the government to specify, in addition to the witness(es) who will testify to introduce each relevant exhibit; each witness's testimony concerning (a) when they took custody of the item and from whom; (b) what precautions they took to eliminate risk of tampering or deterioration; and (c) when they relinquished custody of the item and to whom. *See, e.g.*, *United States v. Davis*, 754 F.3d 278, 281 (5th Cir.

---

[3] Such evidence includes items such as circuit boards, documents, and tape, gathered at various caches in Iraq such as the Omar Street, FAR/Amiriyah, and Rabie caches, which were then transported to the Combined Explosives Exploitation Cell ("CEXC") in Iraq, and then shipped to the FBI's Terrorist Explosive Device Analytical Center ("TEDAC") in the United States, whereupon chain of custody logs establishing authenticity were first generated. Prior to arrival at TEDAC in the United States, no chain of custody logs exist.

5

2014); *United States v. Thomas*, 749 F.3d 1302, 1310 (10th Cir. 2014). Courts further require that there must be a "reasonable probability" that no tampering occurred in the transfer of custody of the item. *United States v. Aviles*, 623 F.2d 1192, 1198 (7th Cir. 1980). The proponent need not maintain physical objects to be offered in evidence under round the clock watch, but a showing of reasonable safeguards is required. If some evidence of tampering exists, then the Government must show that acceptable precautions were taken to maintain the evidence in its original state. *United States v. Dickerson*, 873 F.3d 1181 (9th Cir. 1988).

While a minor break in the chain of custody goes more to weight of the evidence than admissibility, serious gaps in the chain may raise enough doubt to require exclusion. *See, e.g.*, *United States v. Bonds*, 2009 WL 416445, at *5 (N.D. Cal. 2009) (refusal of witness with firsthand knowledge to testify that samples were taken from the defendant and given to a facility for testing required exclusion of the samples because "crucial pieces of the chain" [were] missing altogether").

## **ARGUMENT**

The Government cites to *United States v. Al-Moayad*, 545 F.3d 139, 173 (2d Cir. 2008), for the proposition that "[u]nder Federal Rule of Evidence 901(a), '[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims," and that sufficient evidence consists of the testimony of one individual who received items found abroad in the United States. *Id*. But that case differs from ours significantly. There, one signal person collected one item with fairly distinctive identifying features in Afghanistan, handed it over to one CIA individual, and that CIA individual showed up at trial to say she personally received it. It was a case with a single hand-off. There, the Court found sufficient to establish foundation an agent's testimony describing "how the documents she received from Afghanistan . . . were collected, received, sorted, analyzed, and sent to the United States." *Id*. at 173.

1. This case differs significantly from ours in that there is not a single handoff of a distinctive item, but thousands of indistinguishable items of electronics that were moved around between many parties for multiple months. To the extent the government reads *Al-Moayad* to suggest that it only need to introduce testimony from the person who received items in the United States, the defense objects.

Rather, Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The defense expects that the Government, for each item of evidence, will provide the testimony of an individual with knowledge as to how each individual exhibit was, at each stage in Iraq, collected, received, sorted, analyzed, and sent to the United States. To the extent that the Government seeks to introduce testimony in its current submission for which it has not described who will testify, the defense expects that the government will provide an individual with personal knowledge at trial.

Second, courts require that there must be a "reasonable probability" that no tampering occurred in the transfer of custody of the item. *United States v. Aviles*, 623 F.2d 1192, 1198 (7th Cir. 1980). The defense further objects to exhibits for which visual evidence of tampering exists. For instance, certain exhibits seem to have not come from 50 Omar Street, while certain of the electronics exhibits have been ripped apart or re-assembled and re-grouped together in a fashion inexplicable to the defense. To the extent the Government wishes to introduce such potentially tampered evidence, the Government must introduce testimony from a person with knowledge to establish that acceptable precautions were taken to maintain the evidence in its original state when discovered in Iraq. *See United States v. Dickerson*, 873 F.3d 1181 (9th Cir. 1988).

## CONCLUSION

The defense objects on foundation grounds to the introduction of all exhibits for which there lacks a witness with personal knowledge to testify as to each link in the

7

chain of custody. The defense further objects to the introduction of exhibits for which visual evidence of tampering exists.

Respectfully submitted:    January 16, 2018.

JON M. SANDS
Federal Public Defender

 *s/Shishene Jing*
SHISHENE JING
Assistant Federal Public Defender

*Attorneys for Defendant*
*Ahmed Alahmedalabdaloklah*

CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2018, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF system for filing documents and sent a copy of the foregoing document to:

David A. Pimsner
Melissa Karlen
Bill Solomon
Joseph Kaster
Assistant U.S. Attorneys

*s/ny*

8