JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona  85007
Telephone: 602-382-2700

GREGORY A. BARTOLOMEI, Bar No. 011803
JAMI JOHNSON, NY Bar No. 4823373
MOLLY A. KARLIN, Bar No. 032902
Assistant Federal Public Defenders
gregory_bartolomei@fd.org
jami_johnson@fd.org
molly_karlin@fd.org
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-12-01263-PHX-ROS |
| Plaintiff, | |
| vs. | **DEFENDANT'S OBJECTIONS TO THE DRAFT PRE-SENTENCE REPORT** |
| Ahmed Alahmedalabdaloklah, | |
| Defendant. | **(Oral Argument Requested)** |

Defendant Ahmed Alahmedalabdaloklah, by and through undersigned counsel, respectfully submits his Objections to the draft of the pre-sentence report (hereinafter PSR) that was prepared in this case. The legal basis and argument(s) for each objection are set forth in the attached legal memorandum incorporated in full herein.

The Defendant objects:

1.    to the alleged aliases and the dates of birth listed on pages 3 and 4 of the PSR;

2.    to the statements contained in paragraphs 6 - 17 of the PSR;

3.    to paragraph 23 and the application of U.S.S.G. §2M6.1(a)(1) in determining the base offense level for the crimes of conviction and to all calculations and all recommendations resulting therefrom;

4.    to paragraph 25 and the application of U.S.S.G. §3A1.4 and all calculations and recommendations resulting therefrom, which Guideline is commonly referred to as the "terrorism enhancement", and which raised the Defendant's base offense level up a full 12 levels;

5.    to paragraph 26 for failure to apply a reduction for role in the offense pursuant to U.S.S.G. §3B1.2;

6.    to paragraph 37 which applied U.S.S.G. §3A1.4 and all calculations and recommendations resulting therefrom as it pertains to the automatic increase in the Defendant's Criminal History Category from Category I to Category VI; and

7.    to all statements made by the Probation Officer written in the "Justification" section of the PSR on page 15 thereon.

## Legal Argument

**I.    Preliminary Statement:**

The Defendant reasserts and reaffirms his pleas of not guilty to all charges brought against him by the United States Government. He further reasserts and reaffirms all objections he made prior to trial throughout the discovery process, in all written and oral motions, at all CIPA proceedings and filings, all pretrial proceedings, at the trial itself, and throughout the entire life of this case.

**II.    Defendant Objects to all alleged aliases and dates of birth in the PSR.**

On pages 3 and 4 of the PSR, the Probation Officer listed approximately 43 alleged aliases attributed to the Defendant. While some of the aliases resemble or are some variation of the Defendant's name as reflected in the Court's documents,

these are aliases are being attributed to him by persons unknown and without a factual or legal basis. The aliases were not proven at trial nor have reliable documents been presented to prove that the aliases belong to the Defendant. The Defendant objects and respectfully moves that they be stricken from the PSR.

For the same reasons stated above, the Defendant objects to all of the dates of birth listed on page 4 and attributed to him by persons unknown. These dates of birth were not presented or proven at trial as pertaining to the Defendant nor have reliable records or documents been provided to support attributing these dates of birth to him. Accordingly, they are unsubstantiated, he objects, and he respectfully moves that they be stricken from the PSR.

**III.    Defendant Objects to all alleged factual statements in Paragraphs 6-17.**

Paragraphs 6-17 of the PSR are in a section of the report entitled "The Offense". They reflect the government's version of facts in light of their evolving theories of conduct and liability throughout the history of the case. Those are theories that the Defendant denied and continues to deny.

The Defendant did not agree to an interview with the Probation Officer. However, it is a matter of record that the Defendant presented evidence at trial which included but was not limited to the testimony of expert witnesses, lay witnesses, the introduction of physical and other evidence, and evidence acquired through cross-examination. In presenting his case, facts were established which differ or are in addition to the facts reflected in paragraphs 6-17 of the PSR. Those facts are what they are and the Defendant does not stipulate to any version of the facts. He will rely on the entire case record and the Court's file when pursuing his appeal.

**IV.    The Defendant Objects to Paragraph 23 which applied U.S.S.G. §2M6.1(a)(1) and the resulting calculations therefrom.**

(1).    The application of U.S.S.G. §2M6.1 is inapplicable to the crimes of conviction and violates Apprendi.

(A)    The Defendant objects to the application of U.S.S.G. §2M6.1(a)(1) at paragraph 23 of the PSR because it is inapplicable to the crimes of conviction. The Defendant was convicted on Counts 1-4 of the Second Superseding Indictment. (Jury Verdict, Ct. Dkt. # 923). Count 1 alleged in part that the Conspiracy was to use a weapon of mass destruction "…that is, a destructive device, *against nationals* of the United States, while such nationals were outside the United States…". Count 3 alleged the use of a weapon of mass destruction "…as for forth in Count One…". Count 4 alleged a conspiracy to possess a destructive device and referred back the use of a weapon of mass destruction "…as set forth in Count One…". Thus, Counts 1, 3 and 4 are inter-dependent because all 3 Counts of conviction allege criminal conduct directed towards *a United States national*.

U.S.S.G. §2M61.(a)(1) applies in part when an offense was committed against the United States. A clear reading of that Guideline indicates that the intended victim has to be the United States as a country. Nothing in the reading of the Guideline nor written in the Commentary established that this Guideline applies to a national of the United States. The Counts of conviction as set forth in the Indictment and presented to the jury at trial were clearly alleging a natural person as an alleged target and not the United States as a country. They are not the same thing. Accordingly, this Guideline should not apply.

In addition, for this Court to allow the application of this Guideline and the increased penalties that result from it requires that this Court ignore the plain language of this Guideline and make an additional finding of the fact on an element

that was not presented to the jury at trial and is not part of their verdict. This would be contrary to the United States Supreme Court holdings in *Apprendi* and *Jones* and their progeny which clearly held that other than the fact of a prior conviction, "…any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. at 490.  *Apprendi v. New Jersey*, 530 U.S. 466 (2000): *Jones v. United States*, 135 S.Ct. 8 (2014).

(B)    In addition to the reasons stated above, Mr. Alahmedalabdaloklah further objects to paragraph 23 in the PSR and the resulting calculations because the penalties are disproportionate to the crimes of conviction, and no aggravating facts were proven at trial. To provide clarity regarding this objection, several points must be stated.

First, Count 1 of the Second Superseding Indictment alleged two (2) overt acts regarding incidents dated April 6, 2007 and May 14, 2007. (Ct. Dkt. # 231, page 4).  The Defendant repeatedly objected to including these alleged acts in the case and moved to strike them from the Second Superseding Indictment. In response, the government repeatedly opposed the motions to strike, insisting on presenting alleged evidence related to those incidents and representing to the Court that they were a central issue in the prosecution of the Defendant. However, as the trial date approached, the government - on its own - elected to not present any evidence related to both of those alleged overt acts. Thus, any purported evidence pertaining to those overt acts was removed from the case entirely by the government and such alleged evidence was not presented to the jury for their determination.

Second, the jury found the Defendant "not guilty" of Count 5 (Conspiracy to Commit Extraterritorial Murder of a United States National) and "not guilty" of Count 6 (Providing Material Support to Terrorists).

Third, at trial, the government did not prove that any specific item such as an electronic component allegedly associated with an IED was linked to Mr. Alahmedalabdaloklah (recognized in the PSR on page 15 in the section entitled "Justification", ¶2, lines 5-6, in part). Thus, the government did not prove that any electronic components or other items allegedly linked to the Defendant were ever actually employed against any United States national nor against any property of the United States. That fact clearly supports the not guilty verdicts rendered by the jury.

Fourth, the Probation Officer who drafted the PSR grouped Counts 1, 2 and 4 pursuant to U.S.S.G. §3D1.2 (b). (PSR, at §22). When grouping occurs, the Court is then advised to consider and apply the offense level "…for the most serious of the counts comprising the Group, ie. the highest offense level of the counts in the Group." U.S.S.G. §3D1.3(a). In light of that instruction, the Counts of conviction which carry the most severe potential sentences are Counts 1 and 4.

Count 1 alleged Conspiracy to Use a Weapon of Mass Destruction and it carries a potential prison term of "…any term of years or for life, *and if death results*, shall be punished by death or imprisoned for any term of years or for life." (See: 18 USC §2332a(a)). A plain reading of the statute makes it clear that the Court has the authority to impose any term of years it determines to be appropriate punishment for the crimes of conviction and if death resulted from the crimes, the Court may impose a life term. Death was not proven at trial and nothing in the plain wording of the statute itself mandates or requires the *automatic* imposition of a life sentence nor does it relieve the Court from having to consider and apply facts to all

of the sentencing factors set forth at 18 U.S.C. §3553(a) for imposing a sentence that is sufficient but not greater than necessary.

Count 4 alleged Conspiracy to Possess a Destructive Device in Furtherance of a Crime of Violence. Because this Count alleged possession of a "destructive device", the plain reading of the statute makes it clear that the Court has the authority to impose "...any term of years or life." (See: 18 USC §924(o)). As with Count 1, a plain reading of that statute indicates that a prison term of life is not automatically imposed and nothing in the language of the statute indicates that prison term of life is mandated. Instead, this Court has the authority to impose *any graduated term* of years deemed appropriate (up to life) after considering all of the sentencing factors set for at 18 U.S.C. §3553(a) for imposing a sentence that is sufficient but not greater than necessary.

As previously stated, the United States Supreme Court held that other than the fact of a prior conviction, "…any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. at 490 (2000). Because the government voluntarily withdrew the overt acts listed in Count 1 just prior to the start of the trial, no evidence related to either of the overt acts (ie. the aggravators) was presented to or determined by the jury.

The mere fact that the language in statutes for Counts 1 and 4 allows a maximum term up to life in prison is *not determinative* and does not allow a Court to impose an aggravated prison term such as life in prison based on those factors absent a jury determination. "Our precedents make clear, however, that the statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant…In other words, the relevant "statutory maximum" is not the

maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Blakely v. Washington*, 542 U.S. 296, at 303-04 (2004).

Blakely, supra, is *illustrative* on this point. In Blakely, the Petitioner pleaded guilty to kidnaping his estranged wife and that conviction subjected him to a 53 month prison term. The Judge, however, imposed a 90 month prison term because he made a finding that the crime was committed with deliberate cruelty, a statutorily enumerated ground for departing from the standard range.

And in Blakely, supra., the State argued that there was no Apprendi violation because the relevant "statutory maximum" for that offense was not 53 months but the 10 year maximum for Class B Felonies. However, the Supreme Court explained that the judge could not have imposed the exceptional 90 month sentence solely on the basis of the facts admitted to in the guilty plea. Instead, that court would have to take into account other factors than those which were used in computing the standard range sentence for the offense. The Supreme Court held that the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without having to make any additional findings. (See: *Blakely v. Washington,* 542 U.S. at 304).

Applying that analysis to our case, the clear language of the criminal statutes of conviction authorized the Court to impose "any term of years" up to life, with specific reference to a life term "…if death results…". This effectively means that it was incumbent upon the government to prove to those aggravators to the jury which could later justify the Court imposing the maximum prison term of life. Having abandoned presenting evidence of those alleged overt acts and failing to prove those aggravators to the jury, the aggravating facts (ie. overt acts) remain unproven. Therefore, this Court would now have to make additional factual

findings about the case outside of the evidence produced at trial in order to impose the enhanced sentences available for convictions in Counts 1 and 4.

However, after Apprendi, supra, a sentencing Court is not authorized to impose the maximum prison term of life by reviewing and considering additional factors on its own that were not presented to the jury and proven at the trial. Having abandoned presenting evidence of those alleged overt acts and failing to prove those aggravators to a jury, the government should not now quietly rely upon this Court to independently determine what if any aggravating facts exist to impose the aggravated sentences of life on those two Counts.

Additional guidance is found in the Jones case. In *Jones v. United States*, the Defendants were convicted of distributing a small amount of crack cocaine but were acquitted of "conspiring" to distribute drugs. The sentencing judge nevertheless determined that the defendant's had engaged in a conspiracy and based on that finding, imposed an enhanced sentence than what the Sentencing Guidelines recommended. The Supreme Court, citing *Apprendi*, reiterated that any fact that increases the penalty to which a defendant is exposed constitutes an element of a crime which "…must be found by a jury, not a judge". *Jones v. United States*, 135 U.S. at 8.

In our case, a maximum prison term of life for either Counts 1 or 4 or both would be an excessive sentence, gratuitously punitive, and in violation of the clear mandates of *Apprendi*, *Jones*, and its progeny.

For these reasons, the Defendant objects to the application of U.S.S.G. §2M6.1(a)(1) in calculating his advisory offense level and to all resulting calculations resulting therefrom.

***In the alternative only***, for argument in support of this objection, I respectfully urge that under my reading of this Guideline, the default base offense

level is 28 as set forth at U.S.S.G. §2M6.1(a)(2). This particular subsection was written in such a way as to apply when the specific factors and requirements for applying any of the other subsections in U.S.S.G. §2M6.1(a) cannot be proven.

Reviewing those subsections, first, for all of the reasons just stated in Section IV of these Objections directly above, subsection U.S.S.G. §2M6.1(a)(1) which applies a base offense level of 42 should be stricken entirely from the PSR.

Next, because the Defendant was not "…convicted under 18 U.S.C. § 175(b)" which are crimes related to possession of biological weapons, U.S.S.G. §2M6.1(a)(3) does not apply.

And finally, because biological weapons were not involved in our case nor do the crimes of conviction involve alleged threats by the Defendant, U.S.S.G. §2M6.1(a)(4) also does not apply.

Therefore, the Sentencing Guidelines leave U.S.S.G. §2M6.1(a)(2) as the default subsection for convictions of counts that have alleged terrorism. That subsection has a base offense level of 28 which, when considered with the Defendant's actual Criminal Offense History of zero, renders him subject to an advisory sentencing range of 78-97 months.

For all of these reasons, and in the alternative only without waiving any issues or objections, we respectfully urge that the court revise the base offense level down to level 28.

(2).  Violation of the 8th Amendment to the U.S. Constitution.

The Defendant also objects to the application of U.S.S.G. §2M6.1(a)(1) at PSR ¶23 on the grounds that the automatic application of base offense level 42 violates the 8th Amendment because the resulting offense level and advisory sentence is disproportional to the crimes of conviction, it is excessive, and it results in an advisory prison term that is cruel and unusual given the facts proven at trial.

The 8th Amendment prohibits the imposition of inherently barbaric punishments under all circumstances. *Hope v. Pelzer*, 536 U.S. 730, at (2002). "Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that *punishment for crime should be graduated and proportioned to the offense*." *Graham v. Florida*, 130 S.Ct. 2011, at 2021 (2010) (emphasis added). The 8th Amendment's prohibition of cruel and unusual punishment guarantees individuals the right to **not be subjected to excessive sanctions**. *Miller v. Alabama*, 132 S.Ct. 2455, at 2463 (2012).

The <u>automatic</u> application of base offense level 42 pursuant to U.S.S.G. §2M6.1(a)(1) places the Defendant's offense level at the 2nd highest offense level in the Federal Sentencing Guidelines. This is extreme and severely punitive. The two statutes of conviction in our case (Counts 1 and 4) have inherent degrees of severity written directly into the statutes themselves which is why a prison sentence involving "any term" of years up to life is authorized. However, to automatically place the Defendant at the <u>top</u> of the penalty scale is to completely disregard clear Congressional intent that this graduating penalty process be considered and applied by the Courts.

The Sentencing Guidelines are written throughout its' various sections to reserve and apply the most severe penal sentences for the most serious crimes, such as murder. (<u>See</u>: U.S.S.G. §2A1.1). While not attempting to minimize the seriousness of the offenses that resulted in conviction in our case, the fact remains that the Defendant was not convicted of any homicide type of offense to warrant a parallel offense level. "Serious non-homicide crimes may be devastating in their harm…but in terms of moral depravity and of the injury to the person and to the public,…they cannot be compared to murder in their severity and irrevocability." *Graham v. Florida*, 130 S.Ct. 2011, at 2027 (2010). Thus, the varying degrees of

severity written into the statutes of conviction in our case must be taken into account and considered by this Court.

Thus, in our case, automatically imposing the maximum sentence that is reserved for aggravated conduct that was not proven to a jury violates the 8th Amendment for being excessive, cruel and unusual, and disproportional to the offenses of conviction. The graduated sentencing scheme inherent in the plain language of the statutes of conviction should not be ignored. This requires this Court to examine what was proven at trial and apply the appropriate degree of punishment for those convictions without assuming that aggravators exist. That is not being done under the current draft of the PSR.

For all of these reasons, the Defendant objects to ¶23 and the application of U.S.S.G. §2M6.1(a)(1) to determine the base offense level as well as all calculations resulting therefrom and we respectfully urge that it be stricken from the PSR.

## V.    Defendant Objects to Paragraphs 25 and 37 which applied U.S.S.G. §3A1.4.

The Defendant objects on several grounds to paragraphs 25 and 37 regarding the Probation Officer's application of U.S.S.G. §3A1.4 which results in an automatic 12 level enhancement of the base offense level as well as automatically placing the Defendant in Criminal History Category VI.

(1).    Double Jeopardy Clause of the 5th Amendment.

The Defendant respectfully urges that applying this Guideline to our case violates the Double Jeopardy clause of the 5th Amendment of the United States Constitution. This objection applies to all current calculations in the PSR and all recommendations resulting from the application of this Guideline.

First, U.S.S.G. §3A1.4 is simply a sentencing guideline and as with all guidelines, it is not mandatory; it is advisory. *United States v. Booker*, 543, U.S. 220, at 245 (2005).

Terrorism-related crimes are found in Chapter 113B of the Federal Criminal Code which is entitled "Terrorism". Section 23 of the draft of the PSR states that the applicable guideline for a violation of 18 U.S.C. §2332a is U.S.S.G. §2M6.1. Thus, the application of 2M6.1(a)(1) and the resulting calculations reflected throughout the PSR <u>already</u> fully take into account the fact that the Defendant was convicted of a terrorism-related crime.

The key issue for purposes of this objection is whether the Defendant is being exposed to punishment twice for the same conduct. Because the draft of the PSR clearly utilizes USSG §2M6.1 in making its calculations, this clearly establishes that a terrorism Sentencing Guideline is already being applied to the crimes of conviction. The application of U.S.S.G. §3A1.4 is nothing less than punishing the Defendant twice for having been convicted of a crime alleging terrorism without anything more than again looking at the title of the offense in the Count of conviction. No new or additional elements or aggravating facts were proven to the jury or special findings made to justify another or additional punishment. This is like punishing a person for driving while intoxicated and then punishing him again for driving while having consumed alcohol. The application of U.S.S.G. §3A1.4 violates the Double Jeopardy Clause of 5th Amendment of the U.S. Constitution.

For these reasons, the Defendant objects and we move that the 12 level offense enhancement be stricken from the PSR and not applied to any of the calculations in this case.

(2).    <u>U.S.S.G. §3A1.4 is overly broad.</u>

The Defendant further objects to the application of U.S.S.G. §3A1.4 and the resulting automatic 12 level enhancement because it is ***overly broad***. It appears that the 12 level enhancement under U.S.S.G. §3A1.4 can apply to literally every crime alleged that might come under the wide umbrella of the word "terrorism" without regard to the particular facts in the individual case and without regard to Congressional intent set forth in the statutes which authorize graduated sentencing.

As illustration, consider that U.S.S.G. §2X1.1 is entitled "Other Offense". It specifically includes crimes such as conspiracies, attempts and solicitations". This particular Guideline allows for *3 level reductions* in the offense levels for those crimes depending upon the existence of "specific offense characteristics".

However, by imposing an automatic 12 level offense increase pursuant to U.S.S.G. §3A1.4 because the label of "terrorism" may apply to a charged conspiracy, attempt or solicitation, the goals and basis' for the Sentencing Commission creating and allowing the 2X1.1 offense level decreases are effectively rendered moot. Therefore, U.S.S.G. §3A1.4 is overly broad and should not be applied.

(3).    <u>U.S.S.G. §3A1.4 creates a fictional and useless criminal history.</u>

The Defendant's criminal history is zero as is correctly stated in sections 35 and 36 of the PSR. No evidence was presented at trial to prove that the Defendant has ever been convicted of any crimes. However, the direct and immediate result of applying U.S.S.G. §3A1.4 is that the Defendant is automatically placed in Criminal History Category VI, the highest and most severe criminal history category in the Sentencing Guidelines.

Placing the Defendant in Criminal History Category VI is not based on any data, facts or evidence. It is not supported by court records or other reliable records. This automatic increase in the criminal history places a person like Mr.

Alahmedalabdaloklah in the same criminal history category as a person who has lived his life in disregard of the law and who has already sustained 13 or more criminal history points due to his or her prior criminal conduct.  This effectively and immediately subjects him to the most severe level of punishment available for the crimes of conviction even though it is based solely on an artificial inflating of a non-existent criminal record.

This gross distortion of the facts undermines the function and purpose for determining a person's true Criminal History Category as well as impeding the role of the Court at a sentencing hearing. The Sentencing Commission has clearly stated that a defendant's record of past criminal conduct is directly relevant to the purposes of sentencing and it is consistent with the Court's duty to consider the sentencing factors set forth at 18 U.S.C. §3553(a).

"A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a   clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation."
U.S.S.G. §4A1.1, Part A, Criminal History, Intro. Commentary.

Thus, the Sentencing Commission views criminal history as a useful tool that serves as an indicator of the likelihood of recidivism.

Consideration of recidivism is also an important factor the Court must consider under 18 U.S.C. §3553(a)(1) regarding the history and characteristics of the defendant awaiting sentencing. The Court must impose a sentence which promotes respect for the law. 18 U.S.C. §3553(a)(2)(A). However, these purposes and goals cannot be achieved and are, in fact, undermined, when criminal histories

are automatically, blatantly and grossly inflated which occurs when U.S.S.G. §3A1.4 is applied. The public can have no respect for a legal system where tougher sentences are imposed upon people who are treated as repeat criminal offenders when in truth, the criminal histories that form the basis for the tougher sentences are nothing more than a fiction. That is the result of applying U.S.S.G. §3A1.4 in our case. This type of enhancement is simply unwarranted and unjust.

By <u>analogy</u>, one of the most punitive sections of the Sentencing Guidelines pertains to people who are proven to be career offenders. U.S.S.G. §4B1.1 makes clear that to impose the severe prison terms applicable for persons who falls into the career offender category, specific prior convictions and other factors must have been proven. That showing requires real evidence of recidivism, including

- that the defendant was at least 18 years of age at the time that the instant offense was committed;

-that the instant offense is a felony which is either a crime of violence or a controlled substance offense; and

-that the defendant has at least 2 prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. §4B1.1(a).

In this context, those prior convictions must be actual convictions proven by reliable evidence before they can be accepted by the Court to serve as the basis for imposing a sentence under the Career Offender Guideline.

And it is also significant to note that as a matter of right and of practice, those prior convictions are themselves subject to challenges (ie. categorical challenges) in order to determine whether they accurately qualify as the kind of prior crimes that can subject a defendant to the penalties under the Career Offender guideline.

16

Clearly, prior convictions in the context of the Career Offender Guidelines cannot be inflated or fictional.

The application of U.S.S.G. §3A1.4 automatically placed the Defendant in Criminal History Category VI regardless of the absence of any real criminal history. This fiction is harmful and illogical and the consequences are severe. The Defendant objects to being punished because of the Court's consideration of a fictional non-existent criminal history and he moves to strike the application of U.S.S.G. §3A1.4 and all resulting calculations from the PSR.

(4).   <u>U.S.S.G. §3A1.4 is not based on reliable data or national experience.</u>

The U.S. Supreme Court recognizes the important role served by the U.S. Sentencing Commission in promulgating the Guidelines. "Carrying out its charge, the Commission fills an important institutional role: it has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough v. United States*, 552 U.S. 85, at 107 (2007).

"The Sentencing Guidelines have legitimacy only if they are based on valid statistics and principles. The Supreme Court and the Sentencing Commission have opined that the deference to be given to the Sentencing Guidelines derives principally from the fact that the Guidelines were developed based on the experience of thousands of cases over a period of years."  James P. McLoughlin, Deconstructing United States Sentencing Guidelines Section 3A1.4: Sentencing Failure in Cases of Financial Support for Foreign Terrorist Organizations, Law & Inequality: A Journal of Theory and Practice, Vol 21, Issue 1 (2010) p. 112.

My legal research and review of the available legal materials regarding the writing of U.S.S.G. §3A1.4 does not establish that empirical data or facts regarding national experience was obtained or considered by the Sentencing Commission to

support either the12 level base offense enhancement or the criminal history Category VI enhancement that automatically applies to <u>all</u> cases related in some way to terrorism under this Guideline. Without such data being considered, the Commission did not fulfill its obligation and this particular Sentencing Guideline is not entitled to the legitimacy that the Courts afford other Guidelines.

It is also worth noting that when U.S.S.G. §3A1.4 was created by the Sentencing Commission, "…the number of the anti-terrorism cases was tiny, so there could be no analysis of a statistically reliable group of defendants upon which to build a reliable Guideline." Id, at 112. Thus, there is no empirical data related to national experience to support the validity of U.S.S.G. §3A1.4, it is not based on valid statistics and principals. For these reasons, lacking legitimacy, this Court should sustain the Defendant's objection and strike the application of this Guideline and all calculations resulting from it.

(5).   <u>U.S.S.G. §3A1.4 effectively creates a mandatory minimum.</u>

18 U.S.C. §3553(a) requires a Court to impose a sentence that is "…sufficient but not greater than necessary…" to comply with all of the stated purposes of sentencing.  As previously state, U.S.S.G.   §3A1.4   automatically imposes a 12 level base offense enhancement <u>and</u> the automatic placement of a defendant in Criminal History Category VI in every case that is deemed to be "terrorism-related". Thus, this Guideline does not allow the courts to distinguish between cases deserving of greater or lesser punishment and it does not further the Congressional intent reflected in 18 U.S.C. §3553(a). Therefore, this Guideline effectively *creates a mandatory minimum sentence* which violates the clear holding of the U.S. Supreme Court in Booker where the Court held that the Sentencing Guidelines were not mandatory but advisory. *United States v. Booker*, 543 U.S. 296 (2004).

U.S.S.G. §3A1.4 further violates the Congressional scheme when applying it only serves to ignore and disregard the plain language of a statute. An advisory Guideline should not usurp the authority of Congress or impose upon the authority and responsibilities of the Courts when considering the factors it is required to take into account as set forth in 18 U.S.C. §3553(a).

Thus, for all of these additional reasons, this Court should sustain the Defendant's objections and strike the application of U.S.S.G. §3A1.4 and all resulting calculations.

(6).   <u>Defendant objects to any use of acquitted conduct.</u>

The Defendant also objects to the application of U.S.S.G. §3A1.4 and the so-called "terrorism enhancement" regarding the automatic base offense level increase and automatic criminal history category increase on that grounds that the intended enhancements are based on conduct alleged in Counts 5 and 6 which resulted in acquittals by jury verdict. The acquittals preclude any use of the alleged conduct reflected in both Counts.

The Defendant was convicted on Counts 1-4 of the Second Superseding Indictment. (Jury Verdict, Ct. Dkt. # 923). Count 1 alleged in part that the Conspiracy was to use a weapon of mass destruction "…that is, a destructive device, against nationals of the United States, while such nationals were outside the United States…". Count 3 alleged the use of a weapon of mass destruction "…as for forth in Count One…". Count 4 alleged a conspiracy to possess a destructive device and referred back the use of a weapon of mass destruction "…as set forth in Count One…". Thus, Counts 1, 3 and 4 are inter-dependent because all 3 Counts allege criminal conduct directed towards a United States national.

However, Mr. Alahmedalabdaloklah was found not guilty by a jury on Counts 5 and 6 of the Second Superseding Indictment. Count 5 alleged Conspiracy

to Commit Extraterritorial Murder of a United States National. Count 6 alleged Providing Material Support to Terrorists and it refers back to Count 5 and the alleged "conspiracy to kill a United States national".  Thus, both Counts 5 and 6 also alleged harm to a United States national. Having been acquitted of these allegations, all alleged conduct related to Counts 5 and 6 should not be used to enhance the Defendant's sentence in any manner on the remaining Counts.

The U.S. Supreme Court previously held that a sentencing court may consider conduct of which the defendant has been acquitted so long as that conduct has been proven by a preponderance of the evidence.  *United States v. Watts*, 519 U.S. 148, at 157 (1997). However, it is respectfully urged that the holding in Watts, supra, has been effectively overruled because the low standard of preponderance of the evidence to be used by a Judge - as a substitute for a jury finding - for purposes of imposing an enhanced sentence <u>predates</u> the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The imposition of any enhancements based on allegations and considerations set forth in Counts 5 and 6 clearly increases the penalty for the crimes of conviction and it would effectively be using aggravating facts that were not found by the jury and which were deemed not proven by the government. And because the alleged aggravating facts in Count 1 were voluntarily withdrawn from this case by the government just prior to trial, the jury did not get to consider <u>any</u> aggravating facts to justify any enhancement. Therefore, imposing any enhancements pursuant to U.S.S.G. §3A1.4 would violate the United States Supreme Court holdings in both *Apprendi* and *Jones*, supra.

For these reasons, the Defendant respectfully urges that evidence of acquitted conduct in his case should not be considered in any manner when determining the base offense level. The Defendant also urges that evidence of

acquitted conduct in this case should not serve to support any enhancement. The government should not be allowed to achieve through the Probation Officer what it did not succeed in doing with the jury at trial.

**VI.    The Defendant Objects to Section 26 of the PSR denying him a reduction for role in the offense.**

Mr. Alahmedalabdaloklah proceeded to trial alone. However, it is indisputable that since the very start of this case, and from the plain language of the allegations against him in the Second Superseding Indictment (Ct. Dkt. # 231) that other individuals were alleged to have participated in the alleged criminal conduct. And as the discovery process was underway and progressed, it soon became evident that the government knew who those unnamed individuals (ie. alleged co-conspirators) were. As the defense pressed the government for more disclosure, it also became clear that a decision had been made by the Department of Justice that these other individuals were not going to be charged with any of the crimes alleged against the Defendant. Thus, while the Defendant proceeded to trial alone, the existence of these other individuals nevertheless remained a central part of the government's case at trial.

Evidence regarding two individuals related to this case was presented at trial. Jamal Al Dhari is an unnamed and unindicted co-conspirator. Evidence showed that he has a direct ancestral lineage to the founding father of the original 1920 Revolutionary Brigades. Through his own words, Mr. Al Dhari is proud of this historical fact. He further purports to be a financier who using his financial resources to assist persons in need in Iraq. He further testified about his alleged involvement in the re-building efforts in Iraq through organizations he personally created, seeking to establish peaceful and integrated relationships among the various factions in Iraq.

However, it was not until well after the discovery process had been completed and the trial underway that evidence was disclosed by the government indicating that Mr. Al Dhari's personal history and involvement with activities in Iraq was not that lofty. His personal history included his direct involvement in the military aspect of the 1920 Revolutionary Brigades. It was further disclosed that he had participated in some other criminal activities against civilians in Iraq. None of this was previously disclosed by the prosecution and it was contrary to Mr. Al Dhari's responses as to the nature of his involvement with the 1920 Revolutionary Brigades.

Yet despite this new information, Mr. Al Dhari has not been charged and is not being prosecuted. In fact, it appears that he was and continues to be rewarded since the government allows him to visit the United States which he has done on at least two occasions. This Court may nevertheless recall his refusal to come to the United States to appear and testify at the trial when asked by the government at the direction of this Court.

The fact that the Defendant was brought to trial alone is the direct consequence of the government deciding who would and who would <u>not</u> be prosecuted. This was solely under their control and the Defendant had nothing to do with it. However, the fact that he was tried alone does not deprive him of the opportunity to receive a reduction for role in the offense.

Our District has already considered whether the conduct of a defendant is to be assessed against that of his co-defendants or against the hypothetical average participate. The 9th Circuit Court of Appeals has held that "…the established rule in this Circuit is that the relevant comparison is between the defendant's conduct and that of the other participants in the same offense."  *United States v Rojas-Millan*, 234 F.3d 464, at 473 (9th Cir. 2000). That includes Mr. Al Dhari.

22

For an analogy in comparing the alleged role of the Defendant as compared to someone like Mr. Al Dhari, it is a matter of experience that in major drug cases, the person or persons with the money and the organizational skills can remain far away from the actual drug dealing that could subject someone possessing drugs to decades in prison. However, their resources put the organization in play and enables deals to go forward, resulting in handsome profits. But when a person who is the financial backbone of the organization is finally prosecuted, the consequences are that he is treated as a leader, the role they played is considered aggravated (U.S.S.G. §3B1.1), and there are all forms of enhancements under U.S.S.G. §2D1.1 and its' cross-references. In addition, they can be held accountable not only for the drugs in their immediate possession but for the full scope of their venture and the conduct of all who worked for them.

This is how Mr. Al Dhari should be viewed. By his own definition, he is a "sheik" with unknown but ample financial resources. He can and does make things happen and he clearly and admittedly has people in his employ. And given his creation of at least two political organizations, he obviously has organizational skills. If Mr. Al Dhari were being prosecuted in this case, he would be facing the specter of being labeled a kingpin. Compared to him, Mr. Alahmedalabdaloklah is a small time shop owner who was himself a poor Syrian refugee living in Iraq. Given the clear differences between Mr. Al Dhari and the allegations against the Defendant, it is respectfully urged that the Defendant is entitled to a reduction for role in the offense pursuant to U.S.S.G. §3B1.2.

In addition to the comparison above-stated, there are a number of factors listed and explained in the Commentary to this Guideline at Section 3(C) of the Application Notes for this Court to consider when determining whether to apply a

reduction under U.S.S.G. §3B1.2. After consideration of those factors, we believe that a reduction of 4 levels is appropriate.

The listed factors in the Guideline include (i) the degree to which the defendant understood the scope and structure of the criminal activity, (ii) the degree to which the defendant participated in planning or organizing the criminal activity, (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority, (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed a the responsibility and discretion the defendant had in performing those acts, and (v) the degree to which the defendant stood to benefit from the criminal activity.

Clearly the language in this Guideline shows an intent on the part of the Sentencing Commission to write the Guideline in a way that encourages it's application and the awarding of offense level reductions when supported by the facts in the case. That said, an objective look of the facts at our trial show that although the Defendant was alleged to have worked with an Iraqi nationalist group, he is not Iraqi national but is a Syrian refugee who was living in Iraq. No evidence was presented to prove he was knowledgeable as to the scope and structure of any political or nationalist organization and no evidence was presented at trial that he was a member of or belonged to any organization or nationalist group in Iraq or even in Syria. Facts were not presented to prove that he made any decisions for any organization, or that he was involved in decision-making process for any group regarding any actions or other conduct (political or otherwise) they might have determined to undertake and engaged in. At best, the evidence showed that the Defendant was a businessman who sold electronics and other items as part of his regular course of business.

In addition, no facts were proven at trial to establish that he engaged in any actions in the battlefield or elsewhere and the case itself was limited to allegations restricted at best to what could be done in a shop. And finally, the government did not prove that he had a proprietary interest in the consequences of any actions or activities that might have been engaged in by any persons or political group with regards to any of the items he may have sold.

Thus, while the Defendant does not waive any objections, an objective look restricted to facts presented to the jury shows that the factors listed in U.S.S.G. §3B1.2 are met to allow this Court to reduce his offense level by 4 levels.

Thus, we object to ¶ 26 in that it fails to award the Defendant any reduction for role in the offense and urge that a reduction of 4 levels be granted.

**VII.  Defendant Objects to the section labeled Justification on page 15.**

The Defendant objects to the justification section written by the Probation Officer for the recommendations contained in the Defendant's PSR. As previously stated, the facts referenced in this report reflect the government's version of facts in light of their evolving theories of the case, and those are theories which the Defendant continues to deny. The Defendant does not stipulate to any version of the facts set forth by the government, he reaffirms all of his objections, and he will rely on the entire record and the Court's file when pursuing his appeal.

**Conclusion**

For all the reasons described above, Mr. Alahmedalabdaloklah objects to the PSR and the resulting calculations and urges that the PSR be revised with his objections addressed.

Respectfully submitted:     August 14, 2018.

JON M. SANDS
Federal Public Defender

*s/Gregory A. Bartolomei*
GREGORY A. BARTOLOMEI
Asst. Federal Public Defender

# CERTIFICATE OF SERVICE

I certify that on August 14, 2018, I caused the foregoing document to be filed with the Clerk of Court for the United States District Court for the District of Arizona using the CM/ECF system. I further certify that all case participants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/Gregory A. Bartolomei*
GREGORY A. BARTOLOMEI
Assistant Federal Public Defender