JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

GREGORY A. BARTOLOMEI, Bar No. 011803
JAMI JOHNSON, NY Bar No. 4823373
MOLLY A. KARLIN, Bar No. 032902
Assistant Federal Public Defenders
gregory_bartolomei@fd.org
jami_johnson@fd.org
molly_karlin@fd.org
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Ahmed Alahmedalabdaloklah,<br><br>Defendant. | No. CR-12-01263-PHX-ROS<br><br>**DEFENDANT'S *REPLY* TO THE GOVERNMENT'S RESPONSE RE: DEFENDANT'S OBJECTIONS TO THE DRAFT OF THE PRE-SENTENCE REPORT**<br><br>**(Oral Argument Requested)** |

    Defendant Ahmed Alahmedalabdaloklah, by and through undersigned counsel, respectfully submits his Reply to the government's Response to his Objections to the draft of the pre-sentence report (hereinafter PSR) that was prepared in this case.

    This Reply addresses several arguments made by the Government in their Response. Replying to those arguments in their Response does not constitute a waiver of any of the objections or arguments made in the Defendant's Objections to the Draft of the PSR. The Defendant reaffirms all prior objections that he made in his initial objections to the PSR and at all times throughout the entire life of this case as reflected in the Court's file and the case record.

## Legal Arguments

**I. The Government's Response to the Defendant's objections to the list of alleged aliases and dates of birth in the PSR is non-responsive.**

The government misreads the Defendant's objection to the list of alleged aliases and dates of birth because it focuses only on part of the Defendant's objection. Specifically, as for the list of aliases, the Defendant stated **not only** that the alleged aliases were not proven at trial but also that *reliable documentation was also not presented to prove that the aliases belong to the Defendant*. (Def. Obj., p. 3, lines 2-3). Similarly with regards to the list of dates of birth, evidence pertaining to the alleged dates of birth were not presented or proven at trial *"...nor have reliable records or documents been provided to support attributing these dates of birth to him"*. (Def. Obj., p. 3, lines 6-9). Instead, the government's response focuses only on the failure to present evidence on those issues at trial.

The government urges that for purposes of determining a sentence, a Court is entitled to rely on all kinds of information outside of and apart from the context of a trial. That's fine. However, that's where the government's response to the Defendant's objections end. Having focused solely on one part of the objections and not the complete basis for those objections, the Government failed to provide any facts to establish that the objected information in the PSR is based upon reliable evidence.

Clearly, a District Court Judge may consider all kinds of evidence for purposes of a sentencing hearing "…provided that the information has sufficient indicia of reliability to support its probable accuracy." *U.S.S.G. §6A1.3(a)*. This authority and legal standard was not disputed by the Defendant when he raised his objections. But the Government should not be allowed to rely on or use this Court's authority to consider a broad scope of materials as either a shield or an excuse for

its' failure or inability to provide any reliable evidence at any time to properly establish that these alleged names and dates of birth should be attributed to this Defendant.

The government's response fails to establish the reliability of the objected to information which is necessary in order for that data to remain in the PSR and for this Court to give it any consideration for any purpose. Thus, the Defendant's objections to those portions of the PSR should be sustained and the information stricken from the PSR.

**II. The Government misreads the Defendant's Objections to the application of U.S.S.G. §2M6.1(a)(1) and disregards the language and plain meaning of the Guideline.**

In Section IV, part (1)(A), of the Defendant's Objections to the PSR (Dkt. #983), the Defendant objected the application of U.S.S.G. §2M6.1(a)(1) in the PSR because the plain language of this Guideline indicates that it applies in part when an offense was committed against the United States - not a national of the United States - and that a clear reading of that Guideline indicates that the intended victim has to be the United States as a country. (Dkt. #983, p. 4.).

The Government urges that it is "*inherent*" that alleged acts against U.S. Nationals and property as alleged in the 2nd Superseding Indictment (Dkt. #231) includes conduct showing "…intent to injure the United States" and that an "…intent to injure those individuals is, *by extension*, an intent to injure the United States." (Govt. Resp., p. 5.) We disagree.

The Government's argument must fail because (1) it effectively asks this Court to go beyond the plain language and intention written into the Guideline and (2) it fails to duly recognize the guidance and instructions provided by the Sentencing Commission in that Guideline at Application Note 1, which states:

3

> "National of the United States has the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. §1101(a)(22))."

Title 8 clearly defines a national of the United States as follows:

> "The term "national of the United States" means
> **(A)** a citizen of the United States, **or**
> **(B)** a person who, though not a citizen of the United States, owes permanent allegiance to the United States."
> *8 U.S.C. §1101(a)(22)* (Emphasis added).

Thus, nothing in that definition of a "national of the United States" references or implies that it is to include anything other than a natural person.

U.S.S.G. §2M6.1(a)(1) states that the Guideline applies when there is an intent to "*injure the United States*". There is nothing in the language of U.S.S.G. §2M6.1 itself to support the Government's expanded definition that any alleged conduct towards a <u>national</u> of the United States *inherently* encompasses or *extends* to an alleged act against the United States itself as a country. Nor is there any further guidance in the Commentary to that Guideline to support the Government's expanded interpretation. Country and National are clearly distinguishable entities and had the Sentencing Commission intended that this Guideline include a national of the United States as the Government is now asking this Court to do, they would not have directed a Court to the specific definition for national of the United States found in Title 8 of the U.S. Code.

Accordingly, the Government's Response to this part of the Defendant's Objection fails. The Defendant's Objection to the application of *U.S.S.G. §2M6.1(a)(1)* must be sustained and the application of this Guideline should be stricken from the PSR along with all resulting calculations.

The Defendant further reaffirms his suggested alternative this Court consider the application of *U.S.S.G. §2M6.1(a)(2)* and the resulting sentencing range as the appropriate default subsection within that Guideline for all of the reasons stated in his original Objections.

**III. The Government downplays the significance of the factors that this Court must consider to support their request for the enhanced prison term of life.**

The crux of the Government's argument in requesting a life sentence in this case is that while they recognize the advisory nature of the Guidelines, the fact that convictions resulted on Counts 1 and 2 - standing alone with nothing more - justifies the imposition of a life sentence. We disagree.

First, as previously stated in Defendant's Objections, Counts 1, 2 and 4 were grouped together for sentencing purposes pursuant *U.S.S.G. §3D1.2(b)*. (PSR at §22). The Court must then consider applying the offense level for the most serious of the counts comprising that group which effectively means the most serious Count of conviction. *U.S.S.G. §3D1.3(a)*. Counts 1 and 4 each carries a potential sentence of any term of years or life.

However, Count 1 further states that if death resulted, then the death penalty can be imposed. This is *instructive* because the fact that a resulting death in the commission of an offense can result in the imposition of the gravest form of penalty (ie. death penalty) *clearly establishes that a scale of aggravating factors* must be taken into account and considered by the Court to justify the imposition of any term of years up to the imposition of the gravest penalty. This reflects the sentencing scheme created by Congress as it applies to the conduct addressed in the statutes and in the specific charges before this Court. *Respectfully*, this has not been refuted, addressed or recognized by the Government in its' response to these objections.

5

Second, as a general matter, given the dynamics of the Federal sentencing process, a sentencing Court must consider the Sentencing Guidelines and the factors listed at 18 U.S.C. §3553(a) in light of the facts proven at trial along with other reliable facts presented by the parties in order to determine the appropriate sentence to impose on a defendant after a conviction at trial. There is nothing in any of the statutes of conviction mandating an automatic sentence to any specific term of years, much less a life sentence. Nor is there anything in the language of the statutes of conviction that imply that upon conviction, the established process and considerations required for imposing a sentence in a Federal Court should be bypassed and that it is proper for a Court to simply look towards the maximum prison term available (ie. life).

With that backdrop, and as stated in the original Objections to the PSR, during all of the pre-trial motions and all of the litigation up to the eve of trial, the government relied on two alleged overt acts listed in Count 1 of the 2nd Superseding Indictment. The first alleged overt act stated that three (3) U.S. soldiers were killed and that an IED initiator used in that incident matched 3 circuits recovered from the Omar Street location. (Dkt. # 231, p. 4, lines 4-8). The second alleged overt act stated one (1) U.S. soldier was killed and four (4) wounded by the use of an electronic switch that was "very similar to three custom circuits recovered" from the Omar Street location. (Dkt. # 231, p. 4, lines 9-14). The Government filed various lists of witnesses (Dkt. # 378 and 378-1) which included soldiers they claimed were present at those locations who would testify about the circumstances surrounding those alleged acts.

The alleged overt acts were part of the original Complaint (Dkt. # 3, p. 16, §27), the original Indictment (Dkt. # 3, p.3), the Superseding Indictment (Dkt. # 13, p. 3-4) and the 2nd Superseding Indictment (Dkt. # 231, p. 4). Clearly,

repeatedly listing the alleged overt acts beginning with the Complaint on May 10, 2011, up to the 2nd Superseding Indictment filed May 30, 2017, indicates the significance of those alleged overt acts to the Government's case. More importantly, given that the alleged overt acts referenced deaths together with the Government's intention of presenting testimony from soldiers at the scene makes it clear that those alleged overt acts were intended to further the Government's goal of having them serve as aggravators in this case.

As a result of the government voluntarily withdrawing the overt acts from this case just prior to the start of the trial, no evidence related to either of the alleged overt acts was presented at trial or otherwise determined by the jury. Withdrawing them from the trial effectively denied the Defendant of the opportunity to challenge their validity and the surrounding circumstances. And even if the government urges that its' purpose was to present evidence of the overt acts for reasons other than aggravation, had they been successfully presented and addressed at trial, there is little doubt the Government would now be urging that they qualify as the kind of aggravating factors to be considered under the sentencing scheme for enhancing a prison term under these statutes. However, because no evidence of any kind related to those alleged overt acts was presented, there are no aggravating facts <u>related</u> to these Counts that can be considered for purposes of enhancing a prison term under the statutes of conviction.

Third, the mere fact that the language in the statutes for Counts 1 and 4 allows a maximum term up to life in prison is *neither instructive nor determinative* in any way nor does it support the Government's urging that a Court can jump to a life sentence as the penalty to be imposed. Given the absence of a jury determination on the aggravating factors, the Government on its own foreclosed

7

the possibility of seeking any enhancement as grave as life in prison when they chose to remove the alleged overt acts from the trial.

Accordingly, for all of these reasons, we respectfully urge that is it unreasonable and without justification for this Court to impose a prison term above the advisory prison term resulting from the application of 2M6.1(a)(2) as urged by the Defendant.

**IV.     The application of U.S.S.G. §3A1.4 and the resulting false criminal history violates the basic goals of Chapter 4 of the Sentencing Guidelines and this Court should not apply it to our case.**

The government urges that the application of U.S.S.G. §3A1.4 is rationally based on the general goals of deterrence of criminal conduct. (Response at p. 19). Respectfully, the government's argument is too narrow because it ignores the broader scope and goals of the Sentencing Commission. The second line of the Introductory Comments to Chapter 4 underscores the important role that is played by analyzing a defendant's criminal history and how criminal history is directly relevant to the significant sentencing factors set forth at 18 U.S.C. §3553(a)(2).

> "*A defendant's record of past criminal conduct is directly relevant to these purposes. A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment.* General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment *with each occurrence*. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation."
> U.S.S.G., Ch. 4, Introductory Commentary (emphasis added).

This not only explains the significant value of criminal history but it is consistent with the general "mission" of the Sentencing Commission which is to develop "…guidelines that will further the basic purposes of criminal punishment:

deterrence, incapacitation, just punishment, and rehabilitation." (*U.S.S.G., Ch. 1, Section 2: The Statutory Mission*). Thus, criminal history has been and remains a very important factor for the Sentencing Commission and for the development and implementation of the Guidelines.

The practical application of this is that a person with a prior criminal history evidencing a disregard for the law is, in the eyes of the Sentencing Commission, more deserving of greater punishment. That said, we urge that the converse is equally true, namely that a person who has no prior criminal history is not as deserving of greater punishment.

Applying these considerations to our case, it is an uncontroverted fact that Mr. Alahmedalabdaloklah's criminal history is zero (PSR, § 35 and 36) and he has sustained his only conviction as a result of this case. The guiding principles enunciated by the Sentencing Commission that repeat offenders have greater culpability and are deserving of greater punishment must apply with equal weight to Mr. Alahmedalabdaloklah, as well. No rational basis exists to justify stripping him of those considerations nor for looking at or treating his circumstances any differently given that this is his first and only conviction. And if equal protection and justice are to have any meaning, he must be treated equally like any other defendant appearing in a Court of law and afforded the very same considerations.

The application of U.S.S.G. §3A1.4 completely ignores and vitiates the value of the many years of valuable experience obtained and utilized by Congress and the Sentencing Commission in analyzing data and declaring that repeat offenders are deserving of greater punishment. Automatically adding 12 offense levels to the defendant's calculations and automatically placing him in Criminal History Category VI does not in any way further the goals or the analytical purposes of the

9

Sentencing Commission much less improve or retain the public's respect for the law.

Thus, U.S.S.G. §3A1.4 is inherently inconsistent with and violates these sentencing goals and it does not further the sentencing scheme that Congress and the Sentencing Commission have created whereby repeat offenders receive greater and more enhanced punishment "*with each occurrence*."

Accordingly, this Court should reject the government's urging to apply U.S.S.G. §3A1.4 and this Court should instead strike it and all resulting calculations from the PSR. This Court has the authority to not impose that enhancement and it should exercise that authority by declining to do so.

## Conclusion

For all the reasons described above and in his original Objections, Mr. Alahmedalabdaloklah objects to the PSR and the resulting calculations and urges that the PSR be revised with his objections fully addressed.

Respectfully submitted: September 13, 2018.

JON M. SANDS
Federal Public Defender

*s/Gregory A. Bartolomei*
GREGORY A. BARTOLOMEI
Asst. Federal Public Defender

# CERTIFICATE OF SERVICE

I certify that on September 13, 2018, I caused the foregoing document to be filed with the Clerk of Court for the United States District Court for the District of Arizona using the CM/ECF system. I further certify that all case participants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/Gregory A. Bartolomei*
GREGORY A. BARTOLOMEI
Assistant Federal Public Defender