**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-12-01263-001-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Ahmed Alahmedalabdaloklah, | |
| Defendant. | |

Defendant has filed four post-trial motions. The first motion seeks dismissal of the indictment or a new trial based on a variety of grounds, such as the jury instructions allegedly not including an essential element and Judge Wake allegedly disclosing Defendant's theory of defense. The second motion argues there is "newly discovered evidence" that merits a new trial. (Doc. 958). The third motion renews a previous motion requesting the Court "suppress all e-mail content and derivative evidence." (Doc. 985). And the fourth motion seeks a downward variance.

## BACKGROUND

The Second Superseding Indictment contained six counts concerning Defendant conspiring with others to use a weapon of mass destruction. On March 16, 2018, Defendant was convicted on the following four counts:

1. Conspiring to Use a Weapon of Mass Destruction, 18 U.S.C. § 2332a;

2. Conspiring to Maliciously Damage or Destroy United States Government Property by Means of an Explosive, 18 U.S.C. § 844(f)(1), (2) and (n);

3. Aiding and Abetting Other Persons to Possess a Destructive Device in Furtherance of a Crime of Violence, 18 U.S.C. § 924(c); and

4. Conspiring to Possess a Destructive Device in Furtherance of a Crime of Violence, 18 U.S.C. § 924(o).

Defendant was found not guilty of:

1. Conspiring to Commit Extraterritorial Murder of a National of the United States, 18 U.S.C. § 2332(b)(2); and

2. Providing Material Support to Terrorists, 18 U.S.C. 2339A.

(Doc. 923).

In the weeks and months following the verdict, Defendant filed a variety of motions. First, on April 13, 2018, Defendant filed a "Motion for Judgment of Acquittal, to Dismiss for Lack of Jurisdiction, or, alternatively, for a New Trial." (Doc. 975). Then, on April 19, 2018, Defendant filed a "Motion for New Trial Based on Newly Discovered Evidence." (Doc. 958). Before the Court could rule on those motions, Defendant filed two more motions: a "Renewed Motion to Suppress E-Mail Content and Derivative Evidence" and a "Motion for a Downward Variance Pursuant to the Factors Listed in 18 U.S.C. § 3553(a) and in the Interests of Justice." (Doc. 984, 985). The government opposed all four of these motions but Defendant did not file a reply in support of most of them. Defendant's sentencing is set for November 7, 2018.

## ANALYSIS

### I. Motion for Judgment of Acquittal, to Dismiss for Lack of Jurisdiction, or New Trial

Defendant's first motion presents a wide variety of arguments in support of a request for acquittal, a dismissal based on lack of jurisdiction, or a new trial.

#### A. Different Theory of the Case

Defendant argues he "was convicted on a theory the government never charged and did not prove." (Doc. 975 at 5). Defendant points out the indictment accused him of "manufacturing, designing, and supplying certain items used in specific IEDs that were

*actually employed* against U.S. troops and vehicles, including in two specific events in 2007." (Doc. 975 at 6). Despite the specific language in the indictment regarding actual use, the government failed to produce at trial any evidence that an "item with which [Defendant] allegedly came in contact was ever actually employed against any U.S. person or property." (Doc. 975 at 6). Defendant believes the difference between what was alleged in the indictment and what was proven at trial constituted a constructive amendment of the indictment or a fatal variance. And even if not cognizable under one of those doctrines, the government's actions allegedly deprived Defendant of his "Fifth and Sixth Amendment rights to notice and the effective assistance of counsel." (Doc. 975 at 11).

### i. Constructive Amendment

"A constructive amendment occurs when the defendant is charged with one crime but, in effect, is tried for another crime." *United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004). The "seminal case" addressing constructive amendment involved a defendant who "was indicted for extortion relating to interference with interstate shipments of sand." *United States v. Ward*, 747 F.3d 1184, 1190 (9th Cir. 2014) (citing *Stirone v. United States*, 361 U.S. 212 (1960)). At trial, the government introduced evidence the defendant had interfered with both steel-related and sand-related shipments. The jury was then instructed that it could convict based "on either the sand- or steel-related conduct." *Id.* The jury convicted but the Supreme Court reversed, concluding that allowing evidence of the uncharged steel-related shipments meant "the district court had constructively amended the indictment by expanding the conduct for which the defendant could be found guilty beyond its bounds." *Id.*

Building on the Supreme Court's guidance, the Ninth Circuit has formulated the constructive amendment test as requiring a fact-intensive inquiry into the indictment, "the jury instructions as a reflection of the indictment," and "the nature of the proof offered at trial." *Id.* at 1191. "[W]hen conduct necessary to satisfy an element of the offense is charged in the indictment and the government's proof at trial includes uncharged conduct

that would satisfy the same element," a court must assess other facts, such as the jury instructions, to ensure the defendant was convicted "solely on the conduct actually charged in the indictment." *Id.* The constructive amendment doctrine, however, does not apply merely because the indictment contains specific allegations that are not proven at trial.

The constructive amendment doctrine does not prohibit an indictment from containing "superfluously specific language describing alleged conduct irrelevant to the defendant's culpability under the applicable statute." *Ward*, 747 F.3d at 1191. This means the government is not required to "prove all facts charged in an indictment." *United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986). Instead, the government must prove only "the essential elements of the crime." *Id.* And "[i]nsofar as the language of an indictment goes beyond alleging elements of the crime, it is mere surplusage that need not be proved." *Id.* In other words, the constructive amendment doctrine "only applies to the broadening, rather than the narrowing, of indictments." *United States v. Wilbur*, 674 F.3d 1160, 1178 (9th Cir. 2012).

Defendant's constructive amendment argument is that the indictment contained allegations that Defendant was involved in the manufacture and design of parts that were "actually employed against U.S. troops and vehicles" but the government did not prove any actual use at trial. The problem with this argument is that the language in the indictment regarding Defendant's connection to parts actually used in bombings was unnecessary under the particular crimes charged. The government did not have to prove such a connection to secure convictions and, to the extent the indictment contained such specifics, it was mere surplusage. No constructive amendment occurred.

### ii. Variance

Defendant's next argument is that the failure to prove his connection with parts actually used constituted a variance. "A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Ward*, 747 F.3d 1184,

1189 (9th Cir. 2014). To be entitled to relief under this doctrine, a defendant must prove the divergence between the facts alleged in the indictment and those proven at trial resulted in prejudice. *Id.* at 1190.

Here, Defendant claims the differences between the indictment and proof at trial meant he did not have "the notice necessary to enable him to prepare his defense." Defendant does not explain how the government's decision not to prove a direct connection between him and parts actually used prevented him from preparing his defense. Proving a connection between Defendant and actual use was not an element of any of the offenses and Defendant's preparation for trial was not changed because of the connection alleged in the indictment. In the context of this case, the allegations in the indictment simply could not "have misled the defendant at the trial." *Berger v. United States*, 295 U.S. 78, 83 (1935). Therefore, even assuming there was a variance between indictment and proof, Defendant was not prejudiced.

### iii. Fifth and Sixth Amendment Rights

Defendant's final argument related to the specifics alleged in the indictment is that the government's "ever-shifting theory of guilt . . . made it impossible for defense counsel to prepare for trial effectively." (Doc. 975 at 12). Thus, Defendant claims that even if there was neither a constructive amendment nor variance, he still suffered a deprivation of his Fifth and Sixth Amendment rights. Defendant does not offer any authority recognizing this theory. The doctrines of constructive amendment and variance are sufficient to address the situation where the government's proof of trial is different from the allegations in the indictment. Under the facts of this case, Defendant and his counsel were able to prepare for trial regardless of the government narrowing what it would prove at trial.

### B. Jury Instructions

Defendant's next argument is that the jury instructions were incorrect regarding Count 1, Conspiracy to Use a Weapon of Mass Destruction, 18 U.S.C. § 2332(a). In particular, Defendant argues the jury was not instructed that, to be found guilty of this

count, he must have acted "without lawful authority." The best available authority establishes that acting "without lawful authority" is not an element of the offense under §2332a. Moreover, Defendant did not raise this issue at any point during the lengthy proceedings regarding jury instructions. Thus, any alleged error is reviewed under the "plain error" standard and this alleged error does not merit relief under that deferential review. Therefore, Defendant is not entitled to relief based on the jury instructions.

Pursuant to § 2332a, "[a] person who, without lawful authority . . . conspires to use, a weapon of mass destruction . . . against a national of the United States while such national is outside of the United States . . . shall be imprisoned for any term of years or for life." The indictment alleged Defendant violated this statute by conspiring with others to use a weapon of mass destruction against United States nationals in Iraq. The indictment alleged Defendant acted "without lawful authority." (Doc. 231 at 2-3). The final jury instructions, however, did not include any requirement that the jury find Defendant acted "without lawful authority." (Doc. 921 at 30-31). Defendant never proposed a jury instruction containing "without lawful authority" as an element of the offense nor did Defendant argue before his conviction that the jury instructions should include "without lawful authority" as an element.

The Ninth Circuit has not addressed whether the "without lawful authority" portion of § 2332a qualifies as an element of the offense. But the Fifth Circuit has concluded "without lawful authority" in § 2332a is an affirmative defense, not an element. In *United States v. Wise*, 221 F.3d 140, 145 (5th Cir. 2000), the defendants had conspired to build a "delivery device" to use with biological agents such as "botulism, rabies, and anthrax." The defendants were indicted for violating § 2332a but the indictment "failed to include the phrase 'without lawful authority.'" *Id.* at 148. After they were convicted, the defendants argued on appeal the omission of that phrase meant the indictment did not contain all the essential elements of the offense. The government countered that "the 'without lawful authority' provision [was] not an essential element of the offense but rather an affirmative defense, the burden of which was on the defendants

- 6 -

to prove." *Id.*

To determine the proper import of the phrase "without lawful authority," the Fifth Circuit looked to the statutory history of § 2332a and how it fits with other statutes addressing biological and nuclear weapons. *Id.* at 148-49. In doing so, the Fifth Circuit noted the "well-established rule of criminal statutory construction that an exception set forth in a distinct clause or provision should be construed as an affirmative defense and not as an essential element of the crime." *Id.* at 148. In light of § 2332a's history and the structure of similar statutes, the Fifth Circuit concluded "[t]he phrase 'without lawful authority' in § 2332a is an exception that modifies the term 'person'; as such, it constitutes an affirmative defense rather than an essential element." *Id.* Accordingly, the indictment was not defective because of the phrase's absence.

In now arguing "without lawful authority" is an essential element of the offense, Defendant does not address the Fifth Circuit decision. Instead, Defendant cites a model jury instruction formulated by the Eleventh Circuit for violations of § 2332a. That model instruction requires the government prove "the Defendant did not have lawful authority to use the weapon of mass destruction." There is no explanation why the Eleventh Circuit concluded acting "without lawful authority" should be deemed an element. Defendant also cites a model jury instruction by the Ninth Circuit involving the allegedly analogous statute criminalizing identity theft. That statute also uses the phrase "without lawful authority" when proscribing certain conduct.[1] The model jury instruction for that statute indicates "without lawful authority" should be deemed an element but, even with that statute, there is no explanation why the phrase should be identified as an element of the offense. In short, Defendant offers no authority that has engaged with the question whether "without lawful authority" in § 2332a should be deemed an element of the offense or merely an affirmative defense.

---

[1] The aggravated identity theft statute provides: "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A.

The Fifth Circuit's analysis of § 2332a is persuasive and the Ninth Circuit is likely to follow it. *See United States v. Alexander*, 287 F.3d 811, 820 (9th Cir. 2002) ("[A]bsent a strong reason to do so, we will not create a direct conflict with other circuits."). In the context of § 2332a, "without lawful authority" is an exception to the statute. Therefore, the burden was on Defendant to invoke and prove application of that exception. *United States v. Green*, 962 F.2d 938, 941 (9th Cir. 1992). The failure to instruct the jury regarding Defendant's lack of lawful authority was not error.

Assuming for the moment that Defendant is right and the Court should have instructed the jury that "without lawful authority" was a required element of the offense, that error is subject to "plain error" review because Defendant did not object to the instruction. *See United States v. Conti*, 804 F.3d 977, 981 (9th Cir. 2015) ("Because Conti did not object to the missing element in the jury instruction, we review his claim not just for harmless error, but for plain error."). Among other requirements, "plain error" review requires a showing that the error was "prejudicial, or there was a reasonable probability that it affected the outcome of the district court proceedings." *Id.* In the particular situation of jury instructions failing to identify an element of the offense, the prejudice inquiry requires the Court "consider whether the defendant contested the omitted element," whether the defendant "raised evidence sufficient to support a contrary finding," and "whether the jury verdict would have been the same absent the error." *Id.* at 982.

During trial, Defendant did not present any arguments or evidence that he acted with lawful authority. Given that failure, the jury could not have concluded he did so. With no argument or evidence on which to base a contrary finding, there is no reasonable probability that the result would have been different if the jury instructions included "without lawful authority" as a required element. Thus, even assuming error, Defendant is not entitled to relief.

## C. Extradition Arguments

Defendant's next arguments involve his extradition from Turkey. According to

Defendant, the indictment should be dismissed because he was prosecuted for different crimes than those for which he was extradited (violating the doctrine of specialty), he was prosecuted for conduct that is not criminal in Turkey (violating the doctrine of dual criminality), his activities abroad fall under the "political offense" exception to extradition, and his due process rights were violated during the extradition proceedings. None of these arguments has merit.

### i.    Doctrine of Specialty

"The doctrine of 'specialty' prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering state agreed to extradite." *United States v. Andonian*, 29 F.3d 1432, 1434-35 (9th Cir. 1994). Here, the government represented to Turkey that Defendant would be prosecuted for the exact crimes he was eventually convicted of at trial.  (Doc. 976-1 at 11).  Given that Defendant was prosecuted for exactly the same crimes contained in the extradition documents, the court is unable to comprehend Defendant's doctrine of specialty argument.  Defendant seems to believe the doctrine of specialty means the government was required to present the exact same evidence and theory of its case in the extradition papers and at trial.  That is incorrect.  As held by the Ninth Circuit, "[t]he government is not required, under the auspices of specialty, to try a defendant on the same *evidence* that was presented to the surrendering state, so long as it satisfies the requirement that trial is for the same offenses arising out of the same allegations of fact." *United States v. Andonian*, 29 F.3d 1432, 1438 (9th Cir. 1994).

### ii.    Doctrine of Criminality

Turning to the "doctrine of criminality," that doctrine provides an accused person can be extradited only if the conduct complained of is considered criminal by the jurisprudence or under the laws of both the requesting and requested nations." *United States v. Khan*, 993 F.2d 1368, 1372 (9th Cir. 1993).  Defendant argues he "was convicted of conduct that is not criminal in Turkey." (Doc. 975 at 20).  Defendant states Turkey "is a party to the Third Geneva Convention, which specifies that certain

individuals are not prosecutable in local courts for acts committed in the course of conflict." (Doc. 975 at 20). Defendant then claims the failure to require the United States' government "prove the absence of protection from prosecution under the Geneva convention or similar authority," means he was convicted of conduct that Turkey would not deem criminal. The government responds that this issue was for the Turkish courts to resolve and the decision by those courts to allow Defendant's extradition necessarily means the relevant conduct was, in fact, criminal under Turkish law.

Defendant did not file a reply addressing the government's contentions and the Court is unable to determine the exact basis for Defendant's "dual criminality" argument. Defendant makes vague references to the Third Geneva Convention and the possibility that his conduct would not have been prosecutable under Turkish law. But the Court cannot understand why Defendant believes the Third Geneva Convention rendered his conduct legal under Turkish law. And in any event, the legality of Defendant's conduct under Turkish law was for the Turkish courts. Defendant effectively asks this Court to second-guess the Turkish courts regarding their own laws. The Court declines to do so.

### iii.    Political Offense Exception

Defendant makes a cursory argument that he fell within the "political offense exception" to extradition. "The political offense exception to extradition forbids countries from extraditing people who are accused of offenses that are 'political' in nature." *Ordinola v. Hackman*, 478 F.3d 588, 595 (4th Cir. 2007). Defendant argues all of his alleged activities qualified as "political offenses" because he was allegedly involved with "an Iraqi nationalist group revolting against the United States' occupation of Iraq." (Doc. 975 at 21). Defendant cites no authority establishing he is entitled to challenge his convictions on this basis. The only cases provided by Defendant involved challenges by an individual seeking to avoid extradition. Based on those cases, it appears application of the political offense exception was for the Turkish courts, not this Court.

Even assuming Defendant is entitled to invoke the political offense exception after his convictions, the exception applies only to actions taken by "indigenous people" in

their own country or territory "against their own government or an occupying power." *Quinn v. Robinson*, 783 F.2d 776, 807 (9th Cir. 1986). Defendant has never claimed he is an Iraqi citizen and some of his criminal activity occurred while he was in China. The political offense exception has no application to Defendant's behavior.

### iv. Due Process

Finally, Defendant believes his due process rights were violated when the government represented to Turkey that he and his "coconspirators were responsible" for actual harm to individuals. (Doc. 975 at 22). This is a variant of Defendant's earlier argument that the government originally claimed Defendant was linked to parts actually used in particular bombings but, at trial, the government did not attempt to prove such a link. Defendant believes the government obtained his extradition from Turkey by misrepresenting his link to particular events. Those misrepresentations allegedly entitle Defendant to dismissal of all charges. In support of this argument Defendant cites a case from the Second Circuit involving a defendant who was kidnapped in Uruguay, tortured, and then transported to the United States for criminal prosecution. *United States v. Toscanino*, 500 F.2d 267, 270 (2d Cir. 1974). The Second Circuit was concerned with the manner in which the defendant came before the United States courts and it remanded for a hearing on the circumstances of the defendant's arrival in the United States. Apparently the Second Circuit believed the manner in which a defendant arrived in court might prevent his criminal prosecution.

The Ninth Circuit has specifically rejected the Second Circuit case Defendant cites. *United States v. Matta-Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995) (noting *Toscanino* lacks any plausible basis). Given that rejection, Defendant's argument based on that case has no merit. In addition, even if the Court were to agree that the government engaged in some sort of misconduct in securing his extradition, "[t]he Supreme Court has long held that the manner by which a defendant is brought to trial does not affect the government's ability to try him." *Id.* at 754. Defendant is not entitled to dismissal based on any alleged misrepresentations to Turkey.

**D.  Statute of Limitations**

Defendant's next argument is that the failure to instruct the jury regarding the statute of limitations applicable to Counts 3 and 4 requires a new trial.  Defendant did not pursue a statute of limitations defense at trial and "[t]he statute of limitations is an affirmative defense that is waived if it is not raised at trial."  *United States v. Hickey*, 580 F.3d 922, 928 (9th Cir. 2009).  Defendant is not entitled to relief on this basis.

**E.  Judge Wake's Disclosure**

Towards the end of his motion, Defendant argues Judge Wake prejudiced his defense by revealing information to the government.  During an ex parte hearing in June 2017, Defendant allegedly disclosed his "theory of defense to enable Judge Wake to make a more informed determination regarding the Government's contemporaneous CIPA submission."  (Doc. 975 at 24).  Judge Wake subsequently "disclosed the defense's theory" during an in-court hearing with both parties.  Defendant believes that disclosure deprived him of a fair trial because it provided the government advance notice of his planned defense.

Defendant does not develop this argument but, based on the proceedings at trial, any inappropriate disclosure by Judge Wake was harmless.  Defendant did not pursue a defense at trial other than what the prosecution undoubtedly knew was likely.  That is, there is no indication that Jude Wake disclosed a unique defense theory that, had it been kept confidential, might have blindsided the government and led to Defendant's acquittal.  Any disclosure by Judge Wake had no impact on this case.

**F.  Testimony of Agent McCarthy**

The final argument in Defendant's first motion is that Agent McCarthy "lacked personal knowledge" regarding some of the testimony he offered at trial.  Defense counsel did not object to that testimony at trial.  And defense counsel concedes the testimony "does not warrant acquittal or a new trial in and of itself" but Defendant wishes to "lodge[] his objection."  (Doc. 975 at 26).  Defendant does not identify any relief he would be entitled to receive if the Court were to agree with him regarding Agent

McCarthy's testimony. Therefore, there is no need to address this argument.

## II.     Motion for New Trial Based on Newly Discovered Evidence

Defendant's second motion seeks a new trial based on "newly discovered evidence" involving Defendant's co-conspirator Jamal Al-Dhari. Prior to trial, the parties agreed to take Al-Dhari's videotaped deposition outside the United States because it was possible Al-Dhari would not be able to testify in-person. At the time of trial, Al-Dhari was outside the United States but there were indications he was planning to visit the United States in the near future. Hoping Al-Dhari could testify in person, the Court ordered the government to contact Al-Dhari and determine whether he would travel to the United States to testify in-person. The government spoke with Al-Dhari but he was unwilling to travel. With no way to force Al-Dhari to appear, the Court deemed Al-Dhari "unavailable" pursuant to Federal Rule of Evidence 804 and allowed the government to play portions of his deposition during trial.

On April 7, 2018, approximately three weeks after the jury verdict, the government informed Defendant that Al-Dhari was "present in the United States." (Doc. 958-1). Defendant cites that letter as "newly discovered evidence" that entitles him to a new trial. As best as the Court can determine, Defendant believes Al-Dhari's post-verdict travel is "newly discovered evidence" that "Al-Dhari is not currently, and never has been, unavailable to the Government to testify within the meaning of Fed. R. Evid. 804." (Doc. 958). In other words, Defendant believes Al-Dhari's post-verdict travel establishes the government could have arranged for him to testify in-person.

A defendant seeking a new trial based on newly discovered evidence must "prove each of the following: (1) the evidence is newly discovered; (2) the defendant was diligent in seeking the evidence; (3) the evidence is material to the issues at trial; (4) the evidence is not (a) cumulative or (b) merely impeaching; and (5) the evidence indicates the defendant would probably be acquitted in a new trial." *United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009). Because these requirements are conjunctive, the failure to meet any of the five requirements is fatal. *See United States v. McClain*, No. CR09-

0419-JCC, 2010 WL 11530866, at *1 (W.D. Wash. July 20, 2010) ("The test is conjunctive: the burden is on the defendant to establish all five prongs."). Here, Defendant cannot establish the first, third, or fifth requirements.

Assuming the "newly discovered evidence" at issue is evidence of Al-Dhari's post-verdict travel to the United States, that does not qualify as "newly discovered evidence." "In general, to justify a new trial, 'newly discovered evidence' must have been in existence at the time of trial." *United States v. Lafayette*, 983 F.2d 1102, 1105 (D.C. Cir. 1993). Obviously evidence of Al-Dhari's post-verdict travel did not exist at the time of trial. Defendant provides no authority allowing him to rely on evidence of events occurring after trial as a proper basis for a "newly discovery evidence" motion.

Next, even if the Court were to conclude the post-verdict travel evidence qualified as "newly discovered evidence" and also conclude Defendant acted diligently in obtaining that evidence, Defendant does not provide any clear explanation how that evidence qualifies as "material to the issues at trial." The issues at trial involved Defendant's involvement in the design and manufacture of electrical components. Al-Dhari's travel to the United States has no relevance to Defendant's substantive guilt.

Finally, even if the Court were to conclude Al-Dhari's recent travel was "newly discovered evidence," Defendant acted diligently in obtaining the evidence, and the evidence qualified as material and not cumulative or merely impeaching, Defendant's motion would still fail because there is no basis to conclude evidence of Al-Dhari's travel establishes Defendant would be acquitted at a new trial. Defendant has not explained how that evidence would result in his acquittal and the Court cannot conceive of why that would be the case. Evidence of Al-Dhari's travel would not have any impact on the proof against Defendant. Al-Dhari's post-verdict travel simply is irrelevant to Defendant's guilt. Defendant is not entitled to a new trial.

### III. Renewed Motion to Suppress E-Mail Content and Derivative Evidence

Defendant's third motion is a renewal of "his motion to suppress all e-mail content and derivative evidence obtained by the Government." (Doc. 985 at 1). Defendant

argues a recent decision by the Ninth Circuit establishes Judge Wake erred in denying an earlier motion to suppress. Defendant also argues the relevant statute was patently unconstitutional at the relevant time and that the search warrant used to obtain the e-mail content was overbroad. The background necessary to resolve this motion will be stated only in brief.

On February 3, 2009, the government obtained an order pursuant to the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, directing Yahoo to produce records regarding an e-mail account known as the "john_john account."[2] Yahoo produced those records. Then, on September 9, 2010, the government obtained a search warrant for the john_john account. That warrant required Yahoo produce "[t]he contents of all e-mail stored in the account." (Doc. 985-5 at 4). The warrant had no date or subject matter limitations. In complying with the warrant, Yahoo produced the entire contents of the john_john account.

On May 22, 2017, Defendant filed a "Motion to Suppress E-Mail Content and Derivative Evidence." (Doc. 196). That motion presented three arguments regarding the legality of the order and search warrant issued pursuant to the Stored Communications Act ("SCA"). Defendant believed the defects in the SCA order and warrant meant all of the e-mail and derivative evidence, including all contents of the john_john account, should be suppressed. Judge Wake rejected Defendant's arguments.

Judge Wake first concluded suppression was not a remedy available to Defendant. As explained by Judge Wake, Defendant was "a nonresident alien who had no previous significant voluntary connection with the United States." Thus, he was not entitled to "Fourth Amendment protection." (Doc. 324 at 5). Judge Wake then explained that even assuming suppression were an available remedy, none of Defendant's arguments provided a sufficient basis for ordering suppression.

Defendant now renews his motion to suppress, making three arguments. First,

---

[2] The government obtained other records and Defendant references those other records in his motion. However, it is undisputed that the other records involved e-mail accounts not belonging to Defendant. Thus, Defendant cannot litigate the propriety of the government's actions regarding those records.

Defendant argues recent Ninth Circuit authority establishes the seizure of the john_john e-mail account violated the Fourth Amendment. Second, Defendant argues the SCA was "conspicuously unconstitutional" at the relevant time. And third, Defendant argues the search warrant was overbroad because it contained no meaningful limitations such that everything in the john_john account was produced.

## A. *Rodriguez v. Swartz* Does Not Control

Defendant contends the Ninth Circuit's decision in *Rodriguez v. Swartz*, 899 F.3d 719 (9th Cir. 2018), establishes Judge Wake erred by concluding the Fourth Amendment did not apply to Defendant at the time the SCA order and warrant were issued. While *Rodriguez* did change the appropriate analysis for some Fourth Amendment claims, it has no application here.

In *Rodriguez*, "[a] U.S. Border Patrol agent standing on American soil shot and killed a teenage Mexican citizen who was walking down a street in Mexico." *Id.* at 726. The mother of the Mexican citizen sued the Border Patrol agent in federal court, asserting a *Bivens* claim under the Fourth Amendment. The Ninth Circuit concluded the protections of the Fourth Amendment applied to the teenager because of the unique sovereignty and practical interests presented by "the unreasonable use of deadly force by a federal agent on American soil." *Id.* at 731. The Ninth Circuit made clear, however, that the case was "not about searches and seizures broadly speaking." *Id.*

Despite the language in *Rodriguez* attempting to limiting it to the peculiar context of the use of deadly force, Defendant argues the reasoning of *Rodriguez* establishes he had viable Fourth Amendment rights that were infringed through the SCA order and warrant. Regardless of the impact *Rodriguez* might have on other Fourth Amendment cases, it has no application here because the Ninth Circuit has already concluded that seizing the e-mail communications of an individual such as Defendant does not implicate the Fourth Amendment.

In *United States v. Mohamud*, 843 F.3d 420 (9th Cir. 2016), the government had obtained an order allowing for the monitoring of a foreign national's communications.

"Through the monitoring of [the] foreign national's email account," the government collected the e-mail communications of a defendant living in the United States. *Id.* at 438. The defendant later challenged the collection of his e-mails. In the Ninth Circuit's view, the legality of collecting the defendant's e-mails turned, in part, on whether the foreign national had any rights under the Fourth Amendment. The Ninth Circuit concluded the foreign national did not have "sufficient voluntary connection[s] to the United States for the Fourth Amendment to apply." *Id.* at 439 n.22. Thus, the foreign national was a "non-U.S. person with no Fourth Amendment right." *Id.* at 439. And while the foreign national's e-mails were collected from computers located in the United States, the applicability of the Fourth Amendment was dictated by "the location of the *target*, and not where the government literally obtained the electronic data." *Id.*

The reasoning in *Mohamud* governs here. At the time of the SCA order and warrant, the government believed Defendant was a non-U.S. person. Since that time, Defendant has not offered any evidence of "voluntary connections to the United States" such that he has Fourth Amendment rights. *Id.* at 439 n.22. Accordingly, Defendant had no Fourth Amendment rights at the time the government obtained the contents of the john_john account. Defendant's argument that *Rodriguez* changes this result is not convincing.

*Rodriguez* addressed the use of deadly force, not the seizure of e-mail communications. *Mohamud* directly addresses such seizures. Even assuming *Rodriguez* was an attempt to change the law regarding the seizure of e-mail communications belonging to non-U.S. persons, the *Rodriguez* panel was not free to do so. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (subsequent panels are bound by earlier panel decision absent intervening en banc or Supreme Court authority). Therefore, Defendant's status as a non-U.S. person is dispositive of all of his arguments under the Fourth Amendment.

**B. SCA Was Not Conspicuously Unconstitutional**

Defendant's second argument is that the SCA was "conspicuously

- 17 -

unconstitutional" at the time the government obtained the order requiring Yahoo produce the e-mail records. Because Defendant had no Fourth Amendment rights at the time, this argument fails at the outset. Moreover, even assuming Defendant had some constitutional protections, he has not cited any meaningful authority establishing the SCA's procedures were unconstitutional at the relevant time. Defendant merely cites to a district court decision from Ohio as well as a decision by the Sixth Circuit that was subsequently vacated by the en banc court. (Doc. 985). Such scant authority does not show the SCA was "conspicuously unconstitutional" at the relevant time. When the government obtained the e-mail communications, the government's actions were taken exactly as authorized by statute. Even if theoretically available, suppression would be inappropriate.

### C. Challenge to Warrant is Untimely

Defendant's final argument is that the warrant used to obtain the john_john account records was overbroad. Again, Defendant had no Fourth Amendment rights at the time, meaning the argument is fatally flawed. But even ignoring that flaw, Defendant did not make this argument until approximately five months after being convicted. Defendant has not provided any convincing basis for waiting so long to litigate this issue. *See* Fed. R. Crim. P. 12(c)(3) ("good cause" required for untimely motion to suppress). He is not entitled to relief based on the breadth of the warrant.

### IV. Downward Variance

Defendant's final motion is a request for a downward variance consisting of a change of the base offense level of 43 to 30 and from Criminal History Category VI to Criminal History Category I.

Defendant's motion presents three arguments. The first argument involves the government's failure to pursue charges against any of Defendant's alleged co-conspirators. The second argument involves the government's alleged abandonment of its original contention regarding Defendant's link to particular bombings. And the third argument involves Defendant's entitlement to a downward variance based on the factors

set forth in 18 U.S.C. § 3553(a).

Defendant first argues he is entitled to a downward variance because the government did not pursue charges against Al-Dhari and Ali Ways. Defendant contends Al-Dhari and Ali Ways have been allowed to "move[] on" with their lives and imposing a lengthy sentence on Defendant alone would be inappropriate. This argument is not convincing. In general, "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). The decision whether to bring charges often depends on considerations such as the strength of the case against the uncharged individual or the government's "overall enforcement plan." *Id.* These considerations "are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* Here, the Court has no way of knowing why the government decided not to pursue charges against Al-Dhari or Ali Ways. The Court lacks sufficient information to assess the government's charging decisions and, in any event, it is not for the Court to decide which individuals should be prosecuted. The Court's task is not to second-guess the government's charging decisions but to determine the appropriate sentence for Defendant. A downward variance based on the existence of uncharged co-conspirators would not be appropriate.

Defendant's next argument is that the Court should not consider the particular bombings that figured so prominently in the pretrial proceedings. Defendant does not offer any legal authority in support of this and, as the government notes, it is appropriate to consider all relevant information regarding Defendant's conduct. Thus, the request that the Court ignore the bombings entirely is not convincing.

Defendant's final argument consists of various brief statements addressing the factors set forth in 18 U.S.C. § 3553(a). The Court is familiar with the "nature and circumstances of the offense" as well as Defendant's own "history and characteristics." 18 U.S.C. § 3553(a)(1). The Court will consider that information, as well all other available information, in imposing a sentence. The Court will also consider Defendant's argument that the time he has spent in custody is sufficient and that he does not represent

a threat to the public.

Accordingly,

**IT IS ORDERED** the Motion for New Trial (Doc. 958), Motion for Acquittal, Motion to Dismiss for Lack of Jurisdiction, and Motion for New Trial (Doc. 975), Motion for Departure (Doc. 984) and Motion to Suppress (Doc. 985) are **DENIED**.

Dated this 6th day of November, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge